THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID J. CATANZARO, | Case No. 3:22-cv-1754 |
| Plaintiff, | Judge Joseph F. Saporito, Jr. |
| v. | Referred to: Phillip J. Caraballo |
| LYKART TECHNOLOGIES LLC, et al., | |
| Defendants. | JURY TRIAL DEMANDED |

**FILED**
**SCRANTON**

MAY 16 2025

PER _____
DEPUTY CLERK

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR COORDINATED RULE 12 BRIEFING (Doc. 98)

Plaintiff David J. Catanzaro, proceeding pro se, respectfully files this opposition to the motion filed by Defendants Apple Inc., Google LLC, YouTube LLC, Microsoft Corporation, Mozilla Corporation, and Poshmark, Inc. (Doc. 98), which seeks leave to file a single joint Rule 12 motion and to consolidate briefing across all named defendants.

## I. INTRODUCTION

The Court should deny the request to permit a **single joint Rule 12 filing**. The moving defendants occupy **fundamentally distinct legal and factual positions**, and while some overlap may exist in their arguments, a joint submission would obscure critical differences, prejudice Plaintiff's ability to respond, and distort the individualized nature of the allegations. Grouping all defendants into one brief is neither necessary nor appropriate at this stage.

## II. POSHMARK, TARGET CORPORATION AND TARGET.COM HAVE SETTLED AND ARE DISMISSED AS OF THIS FILING

Both Poshmark, Inc. and Target Corporation and Target.com have reached final settlement agreements with Plaintiff, and their dismissals are being filed concurrently with this opposition. As such, they should not be included in any grouping or permitted to participate in joint briefing on Rule 12 motions. The motion is therefore **procedurally moot as to Poshmark**, and any joint filing purporting to include it is both inaccurate and inappropriate.

## III. DEFENDANTS SHOULD BE GROUPED BY FUNCTION, NOT MERGED INTO A SINGLE BRIEF

If any coordination is permitted, it should reflect the **substantive and functional distinctions** between defendants, not a blanket consolidation. The Fifth Amended Complaint outlines separate and detailed roles for each defendant group, and a joint Rule 12 motion would conflate materially different legal and factual positions. Plaintiff respectfully submits the following functional groupings:

### Group 1: Google LLC and YouTube LLC

These defendants are at the center of the case. Google operates the dominant search engine on the internet, and its centrality to online commerce and discoverability makes it the core platform through which patent-infringing products were located, indexed, promoted, and monetized. Google's **search engine** is not merely a neutral tool—it plays an active role in shaping access to infringing listings, counterfeit listings and advertiser content. YouTube, a wholly owned subsidiary of Google, functions as a global media platform where influencers, sellers, and content creators **promote and are promoting infringing products directly**, often using affiliate links and paid Google Ads. The claims against these defendants concern **systematic inducement, monetization, and platform-level enablement** of infringement.

### Group 2: Microsoft Corporation

Microsoft plays a functionally distinct role centered on its **Bing search engine,** which operates in parallel to Google but under Microsoft's technological control. The Fifth

Amended Complaint alleges that Microsoft, like Google, had the capability to identify flag and/or suppress infringing product listings but failed to do so. In addition to Bing, Microsoft's role also includes its bundled platforms—**Internet Explorer, Edge, and Windows Search**—all of which contributed to the discoverability and accessibility of infringing products across e-commerce channels. Microsoft's liability theory focuses on **systemic enablement through its own suite of services**, separate from the allegations directed at Google or YouTube.

For Google and Microsoft, the theory centers on their operation of search engines—**Google Search** and **Microsoft Bing**, respectively—that shape public access and product discoverability across the internet. These platforms had the technological ability to detect, flag, or filter infringing listings and counterfeit goods, yet deliberately failed to act.

**Despite this shared search functionality, Google and Microsoft should not be grouped.** Google's alleged liability extends well beyond search alone. It encompasses **paid product promotion through Google Ads, video-based marketing on YouTube**, and **monetized placement of infringing goods across its broader ecosystem**. Google also holds a uniquely dominant market position and directly profited from infringement through its advertising model and affiliate structures. YouTube's role in amplifying infringing product visibility through influencer content further distinguishes Google from Microsoft.

By contrast, Microsoft's conduct centers on the operation of Bing and related browser technologies such as **Internet Explorer, Edge, and Windows Search**. Unlike Google, Microsoft's role does not involve a video-driven influencer platform like YouTube. However, its liability is grounded in its operation of Bing and bundled browser technologies, which systematically facilitated access to infringing content through search and indexing.

**Grouping these defendants would conflate materially different facts and legal theories.** It would also force Plaintiff to respond to blended defenses, many of which are not applicable to each party. For these reasons, Google and Microsoft should remain in **separate briefing groups**.

**Group 3: Apple Inc. and Mozilla Corporation**

Unlike Google or Microsoft, these parties are identified as **"platform-only" defendants**. They are not search engine operators themselves, but are alleged to have enabled infringement by entering into **financial and default-setting partnerships with Google**. Specifically, both Apple and Mozilla designated Google as the default search engine within their respective platforms—**Safari and Firefox**—and received **substantial payments** in exchange for doing so. This arrangement created an economic incentive to maintain Google's search dominance while **willfully ignoring the patent abuse and counterfeit abuse occurring on the platform they elevated by default**. The Fifth Amended Complaint frames these parties as **indirect enablers through economic partnership and platform positioning**, rather than direct operators of infringing tools.

These groupings are **not merely stylistic preferences**; they reflect core distinctions that go to the heart of the legal theories, factual circumstances, and potential defenses at issue in the case.

The **systemic inducement theory** set forth in the Fifth Amended Complaint applies **uniquely to each defendant**. It asserts different forms of contributory and induced infringement based on each platform's role in **enabling, facilitating, and monetizing infringing behavior**.

**Apple and Mozilla**, in contrast, do not operate search engines. Their liability stems from their roles as **economic enablers of Google's dominance**. Apple has received an estimated **$20–30 billion per year** from Google to keep Google Search as the default across its ecosystem. Mozilla has reportedly received up to **$600 million annually**, accounting for roughly **80% of its total operating budget**, for the same purpose. These relationships created—and continue to create—a powerful financial incentive to look the other way.

By accepting these payments, **Apple and Mozilla willfully blinded themselves** to Google's widespread contributory and indirect patent infringement. This occurred while they actively promoted and distributed platforms configured to direct users to that very infringement. Whether Google was profiting from infringing products or counterfeit knockoffs of lawful ones, the financial arrangements ensured that **Google got paid for advertising, and Apple**

**and Mozilla got paid their annual fees**—creating a mutual incentive for all parties to remain silent.

In short, these are **distinct modes of liability**. Combining all parties into a single joint filing would unjustly compress Plaintiff's ability to respond, distort the factual record, and hinder the Court's ability to evaluate the individualized legal defenses at issue. The request for a single consolidated brief should be denied.

See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (explaining that a complaint must state a plausible claim as to **each defendant individually**, not through generalized or collective allegations).

## IV. PLAINTIFF DOES NOT OPPOSE MODIFIED PAGE LIMITS

Plaintiff does **not** oppose the requested page limits, so long as joint filing is not permitted or is **limited to appropriate groupings** as outlined above. Reasonable flexibility on page length is fair and sensible — but it must not come at the expense of procedural clarity and fairness.

## V. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court **deny** the motion for a single joint Rule 12 filing (Doc. 98). Plaintiff remains amenable to adjusted page limits and will work in good faith with the Court's scheduling expectations, provided that briefing is properly structured to reflect the **distinct roles and defenses** of the remaining defendants.

Date May 16, 2025

Respectfully submitted,

David J. Catanzaro
Plaintiff *pro se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 936-9262
E-mail: davidjosephus@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2025, I caused a true and correct copy of the foregoing
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR COORDINATED
RULE 12 BRIEFING (Doc. 98)** to be served via email, in accordance with the parties'
agreement for reciprocal email service, to all counsel of record as listed on the docket:

**For Unrepresented Defendants:**

The following two defendants have not appeared in this case and are not represented by
counsel. Copies of the foregoing document were served via First Class **U.S. Mail** to the last
known business address shared by both entities:

**Lykart Technologies, LLC. and GrowKart**

30 N Gould St Suite 5707

Sheridan, WY 82801, US

These defendants are currently in procedural **default**, and Plaintiff reserves the right to move
for entry of default as appropriate.

Date May 16, 2025

David J. Catanzaro
Plaintiff *pro se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 936-9262
E-mail: davidjosephus@aol.com