# EXHIBIT 10

Case 3:22-cv-01754-JFS-PJC   Document 115-10   Filed 06/13/25   Page 2 of 9

Cupp on behalf of Cupp v. County of Lycoming, Not Reported in Fed. Supp. (2021)
2021 WL 4478304

2021 WL 4478304
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Pamela CUPP, individually and ON BEHALF OF the Estate of Ashley CUPP, deceased, et al., Plaintiffs,
v.
COUNTY OF LYCOMING, et al., Defendants.

CIVIL ACTION NO. 3:20-cv-001784
|
Signed 09/30/2021

**Attorneys and Law Firms**

Amy R. Boring, Schemery Zicolello, Williamsport, PA, for Plaintiffs.

Brian J. Bluth, John G. Himes, McCormick Law Firm, Williamsport, PA, David J. MacMain, The MacMain Law Group LLC, Malvern, PA, for Defendants County of Lycoming, Brad Shoemaker, Ryan Barnes, Christopher J. Ebner, Monica Laird, Lacey Swaine, Maggie Marshall, Jennifer Mull.

Morgan M. Madden, Richard F. Schluter, McCormick Law Firm, Williamsport, PA, for Defendants Dr. William Keenan, Dr. Janice Schifferli.

Brian J. Bluth, John G. Himes, McCormick Law Firm, Williamsport, PA, for Defendants Maelynne Murphy, LPN, Erin Dvorscak, LPN, Andrea Hoover, LPN, Kim Poorman, RN, Iesha Glover, LPN, Nicole Dawson, LPN, Tara Savage, LPN.

### MEMORANDUM

JOSEPH F. SAPORITO, JR., United States Magistrate Judge

*1 This federal civil rights action arises out of the death of Ashley Cupp on February 22, 2019. At the time of her death, Cupp was incarcerated at Lycoming County Prison. She was a pretrial detainee, awaiting a probation revocation hearing.

This original complaint in this action was filed on September 30, 2020, by the decedent's mother, Pamela Cupp, appearing through counsel. She brings this action in her personal capacity, in her role as administrator of the decedent's estate, and in her role as guardian of the decedent's two minor children, Z.B. and L.C. The plaintiff filed an amended complaint on December 21, 2020. (Doc. 17.)

The seven-count amended complaint names seventeen defendants. These include the County of Lycoming and sixteen individual defendants employed by it at Lycoming County Prison: (1) Brad Shoemaker, warden of the prison; (2) Ryan Barnes, deputy warden; (3) Christopher Ebner, deputy warden; (4) Monica Laird, corrections officer; (5) Lacey Swaine, corrections officer; (6) Maggie Marshall, corrections officer; (7) Jerrica Mull, corrections officer; (8) Dr. William, Keenan, Jr., a physician and medical director of the prison; (9) Dr. Janice Schifferli, a physician; (10) Maelynne Murphy, licensed practical nurse; (11) Erin Dvorscak, licensed practical nurse; (12) Andrea Hoover, licensed practical nurse; (13) Kim Poorman, licensed practical nurse; (14) Iesha Glover, licensed practical nurse; (15) Nicole Dawson, licensed practical nurse; and (16) Tara Savage, licensed practical nurse. The amended complaint names each of the individual defendants in both official and personal capacities.

The amended complaint alleges that the decedent was denied adequate medical care while incarcerated at Lycoming County Prison, resulting in her death on February 22, 2019. Based on this, the plaintiff brings multiple § 1983 claims against the defendants on alternative legal theories, and she brings a supplemental state-law medical negligence claim against the two physician defendants. Sorting themselves into two separately represented groups, the defendants have moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted. (Doc. 35; Doc. 38.) Both motions are fully briefed and ripe for decision. (Doc. 39; Doc. 43; Doc. 46; Doc. 49; Doc. 50; Doc. 51.)

### I. FACTUAL BACKGROUND

In February 2018, the decedent, Ashley Cupp, pleaded guilty to third-degree retail theft, for which she was sentenced to serve a period of 3 to 11 months in jail, to be followed by a consecutive 25-month period under the supervision of a county intermediate punishment program ("IPP"). *Commonwealth v. Cupp*, Docket No. CP-41-CR-0000234-2018 (Lycoming Cty. (Pa.) C.C.P.).[1] *See generally* 42 Pa. Cons. Stat. Ann. § 9804; *Commonwealth v. Wegley*, 829 A.2d 1148, 1152–53 (Pa. 2003) (discussing IPP sentencing, a "sentencing option ... between probation and incarceration").

Case 3:22-cv-01754-JFS-PJC     Document 115-10     Filed 06/13/25     Page 3 of 9

Cupp on behalf of Cupp v. County of Lycoming, Not Reported in Fed. Supp. (2021)
2021 WL 4478304

**\*2** In September 2018, for reasons that are not alleged in the amended complaint or evident from the state court records, a bench warrant was issued for Cupp's arrest. *See Commonwealth v. Cupp*, Docket No. CP-41-CR-0000234-2018 (Lycoming Cty. (Pa.) C.C.P.). On or about October 25, 2018, Cupp was taken into custody and incarcerated at Lycoming County Prison as a pretrial detainee, pending a probation violation hearing. *See id.* On February 22, 2019, while in custody, Cupp died due to complications of a cardiac condition.

Upon entering Lycoming County Prison in October 2018, Cupp was screened for medical and mental health conditions. She suffered from serious and known medical conditions, including an aortic valve replacement, cardiomyopathy, bipolar disorder, depression, anxiety, post-traumatic stress disorder, and opioid dependence. In particular, she had ongoing heart-related symptoms, and she had been prescribed various daily medications by her cardiologist. She also had a known history of significant and serious mental health conditions and suicide attempts.

Although Cupp requested her medications, including in particular those prescribed by her cardiologist, she did not receive them consistently at Lycoming County Prison. Throughout her incarceration there, Cupp complained of and requested medical care for various medical problems, including swollen and painful legs, red lines on her legs, numbness in her legs and body, difficulty breathing, chest pain, nausea, general malaise, and high blood pressure. While incarcerated, she was observed by unidentified inmates, jail staff, and medical staff as having significant physical problems, including swelling, difficulty walking, falling, crying out in pain, crying out for help, having ice-cold legs, being drenched in sweat, difficulty breathing, gasping for air, extreme difficulty standing, inability to get up to eat, inability to get up to shower, and inability to get up to use the restroom. Cupp repeatedly requested medical assistance while incarcerated, both verbally and in writing, and both directly and indirectly through other inmates, but she was not provided with any assistance by jail or medical staff. She complained that her medications were not working and were making her feel funny. Cupp's frequent cries of pain and for help were ignored by unspecified defendants.

Cupp's physical condition deteriorated such that other inmates found it necessary to assist her by helping her get to the shower, picking her up after falls, helping her to get dressed, brushing her hair, rubbing her back, retrieving items for her, getting her water, helping her elevate her painfully swollen legs, helping her submit medical requests, showing jail staff the red lines on her legs, telling the jail staff that she was having trouble breathing, asking jail staff to feel her ice-cold legs, placing rags soaked in hot water on her legs, and obtaining cloths soaked in cold water for her head. Due to feeling unwell, being in pain, and being too weak to get out of her bed, Cupp ate little while incarcerated.

At the time she entered the Lycoming County Prison, Cupp was detoxing. Despite knowledge that she was detoxing, unspecified defendants failed to properly place her in a detoxification protocol. Despite her history of mental health conditions and a known history of suicide attempts, she was not referred for mental health evaluation or treatment, and she did not receive any psychiatric care or medication.

**\*3** Despite her serious medical conditions, Cupp was temporarily transferred several times to other county prisons, purportedly due to overcrowding at Lycoming County Prison. Despite her serious medical conditions, Cupp was placed in the general population while at Lycoming County Prison. Despite her serious medical conditions, Cupp was assigned a top bunk and placed on the upper tier of cells at Lycoming County Prison, requiring her to use stairs to access other locations, including the restroom and shower.

In the days before her death, Cupp was scheduled for the extraction of multiple teeth, but her dental treatment provider refused to perform the extractions until her medical problems—specifically her cardiac issues—were evaluated and treated. Despite being aware of Cupp's continuing cardiac issues and the dental treatment provider's concerns, unspecified defendants failed to provide necessary medical treatment.

Despite her serious medical conditions and obviously declining health, Cupp was not sent for medical treatment outside the prison. Despite her serious medical conditions and obviously declining health, Cupp was not provided with necessary medications. She was not counseled regarding the taking of her medications, nor were her medications reviewed to determine whether they should be adjusted.

Throughout the night of her death, Cupp screamed and cried out for help, she complained of not feeling well and being in pain, and she was gasping for air. No one from the jail's correctional or medical staff responded to Cupp's cries for

Case 3:22-cv-01754-JFS-PJC     Document 115-10     Filed 06/13/25     Page 4 of 9

Cupp on behalf of Cupp v. County of Lycoming, Not Reported in Fed. Supp. (2021)
2021 WL 4478304

help. Her demise was not discovered until she failed to respond for morning head count on February 22, 2019.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III. DISCUSSION

The plaintiff has brought this federal civil rights action primarily under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

**\*4** 42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, the plaintiff must establish that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Here, the plaintiff has asserted federal civil rights claims under several alternative theories of liability. In Count I, she claims that unspecified defendants were deliberately indifferent to the decedent's serious medical needs while incarcerated, in violation of the decedent's Fourteenth Amendment substantive due process rights,[2] and in Count II, she seeks to impose municipal liability on the County and supervisory liability on Shoemaker, Barnes, Ebner, and Keenan for that same conduct by their employees or subordinates.[3] In Count III, she claims that unspecified defendants failed to intervene to protect the decedent from the deliberate indifference of other, unspecified defendants to the decedent's serious medical needs, in violation of the decedent's Fourteenth Amendment substantive due process rights, and in Count IV, she seeks to impose municipal liability on the County and supervisory liability on Shoemaker, Barnes, Ebner, and Keenan for that same conduct by their employees or subordinates. In Count V, she claims that unspecified defendants failed to protect the decedent from her own suicidal action, in violation of the decedent's Fourteenth Amendment substantive due process rights, and in Count VI,[4] she seeks to impose municipal liability on the County and supervisory liability on Shoemaker, Barnes, Ebner, and Keenan for that same conduct by their employees or subordinates.[5]

### A. Official Capacity Claims

Case 3:22-cv-01754-JFS-PJC   Document 115-10   Filed 06/13/25   Page 5 of 9

Cupp on behalf of Cupp v. County of Lycoming, Not Reported in Fed. Supp. (2021)
2021 WL 4478304

**\*5** The amended complaint names all of the sixteen individual defendants in both official and personal capacities. It names their employer, the County of Lycoming, as a defendant to all counts as well. But "[o]fficial capacity actions are redundant where the entity for which the individuals worked is named." *Highhouse v. Wayne Highlands Sch. Dist.*, 205 F. Supp. 3d 639, 646 (M.D. Pa. 2016) (dismissing official capacity claims against municipal officials as redundant when municipality was also named as a defendant). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

Accordingly, the plaintiff's claims against all sixteen individual defendants in their official capacity will be dismissed as redundant because their employer—Lycoming County—is also named in the amended complaint, pursuant to the Court's inherent authority to control its docket and avoid duplicative claims. *See Dewees v. Haste*, 620 F. Supp. 2d 625, 630 (M.D. Pa. 2009) (dismissing official-capacity claims against county prison officials where county was also named as a defendant); *see also Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 131–32 (D.N.J. 2017); *Korth v. Hoover*, 190 F. Supp. 3d 394, 402–03 (M.D. Pa. 2016); *Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 431–32 (E.D. Pa. 1998).

### B. ndividual Defendants

The amended complaint brings personal-capacity § 1983 damages claims against sixteen different individual defendants. The amended complaint identifies each of these sixteen individual defendants by name and job title. Four of the defendants—Shoemaker, Barnes, Ebner, and Keenan—are identified as "chief policymakers" in the three municipal liability counts. [6] The amended complaint alleges the factual circumstances giving rise to the plaintiff's federal civil rights claims, mostly in the passive tense, but it ascribes no conduct whatsoever to *any* of the individual named defendants. All allegedly wrongful conduct is attributed only generally to "Defendants," "prison employees," "medical providers," "jail or medical staff," and "no one."

"This type of pleading fails to satisfy Rule 8 'because it does not place Defendants on notice of the claims against each of them.' " *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 386 (D.N.J. 2019); *see also Caristo v. Blairsville-Saltsburg Sch. Dist.*, 370 F. Supp. 3d 554, 569 n.21 (W.D. Pa. 2019) ("Without separately alleging the conduct of each Defendant, Defendants are not on notice of their conduct."). *See generally Prater v. Am. Heritage Fed. Credit Union*, 351 F. Supp. 3d 912, 916 (E.D. Pa. 2019) ("Rule 8 requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue.") (internal quotation marks omitted). Group pleading such as this, lumping sixteen defendants together without setting forth what each particular defendant is alleged to have done, is impermissibly vague. *See Mills*, 406 F. Supp. 3d at 386–87. "Alleging that 'Defendants' undertook certain illegal acts—without more—injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom when. Such speculation is anathema to contemporary pleading standards." *Id.* at 387.

**\*6** Moreover, this vague pleading fails to state a § 1983 claim upon which relief can be granted. It is well established that "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown, via the complaint's allegations, to have been *personally involved* in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted) (emphasis added). As previously explained by the Third Circuit:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs .... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986).

Here, there are no specific allegations regarding the conduct of *any* individual defendant. Absent any specific allegations

Case 3:22-cv-01754-JFS-PJC   Document 115-10   Filed 06/13/25   Page 6 of 9

Cupp on behalf of Cupp v. County of Lycoming, Not Reported in Fed. Supp. (2021)
2021 WL 4478304

of personal involvement by these defendants, the plaintiff has failed to state a plausible § 1983 claim against any of them. *See Simonton v. Ryland-Tanner*, 836 Fed. App'x 81, 84 (3d Cir. 2020) (per curiam); *Evancho*, 423 F.3d at 353; *see also Caristo*, 370 F. Supp. 3d at 569 n.21 ("Plaintiff must plead facts demonstrating the specific personal involvement of each Individual Defendant as to any Constitutional deprivations she alleges. Group pleading as to such matters will not suffice.").

Accordingly, the plaintiff's claims against all sixteen individual defendants in their personal capacity will be dismissed as impermissibly vague, pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### C. Municipal Liability: Denial of Adequate Medical Care

Count II of the amended complaint seeks to hold Lycoming County liable for the allegedly unconstitutional conduct of its employees or agents in connection with the death of Ashley Cupp.

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. Lycoming County is such a municipality subject to liability as a "person" under § 1983. *See id.* at 694; *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013).

But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

**\*7** As the Third Circuit has explained:

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (citations, internal quotation marks, and brackets omitted).

Here, the amended complaint has alleged the third type of municipal liability—a complete failure by the County to impose any policy at all with regard to the immediate medical treatment and medication needs of inmates with serious medical conditions. The allegations of the amended

Case 3:22-cv-01754-JFS-PJC   Document 115-10   Filed 06/13/25   Page 7 of 9

Cupp on behalf of Cupp v. County of Lycoming, Not Reported in Fed. Supp. (2021)
2021 WL 4478304

complaint skate perilously close to being conclusory. *See, e.g.*, *Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 441 (2020) ("Yoast's ... allegation that PrimeCare does not have a policy 'to address the medical needs of inmates with serious medical conditions' is a conclusory allegation which the Court does not credit."). But based on the facts alleged with respect to the utter failure of jail and medical staff to respond Cupp's entreaties for medical care over the course of months, despite her allegedly well known serious medical needs, we find the allegations sufficient to support a plausible *Monell* claim against the County under this third category identified in *Natale*. *See Kitchen v. Clinton Cty.*, No. 3:19-CV-1936, 2020 WL 3052864, at *4–*5 (M.D. Pa. June 8, 2020).

Accordingly, with respect to Count II of the amended complaint, asserting a municipal liability claim against Lycoming County based on the deliberate indifference of its employees or agents to the decedent's serious medical needs, the County's motion to dismiss will be denied.

### D. Municipal Liability: Failure to Intervene

The municipal liability claim asserted in Count IV of the amended complaint is *identical* to the municipal liability claim asserted in Count II; other than its heading, Count IV is a verbatim reproduction of Count II. "As a matter of judicial economy, courts should dismiss a claim if it is duplicative of another claim in the same suit." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010). "Duplicative claims are those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Id.* Because Count IV "does not present any legal or factual theories that are not already subsumed in" Count II, we will dismiss Count IV as duplicative. *Rodriguez v. Lab. Corp. of Am. Holdings*, 13 F. Supp. 3d 121, 128 (D.D.C. 2014).

**\*8** Accordingly, Count IV of the amended complaint will be dismissed as duplicative, pursuant to the Court's inherent authority to control its docket and avoid duplicative claims.

### E. Municipal Liability: Failure to Protect from Suicide

Count VI of the amended complaint asserts a municipal liability claim against Lycoming County based on the deliberate indifference of its employees or agents to the particular vulnerability to suicide of the decedent. *See generally Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (outlining elements of a prison suicide § 1983 claim). But, while the decedent may have had a history that included prior suicide attempts, there is no allegation in the amended complaint that she committed or attempted to commit suicide during the period of incarceration at issue in this case. In the absence of the allegation of an attempt to commit suicide or any injury whatsoever to the decedent that resulted from the alleged conduct of the County and its employees with respect to her particular vulnerability to suicide, we find the plaintiff has failed to state a plausible claim of deliberate indifference to serious medical needs based on the decedent's particular vulnerability to suicide. *See Stribling v. Brock*, Case No. 15-cv-03336-YGR (PR), 2017 WL 950803, at *12–*13 (N.D. Cal. Mar. 10, 2017) (granting summary judgment where inmate made no attempt to commit suicide).

Accordingly, Count VI of the amended complaint will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### F. State-Law Medical Negligence Claim

In Count VII of the amended complaint, the plaintiff asserts medical negligence claims against Dr. Keenan and Dr. Schifferli, both of whom are alleged to be County employees.[7] As municipal employees, these defendants are immune from medical negligence claims under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. Ann. § 8541 *et seq. See Giandonato v. Montgomery Cty.*, No. Civ. A. 97-CV-0419, 1998 WL 314694, at *6 (E.D. Pa. May 22, 1998) (finding physician contracted to provide psychiatric services to inmates at county jail was immune from medical malpractice claims under the PSTCA); *Daniel v. City of Philadelphia*, Civ. A. No. 88-6849, 1989 WL 45752, at *2 (E.D. Pa. May 1, 1989) ("Local governments and their employees are immune from claims of medical malpractice under [the PSTCA]."); *Henagan v. Katz*, 509 A.2d 1387, 1388 (Pa. Commw. Ct. 1986) (finding medical negligence claim against physician employed by city agency was barred by the PSTCA).

**\*9** Accordingly, Count VII of the amended complaint will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### G. Leave to Amend

Case 3:22-cv-01754-JFS-PJC     Document 115-10     Filed 06/13/25     Page 8 of 9

Cupp on behalf of Cupp v. County of Lycoming, Not Reported in Fed. Supp. (2021)
2021 WL 4478304

The Third Circuit has instructed that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In her briefs, the plaintiff has requested leave to amend if claims are dismissed, and it does not appear to us that amendment would be futile. Therefore, the amended complaint will be dismissed with leave to amend.

### IV. CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss will be granted in part and denied in part. All official-capacity claims against the individual defendants and Count IV of the amended complaint will be dismissed as duplicative. All personal-capacity § 1983 claims against the individual defendants will be dismissed as impermissibly vague and for failure to state a claim upon which relief can be granted. Counts VI and VII of the complaint will be dismissed for failure to state a claim upon which relief can be granted. The plaintiff will be granted leave to file an amended complaint.

An appropriate order follows.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4478304

---

### Footnotes

1   In addition to the allegations of the amended complaint, we have considered the publicly available docket record of the decedent's state court criminal proceedings. A district court, of course, may properly take judicial notice of state court records, as well as its own. *See* Fed. R. Evid. 201; *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 498–99 (3d Cir. 1997); *Pennsylvania v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967).

2   The parties dispute whether this action involves the decedent's rights under the substantive due process clause of the Fourteenth Amendment or under the cruel and unusual punishment clause of the Eighth Amendment. The plaintiff has relied on the Fourteenth Amendment, while the defendants argue that, as a probation violator, the decedent's rights arose out of the Eighth Amendment instead. But until a hearing is held and parole is actually revoked, "a parole violator is no different from a pretrial detainee who is merely awaiting trial and who, until conviction and sentencing, cannot commence service of a term of imprisonment." *United States v. Dobson*, 585 F.2d 55, 59 (3d Cir. 1978); *see also Rosario v. Strawn*, Civil Action No. 19-1040, 2020 WL 6730975, at *6 (W.D. Pa. July 29, 2020). Thus, the decedent had the status of a pretrial detainee—not a convicted inmate—at the time of the underlying events, and the plaintiff has properly pleaded violations of her substantive due process rights under the Fourteenth Amendment.

3   In Counts II, IV, and VI, the plaintiff has alleged that the warden, both deputy wardens, and the medical director were "chief policymakers" for the jail, against whom she asserts § 1983 supervisory liability claims.

4   Count VI is mislabeled in the amended complaint as a second "Count IV."

5   The amended complaint includes a Count VII as well—mislabeled as a second "Count V"—asserting state-law medical negligence claims against the two physician defendants, Dr. Keenan and Dr. Schifferli.

6   Dr. Keenan is also alleged to be the "medical director in charge of maintaining the health care system in the Lycoming County Prison" in the medical negligence count.

Case 3:22-cv-01754-JFS-PJC    Document 115-10    Filed 06/13/25    Page 9 of 9

**Cupp on behalf of Cupp v. County of Lycoming, Not Reported in Fed. Supp. (2021)**
2021 WL 4478304

| | |
|---|---|
| 7 | In her brief in opposition, the plaintiff requests leave to amend this claim, pointing to a margin note in the physician defendants' brief in which they stated that they are not county employees, but rather provide medical services to inmates under a contract with the county. We note that whether the physicians are considered "employees" who fall within the scope of PTSCA immunity or "independent contractors" who do not appears to be a fact-intensive question. *Compare Giandonato v. Montgomery Cty.*, No. Civ. A. 97-CV-0419, 1998 WL 314694, at *6 (E.D. Pa. May 22, 1998) (finding physician who provided psychiatric services to inmates at county jail under contract was entitled to PTSCA immunity), *with Helsel v. Complete Care Servs., L.P.*, 797 A.2d 1051, 1054–58 (Pa. Commw. Ct. 2002) (finding administrator of county-owned health care facility was an independent contractor not entitled to PTSCA immunity). We have granted leave to amend more generally below, but in response to the plaintiff's express request, we note that amendment of this claim does not appear to be futile. |

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.