# EXHIBIT 14

Case 3:22-cv-01754-JFS-PJC   Document 115-14   Filed 06/13/25   Page 2 of 7
Best Medical Intern., Inc. v. Accuray, Inc., Not Reported in F.Supp.2d (2010)
2010 WL 5053919

2010 WL 5053919
Only the Westlaw citation is currently available.
United States District Court,
W.D. Pennsylvania.

BEST MEDICAL INTERNATIONAL, INC., Plaintiff,
v.
ACCURAY, INC., a corporation, Robert Hill, David Spellman, John David Scherch and Marcus Bittman, Defendants.

No. 2:10–cv–1043.
|
Dec. 2, 2010.

**Attorneys and Law Firms**

Robert O. Lampl, Pittsburgh, PA, for Plaintiff.

Janice A. Christensen, Alston & Bird LLP, New York, NY, Jennifer Liu, Madison C. Jellins, Alston & Bird LLP, Menlo Park, CA, Kirsten R. Rydstrom, Reed Smith LLP, Pittsburgh, PA, for Defendants.

*MEMORANDUM OPINION AND ORDER*

TERRENCE F. McVERRY, District Judge.

 *1 Pending before the Court are the following motions: DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (Document No. 10), DEFENDANTS' MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f) (Document No. 12), DEFENDANTS' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a) (Document No. 14), and DEFENDANTS' MOTION TO STRIKE SUR–REPLY BRIEF (Document No. 31). The motions have been thoroughly and exhaustively briefed (Document Nos. 11, 13, 15–19, 24–26, 29, 30, 32) and they are ripe for disposition.

*Motion to Strike Sur–Reply Brief*
Pursuant to the *Practices and Procedures of Judge Terrence F. McVerry:* "No surreply briefs are to be filed without leave of Court upon good cause shown." On November 12, 2010, Plaintiff asked leave of Court "to file an eight page rebuttal to Accuray's Reply." On November 15, 2010, the Court issued an Order which permitted Plaintiff "to file a Brief no more than eight pages in rebuttal to Accuray's Reply Brief...." On November 18, 2010, Plaintiff filed a sur-reply brief that is ten (10) pages in length, including the signature pages and certificate of service. Moreover, it is readily apparent (and uncontested) that the sur-reply was printed with 1.5 line spacing. Local Rule 5.1(B) (General Format of Papers Presented for Filing) states that the text of all documents "must be double-spaced."

Defendants contend that the sur-reply brief should be stricken because it fails to comply with the Local Rules and this chambers' Practices and Procedures. Plaintiff's counsel, in response, apologizes "for this minor oversight" but contends that Defendants' motion to strike the sur-reply is a waste of judicial resources.

The Court cannot agree with the suggestion of Plaintiff's counsel that the formatting of this sur-reply brief was either "minor" or an "oversight." The Court's Local Rules and this chambers' Practices and Procedures are not suggestions that may be disregarded at counsel's whim or convenience. Rather, they represent mandatory requirements which establish a fair and level playing field for all parties. Moreover, it certainly appears that the compressed line spacing was implemented in a deliberate and intentional effort to evade the page limitation imposed by this Court's Order of November 15, 2010. None of Plaintiff's other filings in this case were submitted in 1.5 line spacing. Even with the improper line spacing, the sur-reply brief exceeded the permitted number of pages which had been specifically requested by Plaintiff. In summary, Plaintiff's counsel has apparently disregarded the applicable rules in an attempt to obtain unfair advantage. Such tactics will not be condoned.

In accordance with the foregoing, DEFENDANTS' MOTION TO STRIKE SUR–REPLY BRIEF (Document No. 31) will be **GRANTED.**

*Factual and Procedural Background*
The facts set forth are based on the allegations of the Complaint. The Court is aware that Plaintiff's counsel has provided additional factual detail in his briefs, but such "after the fact allegations" are not considered by the Court in determining the sufficiency of a complaint pursuant to Fed.R.Civ.P. 12(b)(6). *Frederico v. Home Depot,* 507 F.3d 188, 201–02 (3d Cir.2007) (citations omitted) (it is axiomatic that a complaint may not be amended by a brief in opposition to a motion to dismiss).

**\*2** This is a patent infringement case brought against a corporation, Accuray, Inc. ("Accuray"), and four former employees of Plaintiff Best Medical International, Inc. ("BMI"), Robert Hill, David Spellman, John David Scherch and Marcus Bittman (the "Individual Defendants"). In a nutshell, Plaintiff alleges that the Individual Defendants formed a team to help Accuray develop a new cancer treatment system, the CyberKnife VSI, which allegedly infringes on Plaintiff's patent. In Count I, Plaintiff alleges that all Defendants "directly and contributorily infringed" one or more claims of its patent, and that Accuray "induced" infringement of the patent. In Count II, Plaintiff alleges that the four Individual Defendants "aided and abetted Accuray's infringement of Plaintiff's patent." Plaintiff seeks a declaration that its patent is valid and enforceable; that Defendants have directly or contributorily infringed, and/or induced infringement; and that the infringement was willful. Plaintiff also seeks attorney fees and costs, treble damages, and injunctive relief.

BMI is a Virginia corporation. Accuray is a California corporation, with a principal place of business in California. The Complaint alleges that three of the four Individual Defendants reside in western Pennsylvania. Apparently, Bittman relocated to California prior to the filing of Defendants' motion to transfer venue. The Complaint alleges federal question jurisdiction and that venue is proper in this Court.

On September 11, 2007, BMI purchased most of the assets of NOMOS Corporation and North American Scientific. As a result of the purchase, BMI became the owner of U.S. Patent No. 5,596,619 ("the ′619 patent"). The subject-matter of the ′619 patent is generally described in the oncological community as Intensity Modulated Radiation Therapy ("IMRT"). In layman's terms, the technology is used in cancer treatment to conform and confine the shape of the x-rays to the shape of the tumor, thus sparing adjacent healthy tissue from radiation.

Hill is a former employee of Plaintiff who resigned and accepted employment with Accuray, presumably at some time in 2007. Plaintiff alleges that prior to his departure, Hill downloaded confidential, proprietary information and trade secrets from BMI computers. Scherch, Spellman and Bittman were also former employees of Plaintiff who became employed by Accuray at unspecified dates. The Complaint alleges that all of the Individual Defendants improperly downloaded confidential, proprietary information of BMI.

There are three other lawsuits between these parties, which are consolidated and currently pending before Judge William Standish of this Court. In Civil Action No. 07–1709, Hill sued BMI for benefits due at the time of his termination and BMI counterclaimed regarding his alleged misappropriation of confidential and trade secret information. In Civil Action No. 08–1404, BMI filed suit against the four Individual Defendants, alleging conversion and theft of trade secrets. In Civil Action No. 09–1194, BMI sued Accuray and the Individual Defendants, alleging a conspiracy to steal its confidential and trade secret information. This case was not designated by Plaintiff as a "related case" upon filing.

**\*3** On November 2, 2009 and February 28, 2010, Accuray announced that it had developed and is marketing a new product, the CyberKnife VSI System, that utilizes IMRT technology. Plaintiff alleges that the "IMRT technology used in the CyberKnife VSI is owned by the Plaintiff and apparently was provided to said Defendant Accuray ... by Defendants Scherch, Hill, Bittman and Spellman." Complaint ¶ 25. Accordingly, Plaintiff claims that the Individual Defendants have actively induced Accuray to infringe Plaintiff's patent.

In Count I, Plaintiff alleges that Accuray's manufacture and sale of the CyberKnife VSI System infringes the ′619 Patent. Plaintiff alleges that all Defendants directly and contributorily infringed the Patent willfully and deliberately, and that Accuray induced infringement. In Count II, Plaintif alleges that the Individual Defendants "aided and abetted Accuray's infringement" by divulging Plaintiff's trade secrets and intellectual property to Accuray and/or by downloading Plaintiff's trade secrets and intellectual property and disclosing it to Accuray. The Complaint contains virtually identical prayers for relief after each Count, in which Plaintiff seeks injunctive relief and damages.

*Standard of Review*
A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) challenges the legal sufficiently of the complaint filed by Plaintiff. The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555(207) (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Twombly,* the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a ***plausible*** claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (emphasis added).

Thus, after *Iqbal,* a district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir.2009). First, the Court must separate the factual and legal elements of the claim. *Id.* Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id.* at 210–211. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.* at 211 (citing *Iqbal* 129 S.Ct. at 1949). The determination for "plausibility" will be " 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " *Id.* at 211 (quoting *Iqbal* 129 S.Ct. at 1950).

**\*4** As a result, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Id.* at 211. That is, "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* at 210 (quoting *Iqbal,* 129 S.Ct. at 1948).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and the requirements of Fed.R.Civ.P. 8 must still be met. *See Phillips v. Co. of Allegheny,* 515 F.3d 224, 231 (3d Cir.2008) (internal citations omitted). Fed.R.Civ.P. 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly,* 550 U.S. at 555 n. 3 (internal citations and quotations omitted). Additionally, the Supreme Court did not abolish the Fed.R.Civ.P. 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231(citing *Twombly,* 550 U.S. at 553).

The Appendix to the Federal Rules of Civil Procedure contains Form 18, which provides a template for a complaint of patent infringement. Form 18 consists of only four paragraphs, which set forth: (1) a statement of jurisdiction; (2) an identification of the patent at issue and an assertion of ownership; (3) an assertion and description of how Defendant is infringing the patent; and (4) an assertion that Plaintiff has complied with the statutory notice requirements and has given Defendant written notice of the infringement. Form 18 also contains an abbreviated demand for injunctive relief and damages. In *McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1357 (Fed.Cir.2007) (*citing Twombly,* 550 U.S. at 565 n. 10), the Federal Circuit Court of Appeals held that Form 18 complies with the *Twombly* pleading standard for a direct infringement claim. *Accord Xpoint Technologies, Inc. v. Microsoft Corp.,* 2010 WL 3187025 *2 (D.Del.2010). *McZeal* was decided prior to *Iqbal,* and involved a pro se plaintiff. Moreover, Form 18 has not been updated or revised post-*Iqbal.* Nevertheless, the Court is mindful that to state a claim, "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *Id.*

*Legal Analysis*
There are two counts in the Complaint. However, Plaintiff has referred to four different legal theories: (1) direct infringement; (2) induced infringement; (3) contributory infringement; and (4) aiding and abetting infringement. Each of these theories will be addressed seriatim.

A. Direct Infringement
**\*5** A cause of action for "direct" infringement arises under 35 U.S.C. § 271(a), which provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." In *Xpoint Technologies,* 2010 WL 3187025, the Court relied on Form 18 to set forth the elements of a direct infringement claim as follows: "(1) an allegation of jurisdiction; (2) a statement that plaintiff owns the patent; (3) a statement that defendant has been

infringing the patent by 'making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages." *Id. Accord McZeal,* 501 F.3d at 1357.

In this case, the Complaint arguably addresses elements 1–3 and 5. Notably, the Complaint specifically identifies the allegedly infringing product, the CyberKnife VSI System, although there are no factual averments as to how each of the various Defendants are "making, selling or using" the product. The Court need not resolve that issue because the Complaint does not contain any averments regarding "notice" of the infringement.

The Complaint alleges that Accuray announced its development of the CyberKnife VSI System via a press release in November 2009 and in its 10Q SEC filing on February 28, 2010. The Complaint contains no averment that Plaintiff gave Defendants notice of the alleged infringement. The press release and 10Q filing are attached as exhibits to the Complaint, but a copy of a "cease and desist" letter is glaringly absent.[1] The Court is aware that the parties have continued to litigate the consolidated cases before Judge Standish. However, the Court is unwilling to simply assume that appropriate written notice of the alleged infringement occurred. Indeed, Plaintiff has cited to *McZeal* and is presumably aware of the elements of a prima facie case set forth therein. Because such "notice" is an essential element of the prima facie case, the "direct infringement" cause of action must be dismissed.

B. Induced Infringement

The patent infringement statute, 35 U.S.C. § 271(b), states: "Whoever actively induces infringement of a patent shall be liable as an infringer."[2] There are four necessary elements of a prima facie case of induced infringement: (1) there was direct infringement by the induced party; (2) the inducer had knowledge of the asserted patents; (3) the inducer "possessed specific intent [and] not merely ... knowledge of the acts alleged" to induce; and (4) there was active inducement of the direct infringer." *Medtronic Vascular, Inc. v. Boston Scientific Corp.,* 348 F.Supp.2d 316, 323 (D.Del.2004) (citing *Ferguson Beauregard/Logic Controls v. Mega Sys.,* 350 F.3d 1327, 1342 (Fed.Cir.2003)).

Claims for induced infringement cannot exist in the absence of direct infringement. *Mallinckrodt, Inc. v. E–Z–Em Inc.,* 670 F.Supp.2d 349, 353 (D.Del.2009) (citing *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1272 (Fed.Cir.2004)). In order to prevail on an induced infringement claim under § 271(b), a plaintiff must first demonstrate direct infringement, then establish that the "defendant possessed the requisite knowledge or intent to be held vicariously liable." *Id.*

*6 As explained above, the Complaint has failed to allege that Defendants received notice of the alleged infringement. The "notice" requirement for an "induced infringement" claim is more rigorous, as Plaintiff must allege not only that the defendant knowingly induced infringement but also that he/she had a specific intent to encourage that infringement. *Broadcom Corp. v. Qualcomm Inc.,* 543 F.3d 683, 697–98 (Fed.Cir.2008). Accordingly, the Complaint fails to state a cognizable "induced infringement" claim.

C. Contributory Infringement

Count I of the Complaint uses the term "contributory infringement," apparently as a synonym for "induced infringement." To the extent that Plaintiff is attempting to articulate a separate claim for "contributory infringement," such a claim is not cognizable. 35 U.S.C. § 271(c) defines "contributory infringement" narrowly, to refer to the sale or importation of a component to be made or adapted for use in an infringement of a patent. *See Oxford Gene Tech. Ltd. V. Mergen Ltd.,* 345 F.Supp.2d 444, 465 (D.Del.2004) (listing elements of "contributory infringement" claim). The Complaint does not state the elements of a prima facie case of "contributory infringement," as defined in Section 271(c), nor does it allege facts that would support such a claim.[3]

D. "Aiding and Abetting" Infringement

Count II of the Complaint asserts a claim against the Individual Defendants for "aiding and abetting Accuray's infringement of Plaintiff's patent." Plaintiff does not cite a specific statutory section as a basis for this theory. The Court concludes that there is no separate and distinct claim for "aiding and abetting" infringement. Rather, this theory is merely an alternative description of an "induced infringement" claim.

Numerous cases have stated that in order to hold corporate officers liable for indirect infringement, it is necessary to show that they knowingly "aided and abetted" the direct infringement. However, these references do not create a separate, independent cause of action. To the contrary,

the references explain the parameters of the "induced infringement" cause of action set forth in § 271(b). This point is clearly illustrated in *Warner–Lambert Co. v. Apotex Corp.,* 316 F.3d 1348, 1363 (Fed.Cir.2003) (emphasis added):

> Warner–Lambert has asserted ***inducement of infringement under 35 U.S.C. § 271(b).*** Under § 271(b), "whoever actively induces infringement of a patent shall be liable as an infringer." To succeed on this theory, a plaintiff must prove that the defendants' "actions induced infringing acts and that [they] knew or should have known [their] actions would induce actual infringement." *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553, 16 USPQ2d 1587, 1594 (Fed.Cir.1990). However, that defendants have "knowledge of the acts alleged to constitute infringement" is not enough. *Id.* "[P]roof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement." *Hewlett–Packard Co. v. Bausch & Lomb Inc.,* 909 F.2d 1464, 1469, 15 USPQ2d 1525, 1529 (Fed.Cir.1990). ***"Inducement*** requires proof that the accused infringer knowingly ***aided and abetted*** another's direct infringement of the patent." *Rodime PLC v. Seagate Tech., Inc.,* 174 F.3d 1294, 1306, 50 USPQ2d 1429, 1437 (Fed.Cir.1999).

**\*7** Although proof that a defendant "aided and abetted" another's direct infringement is necessary, the underlying cause of action is for "induced infringement," based on § 271(b). There is no separate cause of action for "aiding and abetting infringement." Indeed, Plaintiff's brief at 15 appears to disavow a separate "aiding and abetting" infringement claim, by explaining that Count I "technically includes all [ ] claims against all the Defendants" and that Plaintiff's ordinary usage of the phrase "aiding and abetting" was a reference to indirect infringement. In sum, Count II of the Complaint fails to set forth a separate cognizable claim for "aiding and abetting infringement."

In accordance with the foregoing, DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (Document No. 10) is **GRANTED.**

*Leave to Amend Complaint*
Defendants contend that the Complaint should be dismissed without leave to amend. If a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir.2004); *Accord Grayson v. Mayview State Hosp.,* 293 F.3d 103 (3d Cir.2002). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.* The district court may dismiss the action if the plaintiff does not file a timely amended complaint, or if the plaintiff files a notice of his intent to stand on the complaint as filed.

The Court will grant Plaintiff leave to amend the Complaint. However, in addition to the legal shortcomings identified above, Defendants have raised other challenges which may have merit. Specifically, Defendants contend: (1) that the direct infringement claims against the Individual Defendants must fail because there is no allegation that they "made, used or sold" the CyberKnife VSI System and there is no basis for piercing the corporate veil; (2) that the inducement claims against the Individual Defendants should be dismissed because they neither direct nor control Accuray and the Complaint fails to set forth facts regarding each individual's alleged improper conduct; (3) that the "aiding and abetting" allegations cannot be used to sidestep the pleading requirements for contributory and/or inducing infringement; (4) that the Complaint has failed to aver the elements or supporting facts necessary to establish a "willful" infringement; and (5) that the allegations regarding trade secrets are immaterial and redundant. In addition, the Complaint is somewhat confusing as to whether BMI alleges that Accuray induced infringement by one or more of the Individual Defendants, or vice versa. If Plaintiff chooses to file an amended complaint, it will be important to address these alleged shortcomings as well, to assure that the amended complaint contains sufficient factual allegations to render the claim(s) "plausible" as to each Defendant in compliance with the pleading standard set forth in *Twombly* and *Iqbal.* Plaintiff should also evaluate whether the case should be designated as "related" to the other pending actions.

**\*8** Plaintiff may file an Amended Complaint on or before December 16, 2010.

*The Remaining Motions*
In light of the Court's conclusion that the Complaint fails to state a valid claim, DEFENDANTS' MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f) (Document No. 12), and DEFENDANTS' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a) (Document No. 14) will be **DENIED AS MOOT.** Defendants may re-assert these motions, if warranted, upon the filing of an amended complaint.

An appropriate Order follows.

### ORDER OF COURT

AND NOW, this 2nd day of December, 2010, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (Document No. 10) is **GRANTED;** DEFENDANTS' MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f) (Document No. 12) and DEFENDANTS' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a) (Document No. 14) are **DENIED AS MOOT;** and DEFENDANTS' MOTION TO STRIKE SUR–REPLY BRIEF (Document No. 31) is **GRANTED.**

Plaintiff may file an Amended Complaint on or before December 16, 2010.

### All Citations

Not Reported in F.Supp.2d, 2010 WL 5053919

---

### Footnotes

1   Plaintiff's counsel asserts at p. 13 of the brief that Accuray was "well aware" of the #619 patent and specifically colluded with the Individual Defendants to build an infringing product. Such allegations are not set forth in the Complaint. *See Frederico,* 507 F.3d at 201–02.

2   It is clear that Complaint ¶ 26 contains a simple typographical error. Defendants clearly were put on notice of the statutory basis for Plaintiff's inducement claim. *See, e.g.,* Complaint ¶ 32.

3   The Court does not reach the question of whether the allegations in pp. 10–12 of Plaintiff's brief would suffice to state a "contributory infringement" claim.

---

**End of Document**                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.