# EXHIBIT 2

Case 3:22-cv-01754-JFS-PJC   Document 119-2   Filed 06/13/25   Page 2 of 10

Davis v. Pennsylvania Department of Corrections, Not Reported in Fed. Supp. (2019)
2019 WL 6338015

2019 WL 6338015
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Angelo L. DAVIS, Plaintiff,
v.
PENNSYLVANIA DEPARTMENT
OF CORRECTIONS, et al., Defendants.

CIVIL ACTION NO. 1:16-cv-00515
|
Signed 11/06/2019

**Attorneys and Law Firms**

Angelo L. Davis, Harrisburg, PA, pro se.

Daniel J. Gallagher, Office of the Attorney General, Harrisburg, PA, for Defendants.

### REPORT AND RECOMMENDATION

JOSEPH F. SAPORITO, JR., United States Magistrate Judge

 *1  The plaintiff, Angelo L. Davis, filed his original *pro se* complaint in this prisoner civil rights action on March 25, 2016. (Doc. 1.) At the time of filing, he was no longer incarcerated, having been released from prison nine days earlier. On January 11, 2018, with leave of court, Davis filed his amended complaint.[1] (Doc. 68; Doc. 71; *see also* Doc. 73.)

On April 15, 2019, the defendants filed a motion for summary judgment (Doc. 126), together with their statement of material facts and supporting exhibits (Doc. 127). On April 29, 2019, the defendants filed their brief in support of the motion for summary judgment. (Doc. 130.) Several months later, after multiple extensions of time, the plaintiff has failed to file any substantive response in opposition to the defendants' motion. (*See* Doc. 132; Doc. 133; Doc. 134; Doc. 135; Doc. 136; Doc. 137; Doc. 138; Doc. 139; Doc. 140; Doc. 141; Doc. 142; Doc. 143.)

The matter is ripe for disposition.

### I. BACKGROUND

The plaintiff's claims arise out of a pair of "shakedown" cell searches that occurred on October 9 and 13, 2014. Correctional officers conducting the searches were looking for K2 synthetic marijuana, none of which was found in the plaintiff's possession. At the time, Davis was incarcerated at SCI Camp Hill, located in Cumberland County, Pennsylvania. He had only recently arrived there from another prison.

Various items of the plaintiff's personal property were confiscated as a result of these "shakedown" searches, and he received a misconduct report charging him with possession of contraband, lying to an employee, loaning and borrowing property, and failure to report contraband. Some of these items had been received by Davis from other inmates when they were released from prison. Prior to his arrival at SCI Camp Hill, Davis had been through multiple "shakedown" cell searches at other institutions, where he had been permitted to keep the same items of property without confiscation or misconduct charges.

On October 15, 2014, a disciplinary hearing on the misconduct charges was held before a hearing examiner. Davis was found guilty and sanctioned with 30 days in the restricted housing unit ("RHU"). In his complaint, Davis alleged that he was not provided with copies of property confiscation slips or his legal property, which impaired his ability to mount a defense at the disciplinary hearing. He unsuccessfully appealed the disciplinary sanction.

While in the RHU, Davis has alleged that his cell was unfit for human habitation. He claims that it had rodent droppings on the floor, a broken sink and toilet, and water (including urine) on the floor. He has further alleged that he had a hernia at the time and was denied medical attention or treatment, and that he was forced to jump up to and down from the top bunk while suffering from this untreated hernia.

Davis also alleged that he was actively litigating two federal civil rights actions at that time, and the confiscation of his legal property interfered with his ability to litigate those actions: *Davis v. Harlow*, W.D. Pa. Case No. 2:11-cv-01506, and *Davis v. Pennsylvania Dep't of Corrs.*, W.D. Pa. Case No. 2:14-cv-01551.

### II. LEGAL STANDARD
 *2  Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

Case 3:22-cv-01754-JFS-PJC   Document 119-2   Filed 06/13/25   Page 3 of 10

Davis v. Pennsylvania Department of Corrections, Not Reported in Fed. Supp. (2019)
2019 WL 6338015

56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

Here, the defendants have moved for summary judgment, but the plaintiff has failed to submit a brief in opposition or any other papers contesting the defendant's motion. The plaintiff's failure to actively oppose the defendant's motion for summary judgment implicates two local rules, which provide that a party who fails to file a brief in opposition to a motion "shall be deemed not to oppose such motion," L.R. 7.6, and that all material facts set forth in the movant's statement of material facts "will be deemed to be admitted unless controverted" by a counter-statement of material facts by the non-movant, L.R. 56.1.

However, the plaintiff's failure to respond to the motion does not mean that the defendants are automatically entitled to summary judgment. *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). These local rules must be construed and applied in a manner consistent with Rule 56 of the Federal Rules of Civil Procedure. *See id.* at 174. Thus, in the context of a motion for summary judgment, a non-movant's failure to file an opposition brief and counter-statement of material facts is "construed as effecting a waiver of [the non-movant's] right to controvert the facts asserted by the moving party in the motion for summary judgment or the supporting material accompanying it." *Id.* at 175–76. The moving party must nevertheless establish that, based on the facts set forth in support of its motion, it is entitled to judgment as a matter of law. *See id.*; *see also Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993); *Miller v. Ashcroft*, 76 Fed. App'x 457, 462 (3d Cir. 2003) ("Even though the applicable [Middle District of Pennsylvania] local rules provide that a summary judgment motion is to be considered unopposed and its statement of material facts admitted where a responsive brief is not timely filed, the Magistrate Judge was still required to find that the undisputed facts warranted judgment as a matter of law.") (citations omitted).

**\*3** In other words, in the absence of active opposition by the non-movant, the two-step, burden-shifting analysis that normally applies on summary judgment is abbreviated to just the first step, requiring the moving party to make a prima facie showing that it is entitled to summary judgment, based on the undisputed facts of record. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

### III. DISCUSSION

Davis asserts federal civil rights claims pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action with

Case 3:22-cv-01754-JFS-PJC   Document 119-2   Filed 06/13/25   Page 4 of 10
Davis v. Pennsylvania Department of Corrections, Not Reported in Fed. Supp. (2019)
2019 WL 6338015

respect to the violation of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

Here, Davis claims that the defendants conducted an unreasonable search of his prison cell for contraband and confiscated legal documents and other personal property from his cell, in violation of his Fourth Amendment rights. He claims that his Fourteenth Amendment equal protection rights were violated because some of the property seized from his cell had previously been in the possession of other inmates without seizure of the property or disciplinary charges against them. He claims that his Fourteenth Amendment due process rights were violated by the seizure of his personal property. He claims that he was denied his First and Fourteenth Amendment right of access to courts because the seizure of his legal property interfered with his ability to litigate two civil rights actions. Davis claims that he was denied his Fourteenth Amendment due process right to present documentary evidence in his defense at his disciplinary hearing. He claims that his due process rights were also violated when a deputy superintendent failed to timely respond to his misconduct appeal. Davis claims that his confinement in an RHU cell with mouse droppings and the stench of urine constituted cruel and unusual punishment in violation of his Eighth Amendment rights. Davis further claims that one of the defendants was deliberately indifferent to his serious medical needs because she assigned him to a top bunk even though he had a hernia. He claims, in cursory fashion only, that he was deprived of his Thirteenth Amendment right to be free from involuntary servitude or slavery. Finally, Davis claims that he was held by Pennsylvania Department of Corrections ("DOC") illegally because it had failed to receive and maintain a valid copy of his sentencing order.

### A. Sentencing Order Claim

We begin with the last of these claims. Davis claims that he was illegally incarcerated because the DOC was unable to provide him with a copy of his sentencing order—implying that no valid sentencing order ever existed. This claim is barred by the doctrine of res judicata. Under this doctrine, a claim is barred where three circumstances are present: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991).

**\*4** With respect to the first factor, Davis presented the very same claim in a prior lawsuit, where it was dismissed with prejudice for failure to state a claim upon which relief could be granted. *See Davis v. Pa. Dep't of Corrs.*, Civil Action No. 14-1551, 2016 WL 1639623 (W.D. Pa. Apr. 26, 2016). No appeal was taken. This constitutes final judgment on the merits for res judicata purposes. *See Strunk v. Wells Fargo Bank, N.A.*, 614 Fed. App'x 586, 588 (3d Cir. 2015) (per curiam). Thus, the first *Lubrizol* factor has been satisfied with respect to this claim.

With respect to the second factor, the Pennsylvania Department of Corrections was the lead defendant in both actions. The other defendants named in this action are DOC employees in privity with it. *See Jones v. Holvey*, 29 F.3d 828, 830 (3d Cir. 1994). Moreover, under this factor, it is not necessary for the full roster of named defendants in each action to be identical. *See Coggins v. Carpenter*, 468 F. Supp. 270, 280 (E.D. Pa. 1979) ("Res judicata operates to bar a subsequent action ... even though the subsequent action names fewer or more parties than the previous action."). Thus, the second *Lubrizol* factor has been satisfied in this case.

Case 3:22-cv-01754-JFS-PJC   Document 119-2   Filed 06/13/25   Page 5 of 10
Davis v. Pennsylvania Department of Corrections, Not Reported in Fed. Supp. (2019)
2019 WL 6338015

Finally, with respect to the third factor, in determining whether a subsequent suit concerns the same cause of action as an earlier one, the analysis does not rest on the specific legal theories invoked, but rather it turns on "the essential similarity of the underlying events giving rise to the various legal claims." *Davis v. U.S. Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982). In conducting this inquiry, the analysis focuses on "whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same." *Lubrizol*, 929 F.2d at 963 (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)). Moreover, res judicata bars not only claims that were actually brought in the previous action, but also claims that, "although not litigated, *could have been raised* in the earlier proceeding." *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) (emphasis in original). Here, other than the roster of defendants, which includes prison officials at SCI Camp Hill instead of prison officials at SCI Greene, there is no difference whatsoever in the facts alleged or legal claims advanced in either lawsuit with respect to this claim. Thus, the third *Lubrizol* factor has been satisfied in this case.

Having satisfied all three *Lubrizol* factors, Davis's sentencing order claim in this federal civil action is barred by the doctrine of res judicata. The defendants have met their burden of making a prima facie showing that they are entitled to judgment as a matter of law based on the undisputed facts of record. Accordingly, it is recommended that the defendants' summary judgment motion be granted with respect to Davis's sentencing order claim.

### B. Exhaustion of Administrative Remedies

The balance of the plaintiff's claims concerns the conditions of his confinement prior to his release from prison. As a threshold matter, the defendants have raised as an affirmative defense that the plaintiff failed to exhaust available administrative remedies before bringing this action.

It is well established that, under the Prison Litigation Reform Act of 1995 ("PLRA"), before bringing a § 1983 action concerning prison conditions, a prisoner must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). But because Davis was no longer a prisoner at the time when he filed his complaint, he is not subject to the restrictions imposed by the PLRA. *See Ahmed v. Dragovich*, 297 F.3d 201, 210 & n.10 (3d Cir. 2002); *see also Abdul-Akbar v. McKelvie*, 239 F.3d 307, 314 (3d Cir. 2001) ("Section 1997e(a) of Title 42, amended by the PLRA, requires that the plaintiff exhaust administrative remedies, but only if the plaintiff is a prisoner at the time of filing."); *Bloom v. Hollibaugh*, Civil Action No. 1:16-CV-01075, 2019 WL 4464092, at *7 (M.D. Pa. Sept. 18, 2019) ("[T]he PLRA does not extend to former prisoners who have timely initiated lawsuits about prison conditions post-release."); *Zimmerman v. Berdanier*, No. 4:07-cv-0818, 2008 WL 11503557, at * 5 (M.D. Pa. Jan. 25, 2008); *Burton v. City of Philadelphia*, 121 F. Supp. 2d 810, 813 n.2 (E.D. Pa. 2000). As a former prisoner at the time of filing his complaint, Davis simply was not required to exhaust administrative remedies as a precondition to seeking relief.

### C. Unreasonable Cell Searches

**\*5** Davis claims that the searches of his cell on October 9 and 13, 2014, were unreasonable and, thus, violated his Fourth Amendment rights. As a convicted prisoner at the time, his claim is substantively meritless. "[I]t is well-settled that inmates do not have a reasonable expectation of privacy in their cells enabling them to invoke Fourth Amendment protections." *Ostrander v. Horn*, 145 F. Supp. 2d 614, 619–20 (M.D. Pa. 2001) (citing *Hudson v. Palmer*, 468 U.S. 517 (1984)).

The defendants have met their burden of making a prima facie showing that they are entitled to judgment as a matter of law based on the undisputed facts of record. Accordingly, it is recommended that the defendants' summary judgment motion be granted with respect to Davis's Fourth Amendment unreasonable search claim.

### D. Equal Protection

Davis claims that the seizure of personal property from his cell on October 13, 2019, violated his Fourteenth Amendment right to equal protection. He alleges that some of the property seized previously belonged to other inmates but it was not seized from them and they were not charged with misconduct for it, and he alleges that he was permitted to keep the property without seizure or misconduct charges at other institutions before his transfer to SCI Camp Hill.

To prevail on an equal protection claim, a plaintiff must demonstrate that he was treated differently from persons who are similarly situated, and that this discrimination was purposeful or intentional rather than incidental. *See City of*

Case 3:22-cv-01754-JFS-PJC    Document 119-2    Filed 06/13/25    Page 6 of 10
Davis v. Pennsylvania Department of Corrections, Not Reported in Fed. Supp. (2019)
2019 WL 6338015

*Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 423–24 (3d Cir. 2000). Mere conclusory allegations will not suffice. *See Blanchard v. Gallick*, 448 Fed. App'x 173, 176 (3d Cir. 2011).

Davis has failed to allege or raise a material issue of fact demonstrating that the defendants treated him differently because he is a member of a suspect class or because he exercised a fundamental right. *See City of Cleburne*, 473 U.S. at 439; *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010). Nor has Davis alleged or raised a material issue of fact demonstrating that he was "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Renchenski*, 622 F.3d at 337–38 (quoting *Olech*). Indeed, the only "similarly situated" inmate specifically identified in his pleadings is himself—in his complaint, Davis alleges only that CO Cubic's October 13, 2014, confiscation of property and issuance of misconduct charges was inconsistent with the immediate return to Davis of all property recovered during the earlier cell search on October 9, 2014. No other inmate is specifically identified or described.

The defendants have met their burden of making a prima facie showing that they are entitled to judgment as a matter of law based on the undisputed facts of record. Accordingly, it is recommended that the defendants' summary judgment motion be granted with respect to Davis's Fourteenth Amendment equal protection claim.

### E. Seizure of Personal Property

Davis claims that the seizure of his personal property violated his Fourteenth Amendment procedural due process rights. It is well established, however, that adequate state post-deprivation remedies are available to Pennsylvania inmates claiming the wrongful confiscation of personal property by prison officials, thus foreclosing the plaintiff's due process claim concerning the seizure of his personal property. *See Austin v. Lehman*, 893 F. Supp. 448, 453–54 (E.D. Pa. 1995); *Gilmore v. Jeffes*, 675 F. Supp. 219, 221 (M.D. Pa. 1987); *Shabazz v. Odum*, 591 F. Supp. 1513, 1518 (M.D. Pa. 1984).

**\*6** The defendants have met their burden of making a prima facie showing that they are entitled to judgment as a matter of law based on the undisputed facts of record. Accordingly, it is recommended that the defendants' summary judgment motion be granted with respect to Davis's Fourteenth Amendment due process claim concerning the seizure of his personal property.

### F. Access to Courts

Davis claims that the seizure of his legal papers unconstitutionally interfered with his right of access to the courts. Specifically, he claims that the confiscation of these legal papers interfered with his ability to litigate two federal civil rights cases: *Davis v. Harlow*, Case No. 2:11-cv-01506 (W.D. Pa.), and *Davis v. Pennsylvania Dep't of Corrs.*, Case No. 2:14-cv-01551 (W.D. Pa.).

Prisoners have a constitutional right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). To prevail on an access to courts claim, the plaintiff must demonstrate that: (1) he suffered an actual injury; and (2) there is no other remedy that can compensate for the injury. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008); *Oliver v. Fauver*, 118 F.3d 175, 177–78 (3d Cir. 1997). Actual injury is the loss of an opportunity to pursue a nonfrivolous or arguable claim. *Monroe*, 536 F.3d at 205 (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

Davis has failed to demonstrate any actual injury.

In the first case he has identified, *Davis v. Harlow*, W.D. Pa. Case No. 2:11-cv-01506, the district court granted summary judgment to the defendants on August 26, 2014—nearly seven weeks before the October 13, 2014, cell search upon which Davis bases this claim. *See Davis v. Harlow*, Civil Action No. 11-1506, 2014 WL 4250382 (W.D. Pa. Aug. 26, 2014), *aff'd per curiam*, 632 Fed. App'x 687 (3d Cir. 2015). On September 23, 2014, Davis filed a motion for leave to appeal *in forma pauperis*, which the Third Circuit subsequently construed as a timely filed notice of appeal. *See Davis v. Harlow*, 632 Fed. App'x 687, 689 n.2 (3d Cir. 2015) (per curiam). The appellate court ultimately affirmed the district court's summary judgment decision on the merits. *Id.* at 690–92. There is nothing whatsoever in the record before us to suggest that confiscation of legal papers from the plaintiff's cell on October 13, 2014, had any impact whatsoever on the outcome of the *Harlow* litigation.

The second case identified by the plaintiff, *Davis v. Pennsylvania Department of Corrections*, W.D. Pa. Case No. 2:14-cv-01551, was commenced when the plaintiff lodged his complaint for filing on November 13, 2014—one month after the October 13, 2014, cell search upon which Davis bases this

Case 3:22-cv-01754-JFS-PJC   Document 119-2   Filed 06/13/25   Page 7 of 10
Davis v. Pennsylvania Department of Corrections, Not Reported in Fed. Supp. (2019)
2019 WL 6338015

claim. *See* Motion for Leave to Proceed *In Forma Pauperis*, *Davis v. Pa. Dep't of Corrs.*, Case No. 2:14-cv-01551-LPL (W.D. Pa. Nov. 13, 2014), ECF No. 1. The complaint was ultimately dismissed by the district court for failure to state a claim and because it sought relief from a defendant that was immune from suit. *See Davis v. Pa. Dep't of Corrs.*, Civil Action No. 14-1551, 2016 WL 1639623 (W.D. Pa. Apr. 26, 2016). Davis did not appeal dismissal of this second action. There is nothing whatsoever in the record before us to suggest that confiscation of legal papers from the plaintiff's cell on October 13, 2014, had any impact whatsoever on the outcome of the *Pennsylvania Department of Corrections* litigation.

**\*7**  The defendants have met their burden of making a prima facie showing that they are entitled to judgment as a matter of law based on the undisputed facts of record. Accordingly, it is recommended that the defendants' summary judgment motion be granted with respect to Davis's First and Fourteenth Amendment access to court claim.

### G. Disciplinary Hearing

Davis claims that he was deprived of his Fourteenth Amendment due process right to present documentary evidence in his defense at his October 15, 2014, disciplinary hearing. In particular, he claims that he was not timely provided with copies of property confiscation slips or his legal property, which impaired his ability to mount a defense at the disciplinary hearing.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Att'y Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)); *see also Wolfe v. Pa. Dep't of Corr.*, 334 F. Supp. 2d 762, 773 (E.D. Pa. 2004).

Here, the only sanction imposed as a result of the disciplinary proceedings against Davis was his confinement in disciplinary custody for a period of 30 days. The Supreme Court of the United States has previously held that "discipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Sandin v. Conner*, 515 U.S. 472, 486 (1995) (finding no deprivation of a protected liberty interest in 30 days of disciplinary segregation); *see also Williams v. Bitner*, 307 Fed. App'x 609, 611 (3d Cir. 2009) (per curiam) (90 days disciplinary segregation); *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (7 months disciplinary confinement); *Young v. Beard*, 227 Fed. App'x 138, 141 (3d Cir. 2007) (per curiam) (930 days in disciplinary segregation). [2] Absent a protected liberty interest, the alleged procedural defects in the disciplinary proceedings against Davis lack any legal significance. *Williams*, 307 Fed. App'x at 611; *see also Mudric*, 469 F.3d at 98; *Wolfe*, 334 F. Supp. 2d at 773.

**\*8**  The defendants have met their burden of making a prima facie showing that they are entitled to judgment as a matter of law based on the undisputed facts of record. Accordingly, it is recommended that the defendants' summary judgment motion be granted with respect to Davis's Fourteenth Amendment due process claim concerning denial of his right to present documentary evidence in his defense at his October 2014 disciplinary hearing.

### H. Misconduct Appeal

Davis claims that his Fourteenth Amendment due process rights were also violated when a deputy superintendent failed to timely respond to his misconduct appeal. But it is well established that "prisoners have no constitutional right to appeal the results of a disciplinary hearing." *Platt v. Brockenborough*, 476 F. Supp. 2d 467, 469–70 (E.D. Pa. 2007); *see also Liverman v. Gubernik*, Civil Action No. 10-1161, 2010 WL 3703314, at \*6 (E.D. Pa. Sept. 21, 2010) (noting prior court ruling that inmate-plaintiff had no right to a response to his administrative appeal from a misconduct hearing); *Liverman v. Grace*, Civil No. 1:CV-04-0995, slip op. at 9 (M.D. Pa. May 25, 2004) ("[An inmate] is not entitled to a favorable response, or indeed any response, from government officials as the Constitution does not require a prison grievance (or misconduct appeal) system."); *Garfield v. Davis*, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983) ("Administrative review of prison disciplinary hearings is not constitutionally guaranteed....").

The defendants have met their burden of making a prima facie showing that they are entitled to judgment as a matter of law based on the undisputed facts of record. Accordingly, it is recommended that the defendants' summary judgment motion be granted with respect to Davis's Fourteenth Amendment due process claim concerning prison officials' failure to timely respond to his misconduct appeal.

### I. RHU Cell Conditions

Case 3:22-cv-01754-JFS-PJC   Document 119-2   Filed 06/13/25   Page 8 of 10

Davis v. Pennsylvania Department of Corrections, Not Reported in Fed. Supp. (2019)
2019 WL 6338015

Davis claims that he was deprived of his Eighth Amendment right to be free from cruel and unusual punishment because the RHU cell to which he was assigned during disciplinary segregation was "unfit for human habitation." At deposition, Davis testified that the RHU cell where he was housed during his 30 days of disciplinary segregation had mouse droppings on the floor, was flooded with water from a leaky toilet, and smelled like urine for the first three or four days.

While a pest infestation may in some circumstances be so pervasive that it might constitute a constitutional violation, *see, e.g.*, *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008), Davis has failed to present any evidence to establish a *significant* infestation of his RHU cell, such that a reasonable jury could find a violation of his Eighth Amendment rights. See *Rodriguez v. Thomas*, 299 F. Supp. 3d 618, 638 (M.D. Pa. 2018) ("In this case, beyond Plaintiff's blanket statement, he has not presented any evidence to establish that an infestation was sufficiently serious to violate the Eighth Amendment. Although Plaintiff presumably suffered discomfort by virtue of the presence of cockroaches and mice, he has not shown that he faces a 'substantial risk of serious harm' that has been disregarded by prison officials.") (citation omitted); *Benjamin v. Fraser*, 161 F. Supp. 2d 151, 174 (S.D.N.Y. 2001) ("The mere presence of vermin in [an inmate]'s housing area does not constitute a denial of 'the minimal civilized measure of life's necessities.' "), *aff'd in relevant part, rev'd in part on other grounds*, 343 F.3d 35 (2d Cir. 2003).

**\*9** Similarly, confinement for 30 days in a cell with a leaky toilet does not constitute cruel and unusual punishment in violation of the Eighth Amendment. *See Morris v. Pennsylvania*, Civ. A. No. 85-5399, 1986 WL 7199, at \*3 (E.D. Pa. June 20, 1986). Moreover, while the odor of urine in the cell was undoubtedly unpleasant, exposure to that smell for only three or four days did not rise to the level of an Eighth Amendment violation. *See Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) ("holding that an inmate's confinement in a cell for four days with an overflowing toilet, during which time he was 'made to endure the stench of [his] own feces and urine,' did not rise to the level of an Eighth Amendment violation."); *Bracey v. Price*, Civil Action No. 09-1662, 2012 WL 6015727, at \*16 (W.D. Pa. Dec. 3, 2012) ("Plaintiff also complains that the toilet in his cell contained feces, and that he was exposed to the smells of feces and urine for three days.... None of these deprivations or conditions, however, supports an Eighth Amendment claim."); *Milhouse v. Gee*, No. 1:CV-09-02134, 2011 WL 3627414, at \*13 (M.D. Pa. Aug. 17, 2011) (finding "cell conditions to which [inmate-plaintiff] was exposed were temporary in nature, and, although unpleasant, were not sufficient to constitute a constitutional violation").

The defendants have met their burden of making a prima facie showing that they are entitled to judgment as a matter of law based on the undisputed facts of record. Accordingly, it is recommended that the defendants' summary judgment motion be granted with respect to Davis's Eighth Amendment claim concerning cell conditions in the RHU.

### J. Top-Bunk Assignment

Davis claims that unit manager Jen Digby was deliberately indifferent to his serious medical needs because, despite being advised by Davis that he had a bottom-bunk restriction due to a hernia diagnosis, she assigned him to a top-bunk berth when he was sent to the RHU for disciplinary segregation on October 13, 2014. The defendants have interposed a statute-of-limitations defense, noting that Digby was only added as a party-defendant by the amended complaint, well more than two years after the events underlying the claim against her.

The plaintiff's federal civil rights claim against Digby is brought under 42 U.S.C. § 1983 and is subject to Pennsylvania's two-year statute of limitations applicable to personal injury actions. *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78–79 (3d Cir. 1989); *see also* 42 Pa. Cons. Stat. Ann. § 5524. The purportedly wrongful conduct by Digby occurred on October 13, 2014. The amended complaint, adding this federal civil rights claim against Digby, was tendered to the Clerk for filing on December 20, 2017, well beyond expiration of the two-year limitations period on October 13, 2016.

Rule 15(c) of the Federal Rules of Civil Procedure "can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint." *Singletary v. Pa. Dep't of Corrs.*, 266 F.3d 186, 193 (3d Cir. 2001).

Under Rule 15(c)(1),[3] there are three requirements for an amendment naming new defendants to relate back to the original complaint: (1) the claim against the newly named defendants arose out of the conduct, transaction, or occurrence set forth in the original complaint; (2) the newly named defendants received such notice of the action within 90 days after the complaint was filed[4] that they will not be prejudiced in maintaining a defense on the merits; and

Case 3:22-cv-01754-JFS-PJC Document 119-2 Filed 06/13/25 Page 9 of 10

Davis v. Pennsylvania Department of Corrections, Not Reported in Fed. Supp. (2019)
2019 WL 6338015

(3) within 90 days after the complaint was filed, the newly named defendants knew, or should have known, that but for a mistake concerning their identities, the action would have been brought against them in the first place. *Singletary*, 266 F.3d at 194; *see also Garvin v. City of Philadelphia*, 354 F.3d 215, 222 (3d Cir. 2003).

**\*10** Here, the amended complaint adding Digby as a newly named defendant cannot relate back to the original complaint because there was no mistake concerning the identity of this defendant. Digby was known to the plaintiff and the very same conduct alleged in amended complaint with respect to Davis's top-bunk assignment and his hernia were also alleged in the original complaint. Indeed, although not named as a party-defendant in the original complaint, Digby was named in the body of the complaint where this conduct was alleged. (*See* Doc. 1, at 7.) "In the absence of any 'mistake concerning the identity of the proper party' to sue, there can be no relation back under Rule 15(c)[(1)(C)]." *McKenna v. City of Philadelphia*, 511 F. Supp. 2d 518, 526 (E.D. Pa. 2007); *see also Richardson v. John F. Kennedy Mem. Hosp.*, 838 F. Supp. 979, 987 (E.D. Pa. 1993) ("If, at the time of filing his initial complaint, plaintiff knew of the identity and possible role of the person whom plaintiff seeks to add as a defendant, there is no mistake for purposes of the relation back doctrine."). In the absence of relation back, any claims against Digby are barred by the applicable statute of limitations.

The defendants have met their burden of making a prima facie showing that they are entitled to judgment as a matter of law based on the undisputed facts of record. Accordingly, it is recommended that the defendants' summary judgment motion be granted with respect to Davis's Eighth Amendment claim concerning deliberate indifference by defendant Digby to the plaintiff's hernia condition.

### K. Thirteenth Amendment

In cursory fashion, Davis claims that his incarceration violated the Thirteenth Amendment to the United States Constitution.

The Thirteenth Amendment provides: "Neither slavery nor involuntary servitude, *except as a punishment for crime whereof the party shall have been duly convicted*, shall exist with the United States...." U.S. Const. Amend. XIII, § 1 (emphasis added). Thus, the Thirteenth Amendment is not implicated where a prisoner is incarcerated pursuant to a presumptively valid judgment of conviction by a court of competent jurisdiction, even if the conviction is subsequently reversed. *See Omasta v. Wainwright*, 696 F.2d 1304, 1305 (11th Cir. 1983) (per curiam).

The defendants have met their burden of making a prima facie showing that they are entitled to judgment as a matter of law based on the undisputed facts of record. Accordingly, it is recommended that the defendants' summary judgment motion be granted with respect to Davis's Thirteenth Amendment claim.

## IV. RECOMMENDATION

For the foregoing reasons, it is recommended that:

1. The defendants' motion for summary judgment (Doc. 126) be **GRANTED**;

2. The Clerk be directed to enter **JUDGMENT** in favor of the defendants and against the plaintiff; and

3. The Clerk be directed to **CLOSE** this case.

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated November 6, 2019. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.

Case 3:22-cv-01754-JFS-PJC    Document 119-2    Filed 06/13/25    Page 10 of 10

Davis v. Pennsylvania Department of Corrections, Not Reported in Fed. Supp. (2019)
2019 WL 6338015

The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**\*11** Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 6338015

---

**Footnotes**

| | |
|---|---|
| 1 | We note that the amended complaint was originally tendered to the Clerk for filing on December 20, 2017. |
| 2 | We note that, in support of his Eighth Amendment claim, Davis testified at deposition that the RHU cell where he was housed during his 30 days of disciplinary segregation had mouse droppings on the floor, was flooded with water from a leaky toilet, and smelled like urine for the first three or four days. Although these particular conditions may have caused him some discomfort, there is no evidence in the record before us to suggest that these conditions were any more burdensome than those imposed on the general prison population, or that they otherwise impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484; *see also Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (disciplinary segregation in cell "infested with vermin; ... smeared with human feces and urine; and ... flooded with water from a leak in the toilet on the floor above" was not so atypical that exposure to these conditions imposed a significant hardship in relation to the ordinary incidents of prison life); *Aguon v. Rickard*, Civil Action No. 1:17-01864, 2017 WL 4544625, at \*3–\*4 (S.D.W. Va. Aug. 16, 2017) (quoting *Beverati*), *report and recommendation adopted by* 2017 WL 4544602 (S.D.W. Va. Oct. 11, 2017); *Mitchell v. Horn*, No. Civ.A. 98-4742, 2005 WL 1060658, at \*2 (E.D. Pa. May 5, 2005) (no due process violation where "unfit" conditions persisted for no more than two days) (citing *Beverati* and *Higgason*); *Higgason v. Swihart*, Civil No. 3:93CV0805AS, 1996 WL 441774, at \*8 (N.D. Ind. May 17, 1996) (two-year confinement in disciplinary segregation with exposure to mice and human waste did not constitute an atypical and significant hardship). |
| 3 | Rule 15(c)(2) concerns relation back in cases where the United States or a United States officer or agency is added as a defendant. |
| 4 | Rule 15(c)(1)(C) references "the period provided by Rule 4(m) for serving the summons and complaint." At the time when the original complaint was filed in this case, that period was 90 days. *See* Fed. R. Civ. P. 4(m). |

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    9