# EXHIBIT 16

2009 WL 3172752
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

GOLDSMITH ASSOCIATES, INC., Plaintiff,
v.
Del Frisco's of Philadelphia, Inc., DEL FRISCO'S RESTAURANT GROUP, LLC, Lone Star Steakhouse and Saloon, Inc., Chest–Pac Associates, L.P., and Grasso Holding Acquisitions, Inc., Defendants.

Civil Action No. 09–1359.
|
Oct. 1, 2009.

**Attorneys and Law Firms**

Dana B. Ostrovsky, Marlton, NJ, for Plaintiff.

Noah H. Charlson, Bazelon Less & Feldman PC, Peter J. Norman, Klehr Harrison Harvey Branzburg & Ellers, LLP, Philadelphia, PA, for Defendants.

*MEMORANDUM*

DuBOIS, District Judge.

## I. INTRODUCTION [1]

*1 The dispute in this case concerns work performed in the construction of Del Frisco's Double Eagle Steakhouse, located at 111 S. 15th Street in Philadelphia, Pennsylvania. The plaintiff, Goldsmith Associates, Inc. ("Goldsmith"), asserts in the Amended Complaint that it performed $1,835,110.87 of electrical work on the project as part of a subcontract with Lorient, LLC, the general contractor hired by defendants Del Frisco's of Philadelphia and/or Del Frisco's Restaurant Group, LLC (collectively, "Del Frisco's")[2], and that it is still owed $1,100,231.57. (Am.Comp.¶¶ 35–41.) It seeks to recover that amount from Del Frisco's; Del Frisco's parent company, Lone Star Steakhouse and Saloon, Inc. ("Lonestar"); and the owners of the building with whom Del Frisco's is allegedly leasing its restaurant space, Chest–Pac Associates, L.P. ("Chest–Pac") and Grasso Holding Acquisitions, Inc. ("Grasso"). (Am.Comp.¶¶ 6, 8, 9, 11, 24, 25, 27, 28.).

In the Amended Complaint, Goldsmith asserts the following claims against Lonestar and Del Frisco's: unjust enrichment (Count I), quantum meruit (Count II) and relief under the Contractor and Subcontractor Payment Act ("CASPA"), 73 Pa. Con. Stat. Ann. § 501 et seq. (Count V). It asserts the same claims against Chest–Pac and Grasso in Counts III, IV and V, respectively.

Presently before the Court is a Motion to Dismiss Counts III, IV and V of the Plaintiff's Amended Complaint for Failure to State a Claim filed by defendants Chest–Pac and Grasso and a Motion to Dismiss Counts I, II and V of the First Amended Complaint Pursuant to Rule 12(b)(6) filed by defendants Del–Frisco's and Lonestar. For the reasons stated below, the Court grants both motions without prejudice to the plaintiff's right to file a second amended complaint consistent with this Memorandum, if warranted by the facts.

## II. BACKGROUND

Some time during or after the year 2000, Grasso negotiated a lease with Del–Frisco's to occupy the bottom floors of the historic Packard building in Philadelphia. (Am.Comp.¶¶ 16–24.). Under the lease, Del–Frisco's agreed to renovate its lease-space for use as a restaurant in return for reduced rent during the renovation period. (Am.Comp.¶¶ 31, 33.). Chest–Pac and Grasso reserved the right to review and approve the designs for the renovation. (Am.Comp.¶ 32.). Once the lease expired, the renovation improvements were to become the sole property of Chest–Pac and Grasso. (Am.Comp.¶ 34.).

After the lease had been negotiated, Del–Frisco's contracted with Lorient to serve as the general contractor for the renovations. (Am.Comp.¶ 35.). Lorient then subcontracted with Goldsmith to provide electrical work, which was performed around the period between June 28, 2008 and March 1, 2009. (Am.Comp.¶ ¶ 36, 37.). For this work, Goldsmith submitted invoices in the amount of $1,835,110.87, but was allegedly paid only $734,879.30 despite repeated demands for payment to the defendants. (Am.Comp.¶¶ 40, 41, 42.).

## III. LEGAL STANDARD

*2 Rule 12(b) (6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most

favorable to the plaintiff ...." *Phillips v. County of Allegheny,* 515 F.3d 224, 231, 233 (3d Cir.2008) (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir.2002)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level ....' " *Victaulic Co. v. Tieman,* 499 F.3d 227, 234 (3d Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." *Id.* "Where a complaint pleads facts that are 'merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly,* 550 U.S. at 557).

In *Twombly,* the Supreme Court utilized a "two-pronged approach" which it later formalized in *Iqbal. Iqbal,* 129 S.Ct. at 1950. Under this approach, a district court first identifies those factual allegations which constitute nothing more than "legal conclusions" or "naked assertions." *Twombly,* 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal,* 129 S.Ct. at 1950. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s] ...—to determine" whether it states a plausible claim for relief. *Id.*

### III. DISCUSSION

#### A. Counts I, II, III & IV—Unjust Enrichment and Quantum Meruit

To apply *Iqbal,* the Court must first determine the nature of Goldsmith's claim. Goldsmith's Amended Complaint asserts claims against the defendants under counts separately labeled "unjust enrichment" and "quantum meruit." In Pennsylvania, however, these labels are synonyms: a claim for unjust enrichment is the same as a claim in quantum meruit. *Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co.,* 933 A.2d 664, 667 (Pa.Super.Ct.2007). No matter the label attached to it, the elements of a claim for unjust enrichment or quantum meruit are: "[1] benefits conferred on defendant by plaintiff, [2] appreciation of such benefits by defendant, and [3] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Styer v. Hugo,* 422 Pa.Super. 262, 619 A.2d 347, 350 (Pa.Super.Ct.1993) (quotation marks and citations omitted), *aff'd* 535 Pa. 610, 637 A.2d 276 (Pa.1994).

**\*3** The defendants argue that a valid claim of unjust enrichment requires a showing that they communicated directly with Goldsmith or misled it. In support, they cite *D.A. Hill v. Clevetrust,* 524 Pa. 425, 573 A.2d 1005 (Pa.1990). In that case, the defendant investment company provided a construction loan, secured by a mortgage, to a development company, which entered into a contract with a general contractor to build a shopping mall. *Id.* at 1006. The general contractor then subcontracted with the plaintiff to provide work on the project. *Id.* After construction began, the development company defaulted on its loan. *Id.* at 1007. Then, after the default, the investment company refused to disburse additional funds, the general contractor received no money, and the subcontractors were left without compensation for their work. *Id.* Eventually, the investment company foreclosed on the property. *Id.* The plaintiff subcontractor then brought suit against the investment company on the theory that the investment company had been unjustly enriched by the subcontractor's work. *Id.* at 1008. The Pennsylvania Supreme Court ruled that there was no valid unjust enrichment claim because "a third party is not *unjustly* enriched when it receives a benefit from a contract between two other parties where the party benefitted has not requested the benefit or misled the other parties." *Id.* at 1010 (emphasis in original).

Goldsmith responds with two arguments: (1) *D.A Hill* is distinguishable from the situation presented by this case and (2) *D.A. Hill* improperly adds an element-a requirement of misleading or direct contact—to claims for unjust enrichment. Neither of these arguments has merit. Goldsmith states that *D.A. Hill* is distinguishable because it concerned a claim against an entity that was not an "owner" at the time the claim arose: a third-party lending institution. The Court disagrees. The analysis in *D.A. Hill* was in no way contingent on the defendant's identity as a third party lender. The rule in *D.A. Hill* is stated both in terms of a generic "third party," *id.* at 1010, and in terms of an "owner," *id.* at 1009. Pennsylvania makes no distinction between them, a fact that the Superior Court recognized long ago when it explained that "no distinction should be made between the liability of an owner and the liability of a lender, so far as an unpaid subcontractor is concerned." *Gee v. Eberle,* 279 Pa.Super.

101, 420 A.2d 1050, 1058 (Pa.Super.Ct.1980). *D.A. Hill* is the controlling authority on the issues before this Court.

Goldsmith cites *Gee,* the Pennsylvania Superior Court's exhaustive analysis of unjust enrichment claims by subcontractors against owners, to support its second argument that a claim for unjust enrichment does not require allegations of direct or misleading contact. In *Gee,* the Superior Court surveyed cases involving the liability of owners for claims of unjust enrichment and sorted them into three categories: (1) those that require proof that the owner has engaged in some wrongdoing or misrepresentation; (2) those that require proof that the subcontractor has exhausted statutory or contractual remedies; and (3) those that require some sort of direct contractual relationship between the subcontractor and the owner. *Id.* at 1059. The *Gee* court then rejected all three theories of liability on the ground that a plaintiff should not have to satisfy these additional requirements to make out a claim of unjust enrichment. *Id.*

**\*4** Goldsmith's reliance on *Gee* is misplaced in light of the Pennsylvania Supreme Court's later holding in *D.A. Hill.* The Court concludes that *D.A. Hill* impliedly overruled *Gee.* Notwithstanding this determination, the Court will address the *Gee* opinion.

The *Gee* court began its analysis by noting that the courts of Pennsylvania "focus not on intention, but on the result of unjust enrichment." *Id.* (citing *Kimball v. Barr Township,* 249 Pa.Super. 420, 378 A.2d 366, 368 (Pa.Super.Ct.1977)). Later in the same paragraph, however, the court addressed the rule that an unjust enrichment plaintiff must show that the defendant "wrongfully secured or *passively received* a benefit that ... would be unconscionable ... to retain." *Id.* (emphasis in original) (citing *Roman Mosaic and Tile Co., Inc. v. Vollrath,* 226 Pa.Super. 215, 313 A.2d 305, 307 (Pa.Super.Ct.1973)). The *Gee* court emphasized the "passively received" language to buttress its ultimate conclusion that unjust enrichment does not require a showing of wrongful intent, but it explained in a footnote that "[w]hether a party has been unjustly enriched must be judged on a case-by-case basis. *The focus is necessarily on the intentions of the parties to the transaction.* Depending on what they are, it may or may not be 'unconscionable' for a party to retain a benefit it has received." *Id.* at 1059 n. 7 (emphasis added). This part of *Gee,* although internally inconsistent in addressing the question of intent, appears to be not inconsistent with *D.A. Hill*'s rule that a claim for unjust enrichment lies only when the plaintiff can show direct or misleading contact between the party retaining the benefit and the party providing it.

Unjust enrichment is a creature of equity that seeks to balance the interests of parties who have exchanged a benefit without agreeing on terms. *See Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa.Super.Ct.1999). Where the person benefitted does not in any way request the benefit or cause the other party to confer the benefit, the benefitted person should not have to pay for it. On the other hand, a person who benefits by misleading conduct must provide compensation for the amount of the benefit. *Gee* cannot be read to alter the rule, explicitly recognized in *D.A. Hill* and implicitly apparent in its own reasoning, that an unjust enrichment plaintiff in Pennsylvania must allege facts showing that it was misled or that the defendant directly requested the benefit. To the extent that the *Gee* opinion can be read to require less, it is rejected in light of *D.A. Hill.*

*Gee'* s second category is irrelevant to the issues presented in this case. In this case, as in *D.A. Hill,* there is no argument that the subcontractor must exhaust all other remedies.

The third *Gee* category is somewhat more complicated. At one point in its *D.A. Hill* opinion, the Pennsylvania Supreme Court specifically links unjust enrichment to "direct contracting." 573 A.2d at 1009 ("[T]he owner's retention of the benefit without paying any compensation to the subcontractor would not be unjust if the owner did not *contract directly* with or mislead the subcontractor. (emphasis added)). That statement is, on its face, incorrect because the existence of an unjust enrichment claim is predicated on the fact that there is no direct contract. *See Schott v. Westinghouse Elec. Corp.,* 436 Pa. 279, 259 A.2d 443, 448–49 (Pa.1969). Direct contracting cannot be at once antithetical to and a requirement of a claim for unjust enrichment. For two reasons, then, the *D.A. Hill* court's reference to direct contracting is best understood as a *lapsus calami.*[3] First, the court's holding is premised on the non-existence of a direct contractual relationship: "where a subcontractor has provided services and chattels to an owner who has *no direct contractual relationship* to the subcontractor .... [enrichment] would not be unjust if the owner did not contract directly with or mislead the subcontractor." 573 A.2d at 1009 (emphasis added). Second, the *D.A Hill* court restates its holding later in the opinion in subtly different terms, explaining that "a third party is not unjustly enriched when it receives a benefit from a contract between two other parties where the party benefitted *has not requested the benefit* or misled the other

parties." *Id.* at 1010. With respect to the "direct contracting" language of *D.A. Hill,* the real question is not whether there is a direct contract between an owner and a subcontractor but instead whether "the property owner had *direct dealings* with the subcontractor, which caused the subcontractor to perform the work." *Limbach Co. v. City of Phila.,* 905 A.2d 567, 577 (Pa.Commw.Ct.2006) (emphasis added).

**\*5** In sum, the controlling case of *D.A Hill* stands for the proposition that subcontractors may not recover from owners on a theory of unjust enrichment unless (1) the owner requested the benefit or (2) the owner misled the subcontractor. *See also* Restatement of Restitution § 110 ("A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person."). A contrary rule allowing subcontractors to recover directly from owners in other circumstances would destroy the balance of contractual relationships in the construction industry and reverse the public policy of Pennsylvania as articulated by the Supreme Court. *D.A. Hill,* 573 A.2d at 1010 ("It would be manifestly unfair for this Court to restructure these contractual arrangements in such a way as to place all of the risk on Clevetrust [the defendant, lender/owner], thus insulating the subcontractors from any responsibility for their own decisions and making Clevetrust, in effect, the insurer of the subcontractor's interests.").

Cast in light of *D.A. Hill,* Goldsmith's allegations related to whether the defendant's enrichment was "unjust" constitute the sort of "legal conclusion" or "naked assertion" that must be disregarded under *Iqbal,* 129 S.Ct. at 1950. On this element, Goldsmith simply avers that the defendants' retention of the benefits Goldsmith provided would be "unjust." (Am.Comp.¶¶ 51, 62). This is inadequate pleading. As *D.A. Hill* makes clear, the conferral of a benefit is a necessary, but not sufficient, condition of a valid unjust enrichment claim. "The doctrine does not apply simply because the defendant may have benefit[t]ed as a result of the actions of the plaintiff." *Styer,* 619 A.2d at 350 (citing *D.A. Hill Co.,* 524 Pa. 425, 573 A.2d 1005). In order to avoid dismissal of the unjust enrichment claim, Goldsmith must allege in its complaint facts showing that the defendants specifically requested benefits or misled Goldsmith.

Once Goldsmith's conclusory allegation of injustice is disregarded, the "nub" of its Amended Complaint provides allegations related only to elements one and two of a claim for unjust enrichment: whether Goldsmith conferred a benefit and whether it was retained by the defendant. Without "sufficient factual matter, accepted as true" to satisfy the third element—the requirement that defendants' enrichment be unjust—Goldsmith's claims are implausible on their face and must be dismissed. *Iqbal,* 129 S.Ct. at 1949.

### B. Count V—Pennsylvania Contractor and Subcontractor Payment Act (CASPA)

"The underlying purpose of [the CASPA] is to protect contractors and subcontractors. The Act provides payment deadlines and penalties to encourage fair dealing among parties to a construction contract." *Ruthrauff, Inc. v. Ravin, Inc.,* 914 A.2d 880, 890 (Pa.Super.Ct.2006). Count V of Goldsmith's Amended Complaint attempts to state a claim by alleging that the defendants are "owners" under the CASPA. (Am.Comp.¶ 70.). It is unclear how this entitles it to relief. As defined in the CASPA, an "owner" is a person "who has an interest in the real property that is being improved and who ordered the improvement to be made." 73 Pa. Con. Stat. Ann. § 502. Goldsmith has alleged no facts showing that the defendants ordered it to provide improvements to the defendants' property. Without these factual allegations there is no cognizable claim under this provision of the CASPA.

**\*6** Moreover, even if Goldsmith were to allege facts showing that the defendants are owners under the CASPA it is still unclear how this would entitle Goldsmith to relief. The section of the CASPA related to owners also states that "[t]he owner shall pay the contractor strictly in accordance with the terms of the construction contract." *Id.* § 505. Goldsmith identifies itself as a subcontractor in its amended complaint. (Am.Comp.¶ 71.). If Goldsmith is indeed a subcontractor as alleged, then Section 505 does not apply: the statute refers specifically to a "contractor," which has a unique definition that is not synonymous with "subcontractor." *See id.* § 502. On its face, Goldsmith's Amended Complaint fails to state a claim recognized under § 505 of the CASPA. This is true even when the court accepts all of its allegations—legal and factual—as true.

Finally, the CASPA provides that "performance by a subcontractor in accordance with the provisions of the contract shall entitle the subcontractor to payment from the party with *whom the subcontractor has contracted."* 73 Pa. Con. Stat. Ann. § 507(a) (emphasis added). Notwithstanding the clear text of the statute, Goldsmith argues that it is entitled to relief under that provision of the CASPA because it had an implied-in-law contract with the defendants. This argument

has no merit. Goldsmith has not provided, and this Court has not found, any legal authority for the novel claim that the word "contract" in Section 507 refers to either an express or implied contract. Moreover, even if there was legal authority for this position, Goldsmith has not alleged facts showing the existence of an implied contract with the defendants. As the previous section makes clear, this is insufficient under *Iqbal*. In order to state a claim, Goldsmith must plead facts sufficient to show that it has a plausible claim for relief. Without these facts, Goldsmith's claim under the CASPA must be dismissed.

Accordingly, the Court grants defendants' motions to dismiss Count V of the Amended Complaint.

### IV. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted with respect to all five counts of the Amended Complaint. The dismissal is without prejudice to Goldsmith's right to file a second amended complaint consistent with this Memorandum within twenty days of the entry of the attached order, if warranted by the facts.

### ORDER

AND NOW, this 1st day of October, 2009, upon consideration of Defendants' Del–Frisco's of Philadelphia, Inc., Del Frisco's Restaurant Group, LLC, and Lone Star Steakhouse and Saloon, Inc.'s Motion to Dismiss Counts I, II, and V of the First Amended Complaint Pursuant to Rule 12(b)(6) (Document No. 20, filed June 8, 2009); Defendants' Grasso Holdings Acquisitions, Inc. and Chest–Pac Associates, L.P., Motion to Dismiss Counts III, IV and V of Plaintiff's Amended Complaint (Document No. 21, filed June 8, 2009); and related submissions of the parties, for the reasons set forth in the Memorandum dated October 1, 2009, **IT IS ORDERED** that Defendants' Del–Frisco's of Philadelphia, Inc., Del Frisco's Restaurant Group, LLC, and Lone Star Steakhouse and Saloon, Inc.'s Motion to Dismiss Counts I, II, and V of the First Amended Complaint Pursuant to Rule 12(b)(6) (Document No. 20) and Defendants' Grasso Holdings Acquisitions, Inc. and Chest–Pac Associates, L.P., Motion to Dismiss Counts III, IV and V of Plaintiff's Amended Complaint (Document No. 21) are **GRANTED.**

*7 **IT IS FURTHER ORDERED** that plaintiff is granted leave to file a second amended complaint consistent with the Memorandum dated October 1, 2009 within twenty days of the entry of the this order, if warranted by the facts.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 3172752

---

### Footnotes

1    These facts are taken from the Amended Complaint and presented in the light most favorable to the plaintiff.

2    In its Amended Complaint, Goldsmith refers to Del Frisco's of Philadelphia and Del Frisco's Restaurant Group collectively as "Del Frisco's." This lack of specificity makes it impossible to determine which of the defendants is alleged to have performed which actions. This opinion adopts Goldsmith's convention.

3    "Slip of the pen"

---

**End of Document**          © 2025 Thomson Reuters. No claim to original U.S. Government Works.