THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

JUN 2 6 2025

PER_____

DEPUTY CLERK

DAVID J. CATANZARO,

        Plaintiff,

  v.

LYKART TECHNOLOGIES LLC, et al.,

        Defendants.

Case No. 3:22-cv-1754

Judge Joseph F. Saporito, Jr.

Referred to: Phillip J. Caraballo

JURY TRIAL DEMANDED

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION AND BRIEF TO DISMISS**

**& AFFIRMATIVE SHOWING THAT THE FIFTH AMENDED COMPLAINT STATES**

**VALID CLAIMS UNDER 35 U.S.C. § 271 AND SHOULD PROCEED TO DISCOVERY**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I | Introduction: Plaintiff's Claims Are Timely Under § 286 | 1 |
| II | Venue Is Proper or Transferable Under TC Heartland | 15 |
| III | The Fifth Amended Complaint States a Plausible Claim for Relief | 21 |
| IV | Direct Infringement Allegations Are Sufficient Under Rule 12(b)(6) | 23 |
| V | Indirect and Willful Infringement Claims Are Plausibly Alleged | 24 |
| VI | Plaintiff Adequately Alleges Underlying Direct Infringement | 25 |
| VII | Systemic Context Supports Knowledge and Intent | 26 |
| VIII | Defendants Had Constructive Knowledge and Purpose-Built Tools Supporting Indirect Liability | 27 |

I

IX      Constructive Knowledge and Willful Blindness Are Sufficiently Pled Under *Global-Tech*...29

X       Defendants Mischaracterize Paragraph 52; Claims Are Limited to the '959 Patent.............30

XI      Systemic Context Supports Knowledge and Intent......................................................31

XII     No Violation of Article III or Rule 12(b)(1).............................................................32

XIII    Counts VI and VII Are Contextual and Support Claims Based Solely on the '959 Patent......32

XIV     No Claims Based on Third-Party Patents Are Asserted................................................32

XV      Systemic Conduct Reinforces Knowledge and Willfulness...........................................33

XVI     Dismissal of Counts VI and VII Is Unwarranted......................................................33

XVII    Count V Is Based on a Valid Patent and Not Preempted by Federal Law.........................33

XVIII   Defendants' Preemption Argument Misstates the Law and Record................................33

XIX     Unjust Enrichment Claim Is Factually and Legally Grounded......................................34

XX      Dismissal of Count V Would Be Premature............................................................34

XXI     Plaintiff Has Alleged a Specific and Cognizable Benefit Tied to the '959 Patent................34

XXII    Equity Does Not Require a Voluntary Conveyance or Direct Solicitation..........................34

XXIII   The Complaint Satisfies Rule 12(b)(6) Pleading Standards.........................................35

XXIV    Systemic Harm Strengthens the Inference of Unjust Gain...........................................35

XXV     Plaintiff Has Stated a Cognizable Patent Claim......................................................35

XXVI    Plaintiff's Final Response to Defendants' Request for Dismissal With Prejudice................36

**Plaintiff's Offensive Evidence of Widespread 2016 Infringement**.....................................37

**Exhibit 1**    Plaintiff's Rebuttal to Defendants' Exhibits 119-1 to 119-17....................................37

**Exhibit A**    Archived Target.com Listing Showing 2016 Infringement......................................37

**Exhibit B**    2016 YouTube Influencer Videos Promoting Infringing Products............................38

**Exhibit C**    2016 Maya Group Website Linking to Infringing Products....................................38

**Exhibit D**    July 2025 Google Search Returning Infringing Listings........................................38

**Exhibit E**    July 2025 Yahoo Search Returning Infringing Listings........................................38

**Exhibit F**    Current Amazon.com Listing of "Orbeez Crushkins Pets"....................................38

**Exhibit G**    Archived Kmart.com Listing Showing 2016 Infringement......................................38

**Exhibit H**    Cross-Retailer UPC Tracking of Infringing Product............................................39

**Exhibit I**    Google Search Results Confirming Indexed Visibility of Lawsuit..............................39

**Exhibit J**    Google Patents Search Displaying Full '959 Patent Record....................................39

**Exhibit K**    Yahoo Search Results Showing Indexed Litigation References................................39

**Exhibit L**    Yahoo Search Displaying '959 Patent Record and Accessibility..............................40

**Summary:**    Why Dismissal Is Unwarranted....................................................................40

**REBUTTAL TO DEFENDANTS' MOTION TO DISMISS: PLAINTIFF'S ANSWER TO EACH CLAIMED DEFICIENCY FROM THEIR OPERATIVE BRIEF (DOC. 119) DIRECTED TOWARD THE FIFTH AMENDED COMPLAINT**

## I. INTRODUCTION

Defendants seek dismissal on three grounds: timeliness under 35 U.S.C. § 286, improper venue, and alleged legal insufficiency. Each argument fails when measured against the record and applicable legal standards.

**Timeliness and Relation Back under Rule 15(c):**

Plaintiff filed the original Complaint on November 3, 2022, thereby preserving claims dating back to November 3, 2016, under 35 U.S.C. § 286. The Complaint expressly sought "damages for the maximum period of time permitted by law" (Orig. Compl. ¶ 17) and identified infringing product lines—including Orbeez Crush Crushkins Pets, Orbeez Crush Crushkins Safari, Orbeez Crush Crushkins Farmland Animals, and assorted related product lines—marketed and sold through visible online platforms. Although the Moving Defendants were not formally named until later amendments, their roles were anticipated from the outset, as Plaintiff conducted 2016 searches on Google, and  Mozilla Firefox (with Yahoo) that returned infringing product listings—forming the factual basis of the original complaint and the inclusion of Does 1–50. The original Complaint alleged inducement and contributory infringement by unnamed parties (Does 1–50), tied to the same products and conduct later attributed to Google, Youtube, Apple, and Mozilla.   Under Rule 15(c)(1)(C), the claims relate back because: (1) they arise from the same transaction or occurrence (i.e., the online sale and visibility of infringing products); (2) Defendants had constructive or actual notice of the U.S. Patent No. 7,653,959 ("the '959 patent")

and infringing products—including through Google Patents, which returned the full patent when searched by number or title; and (3) the amendments reflect a progressive identification of responsible parties—not the introduction of a new lawsuit. The expiration of the patent in 2016 does not bar suit. Section 286 limits damages—not liability—and permits recovery for any infringing acts occurring within the six-year window before filing. The applicable test is whether infringement occurred during the § 286 lookback period. It did—via public listings discoverable through search engines and monetized by platforms.

**Venue Under § 1400(b) and § 1406(a)**

Defendants misapply the venue standard. While § 1400(b) governs direct infringement, claims under §§ 271(b) and (c)—for inducement and contributory infringement—also implicate § 1391(c). All Defendants operated nationwide digital platforms that facilitated the visibility, access, and sale of infringing products in this District. Even if venue were technically defective under § 1400(b), § 1406(a) empowers the Court to transfer, not dismiss—particularly where the conduct alleged is nationwide and where a pro se litigant faces severe prejudice. Apple, for example, admitted to having multiple stores in Pennsylvania (Doc. 117), and Google acknowledged operations in the state (Doc. 118). Mozilla's Firefox browser—which partnered with Yahoo as its default search engine in 2016—was widely distributed nationwide, including in this District. These search results directed users to infringing listings, as confirmed by Plaintiff's 2016 searches. Moreover, in today's digital commerce, user devices with preinstalled software like Chrome, Safari, Firefox, and YouTube function as modern extensions of corporate activity. These platforms push real-time updates, target local ads, and monetize user activity across the Commonwealth—functioning as embedded commercial infrastructure. Courts have recognized that such tools, when paired with monetized functionality, may support venue. See

Talsk Research Inc. v. Evernote Corp., 2017 WL 4269004, at *4 (N.D. Tex. Sept. 26, 2017).

Courts and scholars have noted that such digital presence may serve as a "place of business" in

substance, if not traditional form. Dismissal on venue grounds would elevate form over justice.

Transfer is the appropriate remedy if any venue defect is found.

**Legal Sufficiency of the Fifth Amended Complaint**

The Fifth Amended Complaint asserts detailed, patent-specific claims under 35 U.S.C. §§ 271(b)

and (c). Plaintiff asserts no claims based on patents he does not own. To the extent Defendants

rely on Paragraph 52 to suggest otherwise, this is rebutted in full at Section X. The term

"systemic infringement" is descriptive, not a standalone cause of action—it highlights the

monetized, platform-driven facilitation of infringing products across search engines, browsers,

and default marketplaces. Plaintiff alleges that Defendants: 1. Profited from the presence of

infringing listings; 2. Failed to implement safeguards despite having systems in place for

copyright, fraud, and safety violations; 3. Had constructive or actual notice of both the '959

patent and the infringing product; and 4. Engaged in willful blindness by creating a structure that

rewarded infringement visibility. These facts satisfy Iqbal/Twombly and support inducement and

contributory infringement claims. The Complaint is not conclusory—it provides factual

examples, identifies platform-specific conduct, and links that conduct to the sale and discovery

of patented products. Dismissal with prejudice is unwarranted. Amendments were prompted by

discovery, procedural rulings, and evolving clarity—not futility or bad faith. At minimum,

Plaintiff is entitled to proceed to discovery on these well-pleaded claims.

**Plaintiff's Response to Procedural History (Sections A–D)**

Defendants' procedural summary omits key context and mischaracterizes Plaintiff's litigation

conduct. From the outset, Plaintiff included Does 1–50 in the original 2022 complaint to preserve

the right to later identify unnamed actors involved in selling, distributing, or promoting

infringing Orbeez Crush products—particularly platforms and search engines, whose roles

became clearer through ongoing investigation. This is a recognized practice in complex patent

cases and was not an afterthought. After a court order issued on August 10, 2023, Plaintiff

missed a filing deadline due to mail delays, resulting in temporary dismissal. The Third Circuit

later reversed, holding in part: 'It was an abuse of discretion for the District Court to deny

Catanzaro's motion on the grounds that he failed to include a separate brief.' See Case No. 24-

1247. The Third Circuit vacated that dismissal on July 12, 2024, instructing the District Court to

treat Plaintiff's filing as a motion for extension—which the Court granted. Plaintiff then timely

filed the Third Amended Complaint on August 9, 2024, naming platform and retailer defendants

based on new evidence developed through research and diligence. Several of those defendants—

Google, YouTube, Mozilla, and Apple—were contemplated in the Does 1–50 designation and

were added once their contributory roles were clarified. Plaintiff's 2016 searches using Google,

Yahoo, and Mozilla's Firefox platform returned infringing product listings. These searches

formed the basis for the original complaint, even though Plaintiff did not yet know Mozilla

operated Firefox, that Apple's default was Google, or whether Google or Alphabet should be

named. Naming Does 1–50 preserved these claims in anticipation of identifying responsible

actors. The amendments clarify roles without altering the core conduct. Infringement occurred

during the § 286 window, via public listings visible through search engines and hosted on

monetized platforms. Plaintiff does not allege legal affiliation between these Defendants and the

original parties. Rather, the claims arise from independent conduct—namely, the facilitation,

monetization, and promotion of infringing product listings during the 2016 damages period,

within the § 286 lookback window. The Fourth and Fifth Amended Complaints were filed within

4

the Court's allowed timeframe and without objection. The Fifth Amended Complaint does not assert new causes of action or rights over any patents not owned by Plaintiff. It articulates indirect infringement under §§ 271(b) and (c), supported by facts showing actual or constructive knowledge, willful blindness (per *Global-Tech*), and platform-level inaction that enabled ongoing infringement of the '959 patent. The term "systemic infringement" is descriptive—not a standalone claim—and highlights (1) Defendants' failure to take reasonable steps to prevent infringement of the '959 patent, and (2) broader platform conditions that expose all patent holders—not just Plaintiff—to recurring infringement via search engine visibility, algorithmic promotion, and monetization of counterfeit goods. This context is appropriate under *Twombly* and *Iqbal* to show that Defendants' conduct was knowing, reckless, or willfully blind. These developments reflect good faith, procedural compliance, and a refined understanding of each party's role—particularly where discovery remains unavailable. Plaintiff has proceeded diligently and within procedural rules.

**Plaintiff's Response to Defendants' "Statement of Facts"**

Defendants mischaracterize the scope of the '959 patent by quoting only the abstract and citing outdated figures (Figs. 1–3), ignoring the controlling claim language. Claim 1 makes no mention of a toothbrush—it describes a structural stand shaped like two joined feet, capable of supporting any article with a compatible receivable end. The patent, titled *Article Assembly*, was drafted to cover a broad range of consumer products. Abstracts and illustrations do not limit claims. As the Supreme Court confirmed in *Markman v. Westview Instruments*, 517 U.S. 370 (1996), enforceable scope is defined by the claims. Plaintiff's allegations are timely under 35 U.S.C. § 286. The complaint was filed November 3, 2022, preserving a six-year window through the patent's expiration on December 30, 2016. Infringing products—including the "Orbeez Crush

Crushkins" product lines were marketed and sold during that period through major online platforms. Contrary to Defendants' assertions, both the original and Fifth Amended Complaints identify specific claims (1, 4, 5 & 8) and allege infringement through advertising, selling, and enabling the sale of these product lines. Plaintiff also asserts inducement and contributory infringement under §§ 271(b) and (c), naming Google, YouTube, Apple, and Mozilla as active facilitators through search tools, monetization, and algorithmic promotion. Paragraphs 31–50 of the Fifth Amended Complaint provide detailed allegations regarding Defendants' failure to screen for patents, algorithmic amplification of infringing goods, and monetized partnerships (e.g., YouTube influencer promotion and Apple's default search settings) that enabled third-party infringement. Plaintiff's claims are not abstract. They target (1) the direct sale and promotion of infringing products, and (2) broader platform conditions that enable repeated infringement of patented configurations. Defendants' dismissal of Paragraph 44 as conclusory overlooks its factual claim: that platforms profit from traffic and ads tied to infringing listings. This is a documented effect of platform structure. Plaintiff's pleadings exceed the standards set by Iqbal and Twombly and are corroborated by many settlements involving the '959 patent, confirming the commercial reality of the described infringement.

**Response to Defendants' Statement of Questions and Argument I: Timeliness and Relation-Back under § 286**

**1. Statutory Bar under 35 U.S.C. § 286**

Plaintiff's claims are not time-barred. The original complaint, filed on November 3, 2022, preserved damages for conduct during the 2016 lookback period. Section 286 limits damages only—not underlying liability. Allegations of indirect and contributory infringement relate back under Rule 15(c) and remain timely.

**2. Improper Venue under § 1400(b), § 1406(a), and Rule 12(b)(3)**

Defendants misapply the venue standard. While § 1400(b) governs patent infringement venue, transfer—not dismissal—is proper under § 1406(a) where venue is defective but the case has been filed in good faith. This is especially true for pro se litigants asserting plausible claims. Plaintiff alleges inducement and facilitation of infringement with commercial effects in this District. Defendants' platforms—through browser defaults, search tools, ads, and pre-installed apps—extend their business reach into Pennsylvania with measurable commercial impact. Apple admits to nine physical stores in the state (Doc. 117), and Google acknowledges an office in Pittsburgh (Doc. 118). Mozilla's Firefox browser, paired with its default search partnerships, operates throughout the Commonwealth. These platforms capture local traffic and user data through updates, search, ads, and promotional content—functioning as continuously monetized digital gateways. Courts increasingly recognize that such digital infrastructure may constitute a "regular and established place of business" under TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 581 U.S. 258 (2017); In re Google LLC, 949 F.3d 1338, 1345 (Fed. Cir. 2020); and Seven Networks, LLC v. Google LLC, 315 F. Supp. 3d 933, 956 (E.D. Tex. 2018).

**3. Failure to State a Claim under Rule 12(b)(6)**

The Fifth Amended Complaint asserts valid claims under §§ 271(a), (b), and (c). Plaintiff conducted 2016 searches using Google, and Firefox (via Yahoo), which returned infringing product listings. When Plaintiff searched for the '959 patent number or title using Google Patents, the full patent record was returned, proving constructive knowledge.

Plaintiff details monetized listings, influencer content, and algorithmic promotion of infringing sales, while platforms failed to use available controls (as with Copyright) to prevent them.

Apple's integration with Google Search and receipt of billions from Google—without intervention—demonstrates willful blindness under *Global-Tech* and satisfies *Iqbal* and *Twombly* by showing Defendants' knowledge, capacity, and motive to prevent infringement.

**Unjust Enrichment under Rules 12(b)(1) and (6)**

Pled in the alternative, Plaintiff alleges Defendants: (1) knowingly profited from infringing activity and (2) had technical means to stop it but chose inaction due to economic benefit. Unjust enrichment remains viable where legal remedies are uncertain. See *Abbott Labs.*, 836 F. Supp. 2d at 252. In *Zamber*, 282 F. Supp. 3d at 1301, the court held unjust enrichment survives if it would be inequitable for defendants to retain benefits. Plaintiff alleges: (1) willful blindness— failure to use existing systems to prevent or try to prevent harm; and (2) incentivized indifference—monetizing infringing traffic. These facts suffice under Rule 12 standards.

**Plaintiff's Response to Argument I: The Fifth Amended Complaint Is Not Barred by the Patent Act's Statute of Limitations**

Defendants mischaracterize 35 U.S.C. § 286, which limits only damages—not the right to sue. Section 286 provides: "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint." It does not require that all parties be named at the outset. Plaintiff filed the original Complaint on November 3, 2022, preserving recovery for infringement occurring on or after November 3, 2016. Because the '959 patent expired on December 30, 2016, Plaintiff may seek damages for infringing conduct during the final two months of enforceability. Defendants' argument ignores the plain text and purpose of § 286.

**A. Placeholder Designations Support Relation Back**

The original Complaint named Walmart and Maya Group, but included Does 1–50 to preserve claims against unknown actors later found to facilitate infringement. Courts in this Circuit

recognize that placeholder designations support Rule 15(c) relation back where later-named

defendants knew or should have known they were intended targets. See *Krupski*, 560 U.S. at

548; *Garvin*, 354 F.3d at 222.

**B. Defendants Had Notice Within the Required Timeframe**

Plaintiff conducted searches in 2016 using Google, and Firefox (then paired with Yahoo),

which returned commercial listings for infringing products. Defendants' platforms visibly

surfaced and monetized these listings. At that time—and continuing through the present—

Google Patents returned the full '959 record when searched, confirming constructive notice. Not

long after this lawsuit was filed, Google also began returning indexed results linking Plaintiff's

name to this case, demonstrating actual awareness of the patent and claims asserted. These facts

satisfy both Rule 15(c)(1)(B) (same conduct or occurrence) and Rule 15(c)(1)(C)(ii) (timely

notice). See *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 194 (3d Cir. 2001).

**C. Good-Faith Refinement, Not Strategy Shifting**

Plaintiff's amendments did not alter the core conduct at issue—infringement, inducement, and

contributory infringement through platform-enabled visibility of infringing products—but

instead clarified which entities were responsible. Plaintiff initially named Alphabet Inc. and later

dismissed.  Apple's 2016 use of Google as Safari's default search engine only became clear

through post-filing investigation. Plaintiff used Firefox in 2016, but did not know at the time that

Mozilla controlled the browser or received monetization from search partners.

These updates reflect the challenges pro se litigants face in identifying the entities behind

complex digital infrastructure. Plaintiff acted diligently and in good faith to clarify roles as the

facts became clearer—not to shift strategy—and to reaffirm the original intent to hold all

responsible parties accountable for conduct traceable to the 2016 damages window.

**D. Dismissal Under § 286 Is Not Warranted**

Defendants' claim that they could not have anticipated being sued ignores two key facts: (1) the express placeholder language in the original Complaint, and (2) the broader platform conditions that expose all patent holders—not just Plaintiff—to repeated infringement via search engine visibility, algorithmic promotion, and monetized knockoff goods, enabled through their inherently willful blindness by design and operation.

Plaintiff's exhibits confirm that both Google and Yahoo had system-wide access to the patent and have indexed publicly available materials associated with this case. <u>Defendants were either aware of, or willfully blind to, these facts.</u> This case targets infringement during the final enforceable window—tied to listings Defendants made searchable, visible, and monetizable. Dismissal under § 286 is factually and legally improper under *Krupski*, *Garvin*, and Rule 15(c).

**The Fifth Amended Complaint Describes a Unified Stream of Infringement, Satisfying Rule 15(c)**

Defendants wrongly argue that the amended claims involve unrelated conduct by unrelated parties. In reality, the Fifth Amended Complaint traces a continuous infringing stream centered on the same Orbeez Crush Crushkins product lines originally at issue. The initial claims identified Walmart and Maya as retailers; the amended complaint adds upstream digital facilitators responsible for enabling and promoting those same infringing goods.

**Plaintiff's Search History and Placeholder Usage Support Relation Back**

Plaintiff conducted searches in 2016 and earlier using Google, Firefox, and Internet Explorer (with Yahoo default), which returned listings for infringing Orbeez Crush products. These listings ultimately led to retail sites like Walmart, but their discovery depended on indexing and monetization by upstream platforms. **Google Patents also returned the '959 record when**

queried, showing constructive knowledge. **YouTube hosted influencer videos promoting the infringing products.** While Plaintiff did not know the responsible entities at the time, the original Complaint included Does 1–50 to preserve claims against later-identified platform actors. This structure satisfies Rule 15(c)(1)(B) by connecting all named defendants to the same infringing stream.

**Digital Gatekeepers Contributed to the Same Infringing Outcome**

Google, YouTube, Apple, and Mozilla were not named arbitrarily. Each is tied to browser defaults, search partnerships, and monetization systems that facilitated exposure and sale of the same infringing products. These were not isolated acts, but part of a structurally integrated digital infrastructure—either knowingly or through willful blindness—that enabled the Orbeez Crush products to reach consumers through repeated visibility, promotion, and transactional access. At minimum, these allegations warrant discovery under Rule 26.

**Defendants Misapply *EMC* and Ignore Interconnected Conduct**

Defendants cite *In re EMC*, 677 F.3d 1351 (Fed. Cir. 2012), to argue that "independent parties, without more" cannot justify joinder or relation-back. But *EMC* addressed Rule 20 joinder—not Rule 15(c). Here, the amended claims allege far more: overlapping platforms, monetization ties, and shared promotion of infringing goods. These are not coincidences—they demonstrate coordinated inducement and contributory infringement within a unified stream of conduct.

**The Fifth Amended Complaint Satisfies Rule 15(c) on Notice and Mistake**

Defendants argue they lacked timely notice and were not misidentified, but *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 194 (3d Cir. 2001), supports relation back based on constructive notice. Formal service is not required—only that the party knew, or should have known, that it would have been named but for a mistake concerning identity. Here, Defendants were not

peripheral observers but central participants in a monetized commercial outcome—precisely the type of factual scenario where Rule 15(c) applies.

## 2. Rule 15(c)(1)(C) Standard Is Met

The later amendments did not change the core conduct; they identified upstream intermediaries already connected to the same infringing chain. These additions satisfy Rule 15(c)(1)(C) because: the amended claims arise from the same conduct and occurrence; the added parties had constructive (and ultimately actual) notice within the Rule 4(m) period; and the original omission was due to lack of early identity clarity—not undue delay or gamesmanship.

The Third Circuit has already reversed a dismissal in this case, holding that "*it was an abuse of discretion for the District Court to deny Catanzaro's motion on the grounds that he failed to include a separate brief.*" Case No. 24-1247. That ruling confirms Plaintiff's filings warrant full consideration on the merits. Placeholder designations, factual continuity, and diligent amendments satisfy Rule 15(c) and preclude dismissal based on procedural formality.

Where search engines returned the patent, and litigation results appeared with a basic name query, Defendants cannot claim surprise. Constructive notice was present, and the Rule 15(c) requirements are fully met.

## 3. Third Circuit Procedural Ruling Undermines Defendants' Prejudice Argument

As stated above the Third Circuit already reversed a dismissal in this case, holding: "*It was an abuse of discretion for the District Court to deny Catanzaro's motion on the grounds that he failed to include a separate brief.*" *Case No. 24-1247*. This appellate ruling reinforces Plaintiff's right to proceed under Rule 15(c), based on diligent amendment and good-faith preservation of claims against later-identified parties.

## Conclusion: Rule 15(c) Relation-Back Is Proper

Plaintiff's claims against the Moving Defendants arise from the same infringing stream originally pled and were preserved through timely placeholder designations. Rule 15(c) is satisfied both factually and procedurally.

### 1. Defendants Misstate the *Krupski* Standard

Defendants misapply *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010). The inquiry is not whether Plaintiff knew Defendants' names, but whether Defendants knew—or should have known—that they were the intended targets. *Krupski*, 560 U.S. at 548. Plaintiff included Does 1–50 in the original complaint, a recognized practice used to preserve claims where the underlying conduct is known but the responsible entities are not yet identifiable. This clearly signaled Plaintiff's intent to later name upstream digital facilitators in the same infringing chain once discovery and investigation revealed their roles.

### 2. Defendants' Roles Were Not Remote or Unforeseeable

The original complaint centered on the Orbeez Crush Crushkins product lines—heavily promoted and sold during the 2016 damages period. Defendants operated platforms that: (1) surfaced infringing listings (Google and Yahoo); (2) hosted influencer videos on YouTube; (3) controlled browser defaults and search integrations (Mozilla, Apple); and (4) monetized traffic and visibility. **Google Patents and Yahoo returned the '959 patent,** confirming access. These Defendants were not peripheral—they were integral to the infringing stream and cannot credibly claim surprise.

### 3. Use of Doe Defendants Preserved Plaintiff's Rights

As held in *Garvin v. City of Philadelphia*, 354 F.3d 215 (3d Cir. 2003), placeholder defendants may preserve claims while the plaintiff works to identify responsible parties. Unlike in *Garvin* or *Britt*, Plaintiff here expressly named Does 1–50 from the outset. The roles of the later-named

Defendants were not concealed—they were publicly visible through search engines, browser platforms, and video tools used in 2016. Their monetized engagement with infringing products supports a finding of constructive notice and justifies relation-back under Rule 15(c).

### 4. Patent Scope Was Clear from the Start

Defendants' argument about the '959 patent's toothbrush reference is misplaced. The patent claims a foot-shaped article assembly—directly applicable to products like Orbeez Crush Crushkins product lines. Plaintiff has previously secured settlements involving this product line and others beyond oral care, confirming the patent's broader commercial scope and enforceability in non-toothbrush contexts.

### 5. The Mistake Was Naming, Not Theory

*Krupski* supports substituting proper parties when the original complaint names only downstream sellers. Plaintiff's early focus on retailers shifted after uncovering platform-level roles in promoting and enabling the same infringing conduct. These amendments reflect factual refinement—not a change in legal theory—and are consistent with Rule 15(c).

### Conclusion: Relation Back Under Rule 15(c) Is Proper

Plaintiff: (1) Used Does 1–50 to preserve claims; (2) Alleged a consistent stream of infringing conduct; (3) Later identified Defendants that monetized that stream; and (4) Demonstrated constructive notice through search engines, browser platforms, and patent databases. Rule 15(c) is satisfied. Dismissal is not warranted.

### All Claims Concern the Same Patent and Product, Supporting Relation Back

Defendants wrongly assert that Plaintiff added "unrelated allegations" involving unspecified patents. In reality, the Fifth Amended Complaint alleges infringement of a single patent—U.S. Patent No. 7,653,959 ("the '959 patent")—and identifies one infringing product line: the Orbeez

Crush Crushkins product lines. While the Complaint uses terms like "systemic" or "large-scale," these describe how Defendants' platforms functioned—not any new patents or legal theories. Plaintiff alleges that Defendants: (1) designed and monetized search, browser, and video platforms that algorithmically promoted infringing Orbeez Crush Crushkins product content to maximize visibility and ad revenue; and (2) failed to use readily available tools—such as Google Patents, internal detection systems, or AI-based filtering—to screen for patent infringement, even while strictly enforcing copyright via DMCA takedowns. This platform double standard supports a finding of willful blindness and material contribution. **All current Defendants had access to both the '959 patent and this litigation, as confirmed by publicly available search results and Plaintiff's exhibits.** All claims arise from a common nucleus of operative fact: the same product line first identified in 2022. The Fifth Amended Complaint simply expands on how digital infrastructure intensified that infringement—it does not introduce new products or patents. Defendants' reliance on *Anza Tech.* and *Samsung v. Netlist* is misplaced; those cases involved new patents and unrelated technologies. Here, there is no deviation in patent, product, or factual theory.

**Conclusion:** Rule 15(c) is satisfied. There is no new patent, no new product, and no prejudice. Defendants' argument should be rejected.

## II. Venue Is Proper Under § 1400(b), or Transfer / Discovery Is Warranted

### A. Defendants' Narrow Reading of § 1400(b) Ignores Local Infringement and Digital Activity

Defendants claim venue is improper under § 1400(b) because they do not "reside" or maintain a "regular and established place of business" in the Middle District. (Defs' Br. at 19). Plaintiff agrees that under *TC Heartland*, a corporation "resides" only in its state of incorporation. But

venue is proper where acts of infringement occurred and the defendant has a regular place of business. *See In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Both prongs are met here.

## B. Infringing Acts Occurred in This District

Plaintiff and others in this District received search results, browser suggestions, and YouTube videos promoting infringing Orbeez Crush Crushkins products. These results were monetized by Defendants through ads, affiliate linking, and visibility algorithms. Plaintiff identifies infringing content delivered within this District, including content served directly to Plaintiff.

## C. Defendants Have a Regular and Established Presence in Pennsylvania

Apple operates nine retail stores across the Commonwealth that provides app services, browser access, and digital support central to Plaintiff's claims. Google maintains a physical facility in Pittsburgh and delivers Chrome, Google Search, Google Play, and YouTube throughout the state. Mozilla also operates across Pennsylvania. Its Firefox browser—embedded in millions of devices statewide—partners with default search providers such as Yahoo and Google for monetization. All Defendants maintain persistent, monetized digital infrastructure that connects consumers to infringing product listings. This embedded infrastructure—including preinstalled apps and operating systems—serves as a commercial gateway in this District. Venue is proper under § 1400(b) based on *In re Google LLC*, 949 F.3d 1338, 1344–45 (Fed. Cir. 2020), and *Seven Networks*, 315 F. Supp. 3d 933, 956 (E.D. Tex. 2018), both of which recognize that software infrastructure may establish venue when continuously used to facilitate commercial activity.

## D. Transfer Is Required If Venue Is Deemed Improper

Even if venue were technically improper, dismissal is not appropriate. Plaintiff requests transfer to the Western District of Pennsylvania for Google, YouTube, Apple, and Mozilla under §

1406(a). For Mozilla, transfer is proper based on its statewide distribution of Firefox, default search partnerships, and monetized browser activity—particularly in major urban areas like Pittsburgh and Philadelphia. *Goldlawr v. Heiman*, 369 U.S. 463, 466 (1962), permits transfer even without personal jurisdiction. *CIBC Bank USA v. Integrated Flight Resources*, 2022 WL 4091256, at *4 (E.D. Pa. Sept. 6, 2022)*, favored transfer over dismissal. *Carteret Sav. Bank v. Shushan*, 919 F.2d 225, 232 (3d Cir. 1990), confirms that transfer promotes justice more than outright dismissal.

**Conclusion:** Venue is proper in this District based on infringement and embedded commercial presence. At minimum, jurisdictional discovery is warranted (Celgene, 17 F.4th at 1127), or the case should be transferred to the Western District under § 1406(a). Dismissal is unwarranted.

**Venue Is Proper or Transferable or Transferable as to Google and YouTube.**

**1. Physical and Commercial Presence in Pennsylvania**

Google maintains a substantial engineering and commercial campus in Pittsburgh, located within the Western District of Pennsylvania. YouTube—owned and operated by Google—functions as part of this same integrated business structure. Although not situated in the Middle District, this directly undercuts Defendants' claim that venue is improper anywhere in the Commonwealth. Under 28 U.S.C. § 1406(a) and *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962), when venue is improper, the case should be transferred—not dismissed—if another proper venue exists. Google's and YouTube's established presence in the Western District meets this requirement, making transfer the appropriate remedy if the Middle District is deemed deficient.

**2. Embedded Digital Infrastructure Reaches into This District**

Google and YouTube operate integrated platforms—Search, YouTube, Chrome, and the Play Store—preinstalled across millions of devices used daily within this District. These are not

passive tools. They deliver targeted ads, algorithmically promote products, and drive user engagement that monetizes infringing content. All of this occurs locally and constitutes infringing acts under § 1400(b). *In re Cray Inc.*, 871 F.3d 1355, 1362–63 (Fed. Cir. 2017), and *Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1125 (Fed. Cir. 2021), confirm that persistent digital infrastructure paired with continuous commercial use can satisfy the "regular and established place of business" requirement. Courts have further held that consumer residences may support venue when the defendant persistently uses such environments for business purposes. See *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 552–53 (S.D.N.Y. 2018) (software and product usage in homes may support venue); *Talsk Research Inc. v. Evernote Corp.*, No. 16-cv-2167, 2017 WL 4269004, at *4 (N.D. Tex. Sept. 26, 2017) (preinstalled apps on devices supported venue under § 1400(b)). Viewed through this lens, Defendants' platforms function as active business infrastructure within this District and directly contribute to infringement of the '959 patent.

### 3. Transfer to the Western District Is the Appropriate Remedy

Even assuming arguendo that venue is improper here, dismissal is unwarranted. Plaintiff expressly requests transfer to the Western District of Pennsylvania, where Google and YouTube maintain confirmed physical and operational presence. Transfer under § 1406(a) is the proper procedural remedy—particularly where venue-related discovery may bolster Plaintiff's showing. Defendants improperly conflate venue with unrelated Rule 12(b)(6) or statute-of-limitations defenses. Venue must be assessed independently, based on local conduct—not as a proxy for dismissal.

Plaintiff's claims, filed on November 3, 2022, and focused on the 2016 damages period, are timely under 35 U.S.C. § 286 and facially proper under the Fifth Amended Complaint.

**Conclusion:** Venue is proper based on Defendants' commercial activity and embedded digital presence in this District—or, alternatively, the case should be transferred to the Western District, where Google maintains a confirmed business location. Dismissal is legally improper. At minimum, limited jurisdictional discovery should be granted.

## B. Venue Is Proper as to Apple or, in the Alternative, Transfer or Discovery Is Required

Defendants argue that Apple is incorporated and headquartered in California, has no office in the Middle District, and must therefore be dismissed. This narrow view ignores Apple's embedded platform conduct and misapplies 28 U.S.C. § 1400(b). Venue is proper—or, at minimum, transfer is required.

### 1. Apple Maintains Significant Commercial Presence in the Commonwealth

Apple operates at least nine retail locations statewide, including multiple stores in Pittsburgh (Western District). These outlets directly contradict the claim that no Pennsylvania venue is viable. While Apple may lack a physical office in the Middle District, its sustained commercial activity throughout the Commonwealth renders outright dismissal improper. **Transfer under § 1406(a)** is the appropriate remedy. See *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962).

### 2. Apple's Digital Infrastructure Establishes Forum Nexus

Apple's platforms—Safari, the App Store, and iOS—are pre-installed and continuously active on millions of devices in this District. These tools function as commercial storefronts, directing users to products, media, and search results monetized by Apple through ad revenue, commissions, and transaction fees. Courts have consistently recognized that embedded software infrastructure may constitute a "place of business" when paired with continuous monetization and user targeting. In *In re Google LLC*, 949 F.3d 1338, 1345–47 (Fed. Cir. 2020), ad-serving server infrastructure supported venue. In *Personal Audio, LLC v. Google Inc.*, 280 F. Supp. 3d

922, 933 (E.D. Tex. 2017), streaming content to devices within a district met the venue test where monetization occurred. Likewise, *Realtime Data LLC v. Barracuda Networks, Inc.*, No. 2:17-cv-00495, 2017 WL 4791970, at *4 (E.D. Tex. Oct. 24, 2017), held that commercial transmissions through user devices could support venue even without physical offices. Here, Apple promoted, delivered, or enabled infringing product content through its platforms, and that conduct reached users in this District. These acts satisfy the "acts of infringement" prong, while Apple's software ecosystem and monetization structure establish a "regular and established place of business" under § 1400(b).

## C. Venue Is Proper or Transfer Is the Appropriate Remedy for Mozilla

Mozilla's venue challenge fails legally and factually. Venue is proper based on Mozilla's commercial activity in this District—or, at minimum, transfer is required under § 1406(a).

### 1. Digital Commerce and Operational Presence

Firefox is not a passive tool—it is a maintained commercial product that was distributed, updated, and monetized in this District during the damages period. It enabled users here to access infringing listings and promotional content, linking Mozilla's platform to the asserted infringement. Mozilla's 2016 default search partnership with Yahoo generated revenue tied to browser activity in this forum. These facts support meaningful business presence without a physical office. Yahoo, to this day, returns results showing where to buy the infringing product lines, including search results for "'959 patent" and listings referencing this very lawsuit. See Plaintiff's Exhibits.

### 2. Embedded Infrastructure and Constructive Presence

Under *In re Cray*, a "place of business" exists wherever business activity occurs—even outside a formal office. Firefox was embedded across devices in this District, functioning as a gateway to

search, advertising, and monetized content tied to the infringing activity described in the Fifth Amended Complaint. This geographic footprint supports venue under standards applied to digital infrastructure and recurring monetization.

### 3. Transfer, Not Dismissal, Is the Proper Remedy

Even if venue in the Middle District is found lacking, dismissal is improper. Under 28 U.S.C. § 1406(a), transfer is mandated where another proper venue exists. Mozilla's lack of a traditional office does not erase its active commercial role in facilitating infringement via platforms accessed in this forum. Dismissal would reward a structural design that evades accountability through decentralized software distribution. Plaintiff, proceeding pro se, has pled specific allegations showing Mozilla's role in infringement within this District. Where venue is contested but jurisdiction exists elsewhere in Pennsylvania, transfer—not dismissal—is appropriate. See *Goldlawr*, 369 U.S. at 466; *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983). The motion should be denied—or, at minimum, the Court should authorize jurisdictional discovery or transfer to another Pennsylvania district. Having addressed venue, Plaintiff now turns to the sufficiency of the Fifth Amended Complaint. These claims are detailed, product-specific, and supported by platform conduct tied to the 2016 statutory period.

### III. The Fifth Amended Complaint States a Plausible Claim for Relief

Defendants' claim that the Fifth Amended Complaint fails under Rule 12(b)(6) is incorrect and contrary to the detailed allegations pled. Plaintiff identifies a known infringing product line (Orbeez Crush Crushkins), a valid patent (the '959 Patent), and specific platforms used to facilitate infringement.

### A. Direct Infringement Is Sufficiently Pled

The Complaint identifies the infringing Orbeez Crush Crushkins products and explains how

users located and purchased them via platforms operated by Defendants. Paragraphs 28–30 describe how Defendants offered for sale, aided in the sale, and promoted infringing products in this District. These allegations are concrete, product-specific, and meet the standard under § 271(a). Supporting filings and exhibits further demonstrate that searches conducted in 2016 on Google and Yahoo (Mozilla's default search engine in 2016) returned infringing listings. These contextual facts supplement the well-pled allegations in the Complaint and reinforce the plausibility of Plaintiff's claim under § 271(a).

## B. Indirect Infringement Allegations Are Legally and Factually Supported

Counts II–IV present a two-prong indirect infringement framework:

First, **Platform Enablement** – Defendants operated systems (search, ad, and video) that spread infringing content without patent screening, forming a commercial ecosystem that facilitated infringement. Second, **Willful Blindness** – Defendants ignored feasible safeguards available in 2016, including patent keyword filters, image-based detection, and cross-referencing tools like Google Patents. These omissions support willful blindness under *Global-Tech*, 563 U.S. 754 (2011), and establish liability under §§ 271(b) and (c).

## C. Fair Notice Has Been Provided

The Complaint specifies the patent, the infringing Orbeez Crush Crushkins product line, the relevant time period, and the conduct of each Defendant platform. Paragraphs 28–30 identify the Orbeez Crush Crushkins products as the infringing subject matter, and those allegations are incorporated by reference into Counts II through IV. Paragraphs 31–54 describe how platforms such as Google Search, YouTube, Apple's Safari browser, and Mozilla's Firefox facilitated the visibility, algorithmic promotion, and monetized placement of infringing product listings. These allegations provide each Defendant with clear notice of the claims asserted against them and the

nature of their role. The Complaint satisfies the pleading standard under Rule 8 and exceeds what was accepted in *Robocast* and *Bonutti Skeletal Innovations*. Further, **Plaintiff's Opposition to the Joint Rule 12 Motion (Doc. 104)** expands on these claims by detailing each Defendant's functional role—search engine operation, influencer monetization, browser defaults, and financial partnerships—all tied to the Orbeez Crush Crushkins product's discoverability and promotion. This reinforces the individualized notice provided and confirms that group dismissal is not appropriate.

### IV. Direct Infringement Allegations Are Sufficient Under Rule 12(b)(6)

Defendants misstate the applicable pleading standard and ignore the factual specificity in the Fifth Amended Complaint.

### A. Specific Accused Products Are Identified

Plaintiff identifies Orbeez Crush Crushkins Pets, Crushkins Safari, and Farmland Animals as infringing products that embody the '959 patent and were sold in U.S. commerce via retail and online channels. This satisfies the product identification requirement under *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018).

### B. Factual Basis for Direct Infringement Is Provided

The Complaint details how these products entered commerce, were promoted online, and made available for purchase. Paragraphs 28–30 cite manufacturers, retailers, and related actors responsible for distributing them. Defendants' suggestion that Plaintiff must plead sales dates or element-by-element claim charts at this stage is incorrect. Rule 12(b)(6) does not require claim construction before discovery.

### C. Prior Settlements Confirm Real-World Infringement

Multiple parties have settled claims involving the Orbeez Crush Crushkins line, confirming the

presence of actionable infringement and rebutting any argument that the Complaint is speculative.

## D. Pro Se and Rule 15 Principles Weigh Against Dismissal

Even if the Court finds that some allegations are grouped, pro se pleadings are liberally construed, and Rule 15 favors resolution on the merits. Plaintiff amended in good faith and respectfully requests the opportunity to clarify any ambiguity through discovery.

## V. Indirect and Willful Infringement Claims Are Plausibly Alleged

Defendants wrongly characterize Plaintiff's indirect infringement claims as conclusory. The Fifth Amended Complaint pleads specific facts supporting inducement, contributory infringement, and willful blindness under §§ 271(b) and (c).

## A. Inducement – Platform-Level Facilitation

Defendants structured and monetized digital platforms—search engines, video suggestions, browser defaults—that repeatedly directed users to infringing Orbeez Crush products. The Complaint describes: (1) algorithmic promotion of infringing listings; (2) distribution of such content during the 2016 damages period; (3) monetization of traffic to infringing product pages. These operational details support inducement through willful blindness under *Global-Tech Appliances v. SEB*, 563 U.S. 754 (2011).

## B. Contributory Infringement – Material Support and Knowledge

The accused platforms materially enabled infringement by enhancing visibility, facilitating transactions, and promoting non-staple infringing goods. Search features, default settings, and monetization schemes were central. Defendants' failure to adopt feasible filtering tools strengthens liability under § 271(c).

## C. Willfulness and Deliberate Indifference

As of 2016, tools existed to cross-check product listings against public patent data. **Defendants were fully aware of the '959 patent, this lawsuit, and the Orbeez Crush Crushkins product line—there is no credible dispute on that point.** Despite this knowledge, they chose not to deploy available tools and technologies, instead continuing to profit from repeated infringement. This deliberate inaction supports a finding of willful blindness under *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011), and warrants enhanced damages under *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016).

## D. Rule 12(b)(6) Standard Is Met

Plaintiff identifies the products, platforms, roles, time period, and operational mechanisms. These well-pled facts meet the *Twombly/Iqbal* standard and establish plausible claims for inducement and contributory infringement.

## VI. Plaintiff Adequately Alleges Underlying Direct Infringement

Defendants' assertion that claims for contributory or induced infringement must fail due to the absence of direct infringement misreads the Complaint. The Fifth Amended Complaint plausibly alleges that direct infringement occurred through the sale and promotion of the Orbeez Crush Crushkins product lines by third-party manufacturers, distributors, and sellers. These allegations are detailed in Paragraphs 28–30 and provide the necessary foundation for claims under 35 U.S.C. §§ 271(b) and (c) against Defendants who facilitated, enabled, or monetized that underlying infringement.

## A. Identified Infringing Products and Conduct

Plaintiff identifies specific infringing product lines—Orbeez Crush Crushkins Pets, Safari, and Farmland Animals—sold, advertised, and used in U.S. commerce during the enforceable period

of the '959 patent. These allegations appear in Paragraphs 28–30 and are based on real-world product activity from 2016.

### B. Third-Party Sales Satisfy § 271(a)

Although Defendants did not manufacture the products, the Complaint describes how third-party sellers and marketplaces imported, distributed, and sold them. These acts constitute direct infringement under § 271(a) and serve as the basis for Plaintiff's indirect claims.

### C. Platform Facilitation Supports Indirect Claims

The Complaint explains how Defendants' platforms actively facilitated this infringement by: (1) recommending infringing listings via search and video; (2) monetizing user traffic directed to those listings; and (3) failing to implement feasible detection tools. This satisfies *Global-Tech* and similar precedent confirming that inducement and contributory liability arise when a defendant enables or encourages direct infringement. Plaintiff's Opposition to the Joint Rule 12 Motion (Doc. 104) further details how each Defendant's platform played a distinct role in surfacing, monetizing, or promoting infringing Orbeez Crush products—reinforcing the plausibility of indirect liability under 35 U.S.C. §§ 271(b) and (c).

### D. Legal Threshold Met

Plaintiff need not prove direct infringement at this stage—only plausibly allege it. By linking specific product lines to platform conduct within a defined period, Plaintiff satisfies the pleading standard for Counts II–IV and VI–VII.

### VII. Knowledge and Intent Are Sufficiently Alleged

Defendants' assertion that the Fifth Amended Complaint lacks allegations of knowledge or intent disregards key facts showing both actual and constructive awareness.

## A. Willful Blindness Satisfies the Knowledge Standard

As established in *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011), willful blindness is sufficient for knowledge under §§ 271(b) and (c). Plaintiff alleges that in 2016, Defendants operated advanced digital systems—capable of indexing, ad targeting, and filtering—but deliberately failed to block infringing Orbeez Crush Crushkin listings.

## B. Search and Platform Activity Show Constructive Knowledge

Searches via Google, Mozilla Firefox (with Yahoo), and Internet Explorer in 2016 returned infringing listings. These commercial results show Defendants' platforms directly connected to infringing goods. Further, Google Patents returned the correct '959 patent record when searched—confirming constructive access to the patent's scope and content.

## C. Monetization and Promotion Reinforce Intent

Defendants profited from listing traffic, algorithmic promotion, and ad revenue tied to infringing content. These commercial incentives, combined with their failure to filter such content, support a plausible inference of deliberate indifference or intent to induce infringement.

## D. Placeholder Defendants Support Awareness and Relation Back

Plaintiff included Does 1–50 in every '959 enforcement complaint to preserve claims against unknown platforms. The Fifth Amended Complaint now names those parties and ties them to the same infringing conduct—validating that knowledge allegations are timely and meet Rule 15(c).

**Conclusion:** The Complaint adequately pleads the knowledge and intent elements under §§ 271(b) and (c). Dismissal is unwarranted.

## VIII. Defendants Had Constructive Knowledge and Purpose-Built Tools Supporting Indirect Liability

## A. Constructive Knowledge and Willful Blindness Are Properly Alleged

The Fifth Amended Complaint alleges that Defendants knowingly maintained platforms—Google Search, YouTube, Mozilla Firefox with Yahoo, and Apple's Safari—that returned infringing Orbeez Crush listings during the damages period. These results were not incidental; they appeared through Defendants' monetized placement, ranking, and recommendation systems. Under *Global-Tech*, this supports a finding of willful blindness. Defendants failed to implement filtering or detection tools despite having the ability to do so. Search visibility and accurate patent returns via Google Patents and Yahoo seraches further reinforce constructive knowledge.

## B. Defendants' Monetization Systems Qualify as § 271(c) Components

Defendants wrongly claim no "specially made or adapted" components are identified. Their indexing and monetization platforms were not neutral—they were purpose-built to rank, recommend, and route traffic to commercial listings, including infringing ones. Google's development of advanced tools (e.g., quantum chips) demonstrates technical capacity to screen content in 2016. That it enforced strict controls for copyright, malware, and ad fraud—but not for patent rights—underscores selective inaction and knowledge.

## C. Financial Incentives Support Inducement Liability

Apple and Mozilla entered revenue-sharing deals with Google and Yahoo that encouraged continued routing of users toward infringing goods. These were not passive arrangements. Both companies embedded browser defaults that drove search behavior into monetized ecosystems promoting infringing content. The Complaint plausibly alleges these incentives led to deliberate non-enforcement.

**Conclusion:** Defendants' structural enablement, economic inducement, and failure to act support a plausible claim for indirect and willful infringement. The Fifth Amended Complaint meets the standard under §§ 271(b) and (c). Dismissal should be denied.

## IX. Constructive Knowledge and Willful Blindness Are Sufficiently Pled Under *Global-Tech*

### A. Defendants Misstate the Legal Standard

Defendants wrongly argue they had no obligation to "hunt down" Plaintiff's patent. But *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011), holds that willful blindness satisfies the knowledge element for inducement and contributory infringement. Under *Global-Tech*, knowledge is established where: (1) a party believes there's a high probability a fact exists; and (2) the party takes deliberate steps to avoid confirming it. (*Id.* at 769). This is exactly what Plaintiff alleges.

### B. Factual Basis for Willful Blindness and Constructive Knowledge

The Fifth Amended Complaint alleges that: (1) Google indexed the '959 patent through Google Patents, proving real-time access to its content. Yahoo, while lacking a standalone patent portal, indexed the patent through general search—demonstrating that both search providers active during the 2016 damages period had systems capable of retrieving and displaying the patent. (2) Google Shopping and YouTube simultaneously promoted infringing Orbeez Crush products—content that could have been screened using tools already deployed for copyright, malware, or ad fraud. (3) Apple, receiving $1B+ per year in 2016 to maintain Google as Safari's default search, routed user traffic into the same monetized ecosystem. (4) In 2016, Mozilla—funded by a $300+ million annual search deal with Yahoo—prioritized Yahoo as the default engine and directed users to infringing listings, with no filtering for patent violations. Given Yahoo's ability to retrieve the '959 patent via ordinary queries, Mozilla's partnership reflects willful blindness to

patent risks built into the platform's default behavior. These are not abstract claims. They show that Defendants: (1) had access to the patent, (2) monetized infringing listings, and (3) failed to act despite technological capacity.

## C. Selective Inaction Within a Monetized Ecosystem

Defendants had the access, capability, and financial incentive to intervene—but didn't. That inaction, amid known infringement channels, fits *Global-Tech*'s willful blindness doctrine. Additionally, Plaintiff's use of Does 1–50 in all related complaints preserves relation back under Rule 15(c), confirming Defendants had fair notice based on their commercial roles.

## X. Defendants Mischaracterize Paragraph 52; Claims Are Limited to the '959 Patent

## A. Plaintiff Seeks Relief for a Single Patent: the '959 Patent

Defendants wrongly suggest that Plaintiff seeks relief for unspecified patents not owned by him. This is incorrect. The Fifth Amended Complaint is focused solely on U.S. Patent No. 7,653,959 ("the '959 patent"), and no other patent is asserted. Paragraph 52 does not broaden the claims or seek damages beyond the '959.

## B. Structural Allegations Provide Context for Knowledge and Willfulness

Paragraphs 38–52 provide factual context showing that:

(1) Defendants operate platforms that promote and monetize infringing listings tied to the '959 patent; (2) they had the capacity to detect or prevent those listings using filters, AI, or internal tools; and (3) their inaction was deliberate and repeated—not incidental. This supports the plausibility of indirect infringement and willful blindness.

## C. Contextual Industry Practices Are Permissible Under Twombly and Global-Tech

Courts allow contextual allegations showing that: (1) platform architecture facilitates infringement; (2) monetization models incentivize it; and (3) repeated failure to act suggests

deliberate indifference. As *Grokster*, 545 U.S. 913 (2005), held, inducement may be inferred where a system is "overwhelmingly used to infringe." Likewise, *Global-Tech*, 563 U.S. at 769, affirms that willful blindness based on systemic conduct satisfies § 271's knowledge standard.

### D. Paragraph 52 Is Evidentiary, Not Jurisdictional

Defendants misconstrue Paragraph 52. It does not assert new claims or expand jurisdiction. It illustrates that Defendants' failure to stop infringement of the '959 patent was: (1) foreseeable based on known platform operations, (2) financially motivated by monetized traffic and ad revenue, and (3) technologically preventable using existing tools. These facts reinforce plausibility under Rule 12(b)(6).

**Conclusion:** Plaintiff's claims are based solely on the '959 patent. Paragraph 52 and the broader context of Paragraphs 38–52 reinforce knowledge, inducement, and intent. No other patents are asserted. Dismissal under Section IV is improper.

### Plaintiff Has Standing to Enforce the '959 Patent

Plaintiff is the original inventor and current legal owner of U.S. Patent No. 7,653,959. All claims in the Fifth Amended Complaint are based solely on infringement of this patent. Paragraph 52 does not assert claims on behalf of others; it provides evidentiary context supporting Plaintiff's own claims while noting that Defendants' platform-based business model of infringement extends beyond this lawsuit. Standing is established, and dismissal is unwarranted.

### XI. Systemic Context Supports Knowledge and Intent

The Fifth Amended Complaint describes how platforms operated by Google, YouTube, Mozilla, and Apple were monetized in ways that facilitated infringement, including of the Orbeez Crush Crushkins product lines during the 2016 damages period. The same platform structures—search defaults, monetized algorithms, ad targeting, and browser integration—were not limited to a

single product. They (1) enabled recurring exposure to infringing content and (2) generated commercial traffic that benefited Defendants. This context does not assert a new legal claim; it supports the inference that Defendants had the knowledge, tools, and incentives to detect infringement of the '959 patent—and willfully chose not to act.

## XII. No Violation of Article III or Rule 12(b)(1)

Plaintiff asserts claims only under the '959 patent. The Complaint satisfies Article III standing and meets pleading standards for inducement and contributory infringement under 35 U.S.C. §§ 271(b) and (c). Broader factual context—such as systemic monetization and platform design—is legally proper to support willful blindness and intent under *Twombly*, *Iqbal*, *Global-Tech*, and *Grokster*. Dismissal under Rule 12(b)(1) should be denied.

## XIII. Counts VI and VII Provide Contextual Support for the '959 Patent Claims

Counts VI and VII do not assert separate causes of action. They explain how: (1) Defendants' platform design—search, ads, and embedded infrastructure—regularly enabled infringement, and (2) technologies available at the time could have flagged or prevented it but were not used. These counts provide relevant context for the enforceable claims in Counts I–V and strengthen the equitable basis for Count V.

## XIV. No Claims Based on Third-Party Patents Are Asserted

Defendants incorrectly claim that Plaintiff seeks to enforce third-party patents. This is false. Plaintiff asserts claims only under the '959 patent, which he owns. The Complaint does not seek relief for any other patent or party. References to broader enablement simply illustrate: (1) Defendants' monetization structure, (2) their control over user search and discovery, and (3) their inaction despite access to the '959 patent and visibility into infringing listings.

## XV. Systemic Conduct Reinforces Knowledge and Willfulness

Counts VI and VII detail how Apple and Mozilla accepted massive default search payments—totaling hundreds of millions or more—while failing to implement any safeguards against patent infringement, that strongly supports willful blindness under *Global-Tech*. These facts show that: (1) Defendants had the means to detect infringement, and (2) deliberately chose not to act. This pattern of selective inaction, combined with economic gain, supports the plausibility of Plaintiff's indirect and willful infringement claims.

## XVI. Dismissal of Counts VI and VII Is Unwarranted

Counts VI and VII are contextual—not standalone causes of action—and are not subject to dismissal under Rule 12(b)(6). The Complaint remains focused solely on the '959 patent. These sections offer background that reinforces Defendants' knowledge, capacity to act, and conscious inaction. Early dismissal would be premature and legally improper.

## XVII. Count V Is Based on a Valid Patent and Not Preempted by Federal Law

Plaintiff's unjust enrichment claim arises directly from infringement of U.S. Patent No. 7,653,959. It does not seek to enforce unpatented ideas or bypass patent law. The '959 patent was lawfully issued, revived by the USPTO, and forms the sole basis of Plaintiff's claims. The equitable theory of unjust enrichment addresses Defendants' ability to profit from facilitating infringement while avoiding liability under traditional enforcement pathways.

## XVIII. Defendants' Preemption Argument Misstates the Law and Record

The preemption cases cited—*BearBox*, *Ultra Precision*, and *Bonito Boats*—involve attempts to assert exclusive rights beyond the scope of patent law. That is not the case here. Plaintiff alleges infringement of a valid federal patent and seeks unjust enrichment based on the same conduct. Where equitable relief arises from the same factual nucleus as the statutory violation, courts routinely allow it. This approach supplements, rather than circumvents, federal law.

## XIX. Unjust Enrichment Claim Is Factually and Legally Grounded

Plaintiff alleges that Google, Apple, and Mozilla: (1) generated significant profits during the 2016 damages period, (2) failed to filter infringing content tied to the '959 patent, and (3) monetized user traffic through advertising, search tools, and algorithmic placements. These platforms used enforcement tools for copyright, fraud, and malware but refused to apply them to patent protection. This deliberate inaction, driven by profit, supports a plausible unjust enrichment claim based on patent-related conduct.

## XX. Dismissal of Count V Would Be Premature

Count V is tied directly to the infringement-based claims in Counts I–IV. Because equitable remedies remain viable in patent actions, dismissal at the pleading stage is premature. Whether Defendants' conduct constitutes unjust enrichment is fact-intensive. At this stage, the Court must assume the allegations are true and allow discovery. Rule 12(b)(6) is not the proper vehicle to resolve factual issues related to enrichment, benefit, or equity.

## XXI. Plaintiff Has Alleged a Specific and Cognizable Benefit Tied to the '959 Patent

Count V does not rely on generalized or speculative theories. Plaintiff specifically alleges that Defendants—especially Google, Apple, and Mozilla—received: (1) economic benefits from advertising revenue, (2) increased platform engagement, and (3) data monetization— all resulting from visibility of infringing products. These benefits stemmed from deliberate algorithmic design and monetization strategies active during the 2016 period. The claim is well-pled and legally cognizable

## XXII. Equity Does Not Require a Voluntary Conveyance or Direct Solicitation

Under Pennsylvania law, unjust enrichment does not require a voluntary benefit or direct request. The relevant inquiry is whether Defendants retained benefits through inequitable conduct. The

Complaint plausibly alleges that Defendants profited by enabling infringement while refusing to act—despite having the means to prevent it. That is sufficient under controlling precedent.

## XXIII. The Complaint Satisfies Rule 12(b)(6) Pleading Standards

Plaintiff alleges that Defendants: (1) derived revenue from traffic and ads linked to infringing listings, (2) had the capability to filter infringing content, and (3) chose not to act, despite using similar tools for copyright and malware. This targeted inaction, in the face of known risks, supports a plausible unjust enrichment claim under Third Circuit standards, including *Allegheny General Hospital*.

## XXIV. Systemic Harm Strengthens the Inference of Unjust Gain

Though some allegations provide broader context, the unjust enrichment claim is limited to conduct tied to the '959 patent. Defendants profited from engagement and traffic stemming from infringing listings, yet failed to implement safeguards. Their refusal to act—despite having the tools—renders the enrichment unjust under Pennsylvania law. Count V is legally and factually sufficient.

## XXV. Plaintiff Has Stated a Cognizable Patent Claim

Plaintiff's claims under § 271 are legally viable and factually supported. The Fifth Amended Complaint: (1) pleads direct, induced, and contributory infringement based on platform conduct, search monetization, and willful inaction; (2) reflects procedural responsiveness—amendments were driven by defaults, judicial reassignment, and newly discovered facts, not legal defects; and (3) names platform defendants based on the same operative facts: the sale and promotion of infringing Orbeez Crush products, supporting relation back under Rule 15(c)(1)(C) due to the inclusion of Doe placeholders from the outset. This is (4) the first dispositive motion addressing Plaintiff's patent claims—no prior ruling has found the allegations implausible. In a pro se case,

dismissal with prejudice at this stage—without leave to cure—would be improper. Additionally, (5) Rule 15(a)(2) favors amendment where it would not be futile. Finally, (6) Plaintiff seeks equitable relief for platform misconduct that originated during the enforceable period of the '959 patent and reflects a broader failure to adopt reasonable safeguards against patent infringement. Dismissal is unwarranted even if some damages are time-limited under § 286.

## XXVI. Plaintiff's Final Response to Defendants' Request for Dismissal With Prejudice

Dismissal with prejudice is unwarranted. (1) All five counts assert valid claims under § 271, supported by detailed factual allegations concerning monetization, deliberate inaction, and systemic platform conduct; (2) Counts II–IV (inducement, contributory infringement, willfulness) are tied to specific conduct by Google, YouTube, Apple, and Mozilla during the 2016 period, including algorithmic prioritization and financial partnerships; (3) Count V pleads unjust retention of economic benefits—advertising revenue, engagement, and data monetization—directly tied to infringement of the '959 patent; (4) Counts VI and VII are not separate causes of action but provide essential context on the deliberate architecture and business models that amplified infringement risks and reinforce Defendants' knowledge. This background strengthens the § 271 claims.

## The legal arguments presented above are reinforced by concrete factual evidence.

Plaintiff submits a consolidated evidentiary record—spanning archived retailer pages, search engine results, influencer videos, and UPC tracking—confirming widespread visibility, indexing, and promotion of the infringing Orbeez Crush product lines during the 2016 damages period. Exhibits A–L support the plausibility of infringement and Defendants' knowledge. The Third Circuit has already reversed a dismissal in this case, holding: "It was an abuse of discretion for the District Court to deny Catanzaro's motion on the grounds that he failed to include a separate

brief." Case No. 24-1247. This precedent reinforces that Plaintiff's well-pled claims—factually detailed and legally grounded—must proceed.

**Plaintiff's Offensive Evidence of Widespread 2016 Infringement**

**Exhibit 1** is Plaintiff's structured rebuttal to Defendants' Exhibits 119-1 through 119-17. It corrects mischaracterizations and demonstrates that controlling precedent—including *Global-Tech, Grokster, In re Bill of Lading, Akanoc*, and *Tegal Corp.*—supports the viability of Plaintiff's claims. The exhibit confirms that Plaintiff has pled facts establishing inducement, contributory infringement, willful blindness, and unjust enrichment. Plaintiff also presents consolidated evidence that the infringing Orbeez Crush Crushkins products were commercially available, promoted, and accessible online during the 2016 statutory damages period. Exhibits A–L and a Walmart.com summary show that major platforms—including Target, Amazon, Walmart, Kmart, Sears, Newegg, Yahoo, Google, Rakuten, Jet, and Toys "R" Us—listed or linked to the products. Archived webpages, search engine results, influencer videos, and UPC tracking confirm that the exact items identified in the original Complaint were publicly sold during that timeframe. These materials support Plaintiff's claims under 35 U.S.C. §§ 271(a), (b), and (c) and rebut any suggestion that Defendants lacked notice or technical ability to detect and prevent infringement. The combined record reinforces the plausibility of contributory liability, willful blindness, and systemic inducement—making dismissal improper at this stage.

**Exhibit A** is a 2016 Wayback Machine archive of Target.com listing the infringing product. The page includes a timestamped URL, full product screenshots, and a footer citing "Copyright 2016 Target.com," confirming that Target—not a third party—sold the infringing product during the statutory window. This supports the linkage established in **Exhibit C**, where Maya Group listed Target as a designated retailer.

**Exhibit B** includes Google-indexed YouTube influencer videos from 2016 promoting the infringing products. These videos had millions of views, including one titled "Orbeez Crush Set Safari Crushkins Animals Maker…" uploaded nine years ago and viewed 9.7 million times. The results were retrieved using a 2016 date filter, showing Google's algorithm surfacing the videos via keyword indexing and reinforcing claims of platform-level promotion and discoverability.

**Exhibit C** presents a November 6, 2016 Maya Group webpage linking directly to retailers including Target, Amazon, Walmart, Kmart, and Toys "R" Us, each functioning as a live hyperlink at the time. This centralized retail distribution grid confirms that the infringing product was actively promoted and widely accessible across multiple platforms, many of which were operated or indexed by named Defendants.

**Exhibits D and E** contain July 2025 search results from Google (D) and Yahoo (E) for "Orbeez Crush Crushkins Pets." Both returned: (1) an active Amazon.com listing; (2) YouTube video thumbnails labeled "9 years ago"; and (3) now-defunct Walmart and Kmart links. These results confirm the infringing products were available through those retailers in 2016. Importantly, Yahoo served as Mozilla's default search engine, meaning Firefox users were directed to this content

**Exhibit F** shows the live Amazon.com listing, with verified customer reviews dating back to 2015 and 2016. Under information and belief, Spin Master (which acquired Maya Group in 2019) has maintained the listing, showing commercial continuity. The exhibit confirms that Amazon actively promoted the infringing product during the 2016 damages period, with the listing's persistence supporting the historical link to infringing sales.

**Exhibit G** provides a 2016 Kmart.com product page from the Wayback Machine, including a header stating "Added July 15, 2015" and a complete product listing. This confirms Kmart's

participation in distribution during the statutory window and aligns with its presence in both the

Maya Group grid (Exhibit C) and UPC tracking (Exhibit H).

**Exhibit H** presents UPC-based tracking confirming that the infringing product was listed, priced,

and accompanied by "Last Updated" time stamps across Sears, Newegg, Kmart, Rakuten, Jet,

Target, Walmart, and OnBuy.com. While not exhaustive, the data shows broad multi-retailer

distribution during 2016. Walmart.com hosted the product through a verified third-party seller,

subsequently resolved in Plaintiff's settlement with Walmart. Collectively, these exhibits

confirm that the infringing product was commercially promoted and discoverable during the

statutory window. Defendants—despite having enforcement tools for DMCA and

counterfeiting—failed to act, supporting constructive knowledge, systemic enablement, and

liability under §§ 271(a), (b), and (c).

**Exhibits I–L: Search Engine Visibility and Knowledge of the '959 Patent Litigation**

**Exhibit I** presents current Google search results for the query "Catanzaro v. Walmart Stores, Inc.

et al, 3:22-cv-01754 Patent Lawsuit." These results confirm that Google indexed publicly

available materials from this action, including docket entries and filing dates. Some listings show

the original filing date, supporting an inference that Google had actual or constructive notice of

the '959 patent and the claims at issue.

**Exhibit J** shows that a Google Patents search for the '959 patent returns the complete record.

This confirms that Google's systems were capable of recognizing and indexing the patent and

that it was publicly accessible alongside the infringing listings.

**Exhibit K** presents a Yahoo search for the case title, returning litigation records that were

accessible via Mozilla's Firefox browser in 2016, reinforcing that these materials were publicly

visible through Yahoo's default search pathway.

**Exhibit L** confirms that Yahoo's search engine retrieves the full '959 patent record, supporting Plaintiff's position that Defendants had the technological capacity to identify infringing products and relevant legal claims—and yet failed to act.

**Summary: Why Dismissal Is Unwarranted**

In *Perfect 10 v. Google*, 508 F.3d 1146 (9th Cir. 2007), and *Authors Guild v. Google*, 804 F.3d 202 (2d Cir. 2015), federal courts acknowledged that Google's systems were capable of indexing, surfacing, and profiting from unauthorized intellectual property content. While those cases arose under copyright law and relied on fair use defenses unavailable in patent law, they confirm that Google possessed the technical capacity and commercial infrastructure to detect and control infringing material. Unlike copyright, patent law provides no fair use exception. Under *Global-Tech Appliances v. SEB*, 563 U.S. 754 (2011), contributory liability attaches when a party has knowledge of a patent and facilitates its infringement. Here, Exhibits A–L, combined with the fact that Google, YouTube, Apple, and Mozilla had access to and identified the '959 patent, indexed and displayed where to purchase infringing content (including via YouTube promotion), and indexed this lawsuit upon public availability, demonstrate that Defendants had both knowledge and opportunity and intentionally chose to be willfully blind to the infringement. Despite this, they continued to promote or monetize infringing listings. These facts support plausible claims under 35 U.S.C. §§ 271(b) and (c) and warrant denial of Defendants' motions to dismiss.

Date June 26, 2025

Respectfully submitted,

David J. Catanzaro
Plaintiff *pro se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 936-9262
E-mail: davidjosephus@aol.com

**Certificate of Use of Generative AI**

I voluntarily certify the following: (1) I utilized OpenAI's ChatGPT to assist in the preparation of the accompanying filing; (2) portions of the entire filing—such as formatting, organizational structure, and language refinement—were prepared or edited using ChatGPT; and (3) I personally reviewed all AI-assisted content and confirm that all facts, citations, legal authorities, and representations are accurate and supported to the best of my ability.

Date June 26, 2025

David J. Catanzaro
Plaintiff *pro se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 936-9262
E-mail: davidjosephus@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2025, I caused a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION AND BRIEF TO DISMISS & AFFIRMATIVE SHOWING THAT THE FIFTH AMENDED COMPLAINT STATES VALID CLAIMS UNDER 35 U.S.C. § 271 AND SHOULD PROCEED TO DISCOVERY** to be served via email, in accordance with the parties' agreement for reciprocal email service, to all counsel of record on the docket.

**For Unrepresented Defendants:** The following two defendants have not appeared in this case and are not represented by counsel. Copies of the foregoing document were served via First Class **U.S. Mail** to the last known business address shared by both entities: **Lykart Technologies, LLC. and GrowKart** These defendants are currently in procedural **default**, and Plaintiff reserves the right to move for entry of default as appropriate.

Date June 26, 2025

David J. Catanzaro
Plaintiff *pro se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 936-9262
E-mail: davidjosephus@aol.com