# EXHIBIT 2

Case 3:22-cv-01754-JFS-PJC    Document 121-2    Filed 07/10/25    Page 2 of 6

Shimon v. Equifax Information Services LLC, Not Reported in Fed. Supp. (2018)

2018 WL 4906245
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Jacob Y. SHIMON, Plaintiff,

v.

EQUIFAX INFORMATION
SERVICES LLC, Defendant.

18-cv-2959 (BMC)
|
Signed 10/08/2018
|
Filed 10/09/2018

**Attorneys and Law Firms**

Daniel Zemel, Zemel Law, LLC, Kearney, NJ, for Plaintiff.

Zachary A. McEntyre, John C. Toro, Meryl W. Roper, King & Spalding LLP, Atlanta, GA, Alicia Bliss Gilbert, King & Spalding, New York, NY, Katherine McFarland Stein, King & Spalding, Austin, TX, for Defendant.

<u>**MEMORANDUM DECISION AND ORDER**</u>

Brian M. Cogan, U.S.D.J.

**\*1**  Plaintiff alleges that defendant Equifax violated the Fair Credit Reporting Act, 15 U.S.C. § 1681-1681x, by listing on his credit report a civil judgment against him that had been vacated, and by failing to remove it from his credit report after he disputed it. Equifax's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted in part and denied in part for the reasons set forth below.

**SUMMARY OF AMENDED COMPLAINT**

In March 2013, a debt collection company obtained a civil judgment against plaintiff in the Civil Court of New York, Kings County. Approximately nine months later, in December 2013, the Kings County Civil Court vacated the judgment. Equifax continued to list the judgment on plaintiff's credit report after it was vacated. LexisNexis Risk Solutions, which collects and furnishes credit information from court records and other records through a contract with Equifax, had provided information about the judgment to Equifax but had not reported that the state court had vacated the judgment.

Plaintiff first disputed the judgment with Equifax in May 2014. In response, Equifax marked the judgment as "satisfied," but did not remove it from plaintiff's credit report.

Plaintiff "requested Equifax's method of verification in April, June, and August 2016" and asked Equifax to provide a detailed report of the sources of information for his credit report so that plaintiff could contact those sources directly. In response, plaintiff received from Equifax several reinvestigation results letters and a copy of his full credit file.

The letters referred to "Public Record Information" with the parenthetical: "This section includes public record items obtained from local, state and federal courts." The reinvestigation letters also stated that "we have reviewed the judgment information ... If you have additional questions please contact Cvc of The [*sic*], 141 Livingston St. Brooklyn, NY 11201-5120 Phone: (347) 404-9123." The address and phone number are those for the Kings County Civil Court. This same statement about reviewing the judgment information and the associated contact information also appeared in the credit file dated July 12, 2016 that Equifax provided to plaintiff.

Plaintiff alleges that Equifax violated 15 U.S.C. § 1681e(b) by either negligently or willfully failing to follow reasonable procedures to assure maximum possible accuracy of the information that it reported, because, had it done so, it would have known that the state court had vacated the judgment. Plaintiff also alleges that Equifax violated § 1681i(a) by: (1) failing to contact LexisNexis within the required period of time, (2) failing to provide LexisNexis with the FCRA-required information Equifax received from plaintiff; and (3) misrepresenting in the letters the name and address of the provider of the information by listing the state court instead of LexisNexis. Finally, plaintiff also alleges that Equifax violated § 1681g by falsely misrepresenting in the letters and the credit file that it obtained information about the state court judgment directly from the court, when it actually received it through LexisNexis.

**DISCUSSION**

**I. Class and Individual Claims under 15 U.S.C. § 1681e(b)**

**\*2** Approximately five months before this case was filed, another plaintiff began a putative class action in the Southern District of New York alleging similar violations. See De la Rosa v. Equifax Information Services, LLC, No. 18-cv-0078 (S.D.N.Y., filed Jan. 5, 2018). Relying on the "first filed rule," Equifax has moved to stay or dismiss plaintiff's class and individual claims under § 1681e(b) (failing to follow reasonable measures to assure accuracy). Equifax points out that there is significant overlap between the putative class in De la Rosa and the one plaintiff seeks to represent here: both cover anyone who had a "civil court judgment recorded in the State of New York" that "appear[ed] on a[n] Equifax credit [or consumer] report" as "satisfied" even though "the civil court record indicated that the ... judgment had been vacated ... at least 30 days prior to the date of the Equifax ... report."

Under the first-filed rule, "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." Wyler-Wittenberg v. MetLife Home Loans, Inc., 899 F. Supp. 2d 235, 243 (E.D.N.Y. 2013) (quoting First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989) ). The first-filed rule is not an "invariable mandate," but a "presumption" generally designed to avoid duplicative litigation. Employers Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d 271, 275 (2d Cir. 2008). Some district courts have applied the first-filed rule to dismiss or stay a putative class action where the case's factual or legal issues overlap with those in an earlier-filed class action, even though the plaintiffs in the two cases are different. See, e.g., Wyler-Wittenberg, 899 F. Supp. 2d at 244.

Despite some cases applying the first-filed rule to similar putative class actions, this Court is skeptical that the first-filed rule is generally appropriate in that context. The rule is most commonly applied to avoid duplicative litigation and to honor the plaintiff's choice of forum in cases involving identical parties and claims. See William Gluckin & Co. v. Int'l Playtex Corp., 407 F.2d 177, 178 (2d Cir. 1969). The exceptions to the rule – where the first-filed lawsuit is an improper anticipatory declaratory action or where forum shopping alone motivated the plaintiff's choice of forum for the first suit, see Employers Ins. of Wausau, 522 F.3d at 275 – show how the rule is designed to fairly and effectively manage essentially identical suits between the same or closely related parties.

In the putative class action context, even assuming that the two complaints define identical classes, the parties will rarely, if ever, actually be identical – the plaintiff in the second-

filed action may opt-out if the class is certified or perhaps many members of the first putative class will opt out. The proposed class representative in the first action may also be found inadequate or the first case may settle before a class is certified. All of these possibilities are present here: if De la Rosa settles before class certification – which happens often in FCRA cases – or if the De la Rosa class is certified and plaintiff opts out, the parties in this case will have to conduct discovery on at least plaintiff's individual § 1681e(b) claim and possible the class claim, as plaintiff would not have had access to the discovery in De la Rosa.

Moreover, using the first-filed rule to stay or dismiss a concurrently pending class action would undermine other efficiency-maximizing Congressional directives. These include transfers to a more convenient forum under 28 U.S.C. § 1404(a) (which Equifax has not sought), and multi-districting, or consolidation of similar cases that raise common questions of fact, under 28 U.S.C. § 1407. In neither of those statutes did Congress authorize the half-remedy of a stay that Equifax seeks here.

**\*3** Even assuming that the first-filed rule is appropriate in some putative class actions, this one is a particularly poor candidate because the time periods in the putative class definitions do not entirely overlap. Although the descriptions of the conduct are substantially identical, the De la Rosa putative class covers people with consumer credit reports dated from January 5, 2013 to January 5, 2018, while plaintiff's proposed definition covers people with credit reports dated from January 10, 2016 to January 10, 2018. This means that even if there is a judgment in the De la Rosa case, plaintiff could still bring a new class claim representing people whose credit reports were dated from January 5 to January 10, 2018.

The Court does, however, recognize the desirability of not duplicating work and will therefore stagger discovery of the individual and class claims in this case. The parties can reevaluate what discovery should be taken on plaintiff's class claims, including the claim under § 1681e(b), at the end of discovery on the individual claims. Furthermore, nothing in this Court's order prevents Equifax from coordinating discovery with De la Rosa.

## II. Class and Individual Claims for Negligent and Willful Violations of 15 U.S.C. § 1681i

Equifax also moves to dismiss plaintiff's claims that it violated § 1681i negligently and willfully by: (1) failing

to timely notify LexisNexis that plaintiff disputed the civil judgment that it reported; (2) failing to provide LexisNexis with information that plaintiff gave Equifax; and (3) misrepresenting in the reinvestigation results letters the name and address of the entity that provided the public record information by listing the state court instead of LexisNexis. Equifax argues that § 1681i(a)(2) and § 1681i(a)(6)(B) do not apply to public record information, because those provisions only apply to "furnishers" and only credit account information, not public record information is "furnished." The basis for Equifax's argument is a narrow interpretation of the statutory definition of a consumer reporting agency to which these requirements apply:

> a consumer reporting agency that regularly engages in the practice of assembling or evaluating, and maintaining, for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide: (1) Public record information. (2) *Credit account information from persons who furnish that information regularly and in the ordinary course of business.*

15 U.S.C. § 1681a(p) (emphasis added). This definition implies that at least some third parties furnish credit account information to consumer reporting agencies. But it does not suggest that all "furnishers" (like those mentioned in § 1681i(a)(2) and § 1681i(a)(6) )[1] only furnish credit account information.

The text of § 1681i(a)(2) and (a)(6) certainly doesn't suggest that limitation. Section 1681i(a)(2) is entitled "[p]rompt notice of dispute to furnisher of information." Subsection (A) requires a consumer reporting agency that "receives notice of a dispute from any consumer" to "provide notification of the dispute to any person who provided any item of information in dispute." Using similarly broad language, § 1681i(a)(2)(B) requires the consumer reporting agency to "promptly provide to the person who provided the information in dispute all relevant information regarding the dispute" that it receives from the consumer. Section 1681a(a)

(6) requires reinvestigation results letters to include, among other things, "the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available."

**\*4** None of those provisions suggest that these notice requirements are limited to "persons" or "furnishers" that provide only credit account information. Nor does the Federal Trade Commission's definition of "furnisher" cited by Equifax suggest this limitation. To the contrary, that definition covers any entity "that furnishes *information relating to consumers* to one or more consumer reporting agencies for inclusion in a consumer report." That definition isn't any more restrictive than the capacious definitions suggested by § 1681i(a). See16 C.F.R. § 660.2(c) (emphasis added). The Court sees no reason why the language of § 1681i(a) precludes plaintiff's claim.

Equifax further argues that, even if plaintiff's claim for *negligent* failure to comply with § 1681i(a) survives a motion to dismiss, plaintiff's claim for a *willful* violation does not. A company willfully violates FCRA when it intentionally or recklessly disregards FCRA's requirements. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 69 (2007). To be reckless, the company's interpretation must be "objectively unreasonable." Id. at 69-70. "Where ... the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation," a defendant that adopts one of those reasonable interpretations is not reckless. Id. at 70 n.20. In Safeco, the Supreme Court considered the lack of authoritative guidance as one factor, along with the ambiguous statutory text, in concluding that the defendant's interpretation in that case was objectively reasonable. Id. at 70.

Here, plaintiff has pleaded facts that could support a finding of reckless disregard for § 1681i(a)'s requirements. Plaintiff alleges that, in response to his initial dispute of the judgment in May 2014, he wrote three letters over five months asking Equifax to explain its method of verification and to provide him with a "detailed report of the sources of the information" and that Equifax's responses (the letters and the full credit file), did not identify LexisNexis as the source or a source of the information.

Furthermore, Equifax's interpretation – that "any person who provided any item of information in dispute" did not include LexisNexis – was objectively unreasonable. Unlike

the word "sources" in § 1681g (discussed further below), there is nothing ambiguous about the term "any person who provided information." In this context, "any" is a function word that indicates the maximum or whole of a number or quantity. Webster's Third New International Dictionary, Unabridged, "any," http://unabridged.merriam-webster.com (last visited September 25, 2018). It implies that the required disclosure must list each and every "person" who "provided" information. Equifax's interpretation – that only the state court itself provided the information – is not objectively reasonable in the face of this inclusive statutory language.

Equifax's motion to dismiss is denied as to plaintiff's individual and class claims for willful violations of § 1681i.

### III. Individual and Class Claims for Negligent and Willful Violations of 15 U.S.C. § 1681g

Plaintiff alleges that Equifax violated § 1681g by, in response to plaintiff's request, falsely representing that it obtained information about the civil judgment against plaintiff directly from the state court. Equifax moves to dismiss plaintiff's claims for a willful violation on the ground that its interpretation of the word "sources" in § 1681g was objectively reasonable and that its actions could not have been willful based on its conduct in another class action in another jurisdiction, Jenkins v. Equifax, 15-cv-443 (E.D.V. A., filed July 28, 2015).

**\*5** The Court agrees with Equifax that its interpretation of the term "sources" in § 1681g(a)(2) was sufficiently reasonable, albeit mistaken, to preclude a finding of willfulness. Unlike § 1681i(a), which requires consumer reporting agencies to identify and convey certain information to "any person" who provided information in dispute, § 1681g requires them to report, in response to a request from a consumer "[a]ll information in the consumer's file at the time of the request" as well as "[t]he sources of the information." 15 U.S.C. § 1681g(a)(1)-(2). "Source," in common parlance, can refer to "a point of origin or procurement," but also to "one that supplies information." Webster's Third New International Dictionary, Unabridged, "source," http://unabridged.merriam-webster.com (last visited September 25, 2018). Both are reasonable interpretations of the ordinary meaning of "sources" as used in § 1681g(a).

Furthermore, plaintiff does not point to any FCRA-specific definition of "sources" in the statute or in administrative guidance that should control over the ordinary meaning. Although plaintiff cites a few out-of-circuit cases in which

district courts declined to dismiss complaints based on a similar argument that the consumer reporting agency's interpretation of "source" was objectively unreasonable, see, e.g., Dennis v. Trans Union, LLC, No. CIV.A. 14-2865, 2014 WL 5325231, at \*9 (E.D. Pa. Oct. 20, 2014); Dreher v. Experian Info. Sols., Inc., 71 F. Supp. 3d 572, 579-80 (E.D. Va. 2014), vacated on other grounds, 856 F.3d 337 (4th Cir. 2017), I do not find them persuasive.

In Dennis, 2014 WL 5325231, at \*9, the court denied the defendant's motion to dismiss after concluding that whether defendant's interpretation was objectively unreasonable was a fact question. Assuming that the issue of willfulness could at least sometimes be a question of fact for the jury, it is hard to see how it could be one in this case. Here, both parties agree about what happened. The only dispute is whether Equifax's interpretation of "source" as referring to only the state court and not to the third-party furnisher that collected the information from the state court – or both – was objectively unreasonable. Based on the common understanding of the word "source," this Court concludes that it was not. The Dreher Court's statement that "the term 'sources' clearly includes, at the very least, the entity that gives that information directly to the consumer reporting agency," 71 F. Supp. 3d at 580, without any further analysis, does not convince this Court otherwise.

The fact that Equifax settled a class action in Jenkins alleging a violation based on similar conduct and had, as part of that settlement, committed to changing its protocol for public report information in a credit file disclosure under § 1681g(a), is immaterial. Cf.Fed. R. Evid. 408 (evidence of settlement is not admissible to prove liability). And, contrary to plaintiff's argument, the fact that other plaintiffs have commenced suit against Equifax espousing the same theory does not mean that Equifax was on notice that its interpretation was unreasonable. As plaintiff acknowledges, all of those cases settled before the court reached the merits. FCRA cases often settle for nominal amounts far below the likely cost of continued litigation and therefore one can draw no inference from such settlements.

Finally, because Equifax alleges that the reinvestigation results letters and the full credit file that he received contained the same misleading disclosures, the Court's reasoning for dismissing plaintiff's individual and class claims for a willful violation apply equally to those same claims based on the reinvestigation results letters.[2]

**\*6** Equifax has also moved to dismiss plaintiff's class (but not individual) claim for a negligent violation of § 1681g, arguing that the particularized inquiry required for actual damages – the only damages available for a negligent violation under § 1681*o* – would preclude a class-wide determination. Equifax may be correct, but that argument is more properly addressed at the class-certification stage than on a motion to dismiss, particularly given that the parties will conduct discovery on plaintiff's individual claims before class discovery.

## CONCLUSION

Equifax's motion to dismiss [17] is GRANTED IN PART AND DENIED IN PART. No later than October 15, 2018, the parties are to submit a joint proposed case management plan.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4906245

---

## Footnotes

1    The statute defines "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

2    Because the Court concludes that defendant has stated a claim for a negligent violation of § 1681g based on the alleged statement in his July 12, 2016 credit file, the Court need not address whether the same statement in the reinvestigation letters is separately actionable.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.