UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID J. CATANZARO, | : | 3:22-CV-1754 |
| | : | |
| Plaintiff, | : | (Saporito, J.) |
| | : | |
| v. | : | (Caraballo, M.J.) |
| | : | |
| GOOGLE LLC, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I. Introduction

On November 3, 2022, plaintiff David J. Catanzaro, proceeding pro se, initiated this action against Walmart Stores, Inc., Maya Group Inc., and Does 1 through 50, asserting infringement of his expired 7,653,959 patent (the "959 patent"). Doc. 1. After five amended pleadings and extensive litigation, three defendants remain: Google LLC ("Google"), YouTube.com ("YouTube"), and Apple Inc. ("Apple").

Before the Court is the remaining defendants' joint motion to dismiss the fifth amended complaint. Doc. 114, 116–119. The motion is fully briefed and was referred to the undersigned to issue this Report and Recommendation, pursuant to Title 28, United States Code, Section 636(b)(1)(B). As set forth below, Catanzaro's fifth amended complaint

1

against the remaining defendants is untimely, and he cannot avail himself of the relation back provisions of Federal Rule of Civil Procedure 15(c). Accordingly, the undersigned recommends that the Court grant the motion to dismiss Catanzaro's fifth amended complaint with prejudice.

## II.    Background

As alleged in his pleadings, Catanzaro's 959 patent expired on December 30, 2016. Docs. 2, 71 at ¶ 3. The 959 patent is titled "Article Assembly," and concerns "[a]n assembly comprising a toothbrush having a first and second end." Docs. 1 at 2; 2 at 2. On November 3, 2022, Catanzaro initiated this action by filing a complaint against Walmart Stores, Inc., Maya Group Inc., and the anonymous Does 1–50, asserting infringement of his expired 959 patent. Doc. 1.

After commencing this action, Catanzaro continued to add, remove, or change the identities of the named defendants, through a series of amended complaints. On March 15, 2023, Catanzaro amended his complaint to name Walmart Stores, Inc., Spin Master, Ltd., and Does 1–50. Doc. 10. He again amended his complaint on April 5, 2023, to identify Walmart, Inc. and Walmart.com, while maintaining Does 1–

50 as defendants. Doc. 15. At Catanzaro's request, the court dismissed the Walmart defendants on August 2, 2023, leaving only the unnamed Doe defendants. Doc. 23.

On August 10, 2023, the court ordered Catanzaro to identify Does 1–50, stating that "[f]ailure to do so will result in this matter being dismissed." Doc. 24. Catanzaro moved for reconsideration of that order; the court denied the motion and dismissed the case. Docs. 25–26. Catanzaro appealed the decision, arguing that he had not received the court's August 10, 2023, order due to "mail delivery issues" which resulted in his failure to meet the court-imposed deadline. Doc. 28 at 1.

The Court of Appeals vacated and remanded for the court to "consider, in the first instance, whether Catanzaro's motion, properly construed as a motion for an extension of time, should be granted." *Catanzaro v. Walmart, Inc.*, No. 24-1247 (3d Cir. 2024). Docs. 30, 32. On July 12, 2024, the Court construed Catanzaro's motion as an extension request, granted the motion, and ordered him to identify Does 1–50 by August 12, 2024. Doc. 31.

On August 9, 2024, nearly two years after filing his original complaint, Catanzaro filed a third amended complaint. Doc. 33. For

3

the first time, he named more than a dozen corporations as defendants, including the remaining defendants addressed in this Report and Recommendation: Transform SR Brands LLC, Kmart, Kmart.com, Sears, Sears.com, STL Pro, Inc., Totalhill.com, Lykart Technologies LLC, GrowKart, Poshmark Inc., Target Corporation, Target.com, Microsoft Corporation, Alphabet Inc., Google, YouTube, Apple, and Mozilla Corporation. *Id.* The third amended complaint included general allegations that the defendants "induced others to infringe directly or under the doctrine of willful blindness and/or contributorily infringed, literally or under the doctrine of equivalents, one or more claims of the '959 patent . . . by manufacturing, having manufactured, importing, using, advertising, aiding in advertising, offering for sale, aiding in the sale and/or selling products that embody and/or practice the patented invention . . . ." *Id.* at ¶ 31. Catanzaro likewise averred that the defendants infringed "the '959 patent by knowingly and actively inducing others to infringe and/or Defendants have been willfully blind actively inducing others to infringe . . . ." *Id.* at ¶ 34. Catanzaro did not serve the remaining defendants with the third amended complaint until 2025: Apple was served on February 28, 2025

4

(Doc. 78 ¶ 1); Google and YouTube were served on January 28, 2025. Doc. 41 ¶ 1.

On March 4, 2025, before the defendants responded to the third amended complaint, Catanzaro filed a motion for leave to file a fourth amended complaint. Docs. 49–51. The proposed fourth amended complaint alleged patent infringement against the defendants based on "advertising, aiding in advertising" or "aiding in the sale" of infringing products. Doc. 50 ¶¶ 28–29. The proposed fourth amended complaint also added theories of infringement against the newly added defendants based on "enabling users to search, advertise, and promote the infringing products" or "intentionally fail[ing] to block infringing product listings" by "facilitat[ing] influencers in reviewing and promoting the infringing products, driving sales and expanding infringement." Doc. 52 ¶¶ 31–34. Catanzaro did not include any of these allegations in any of his prior complaints. In addition, the proposed fourth amended complaint dropped Transform SR Brands LLC, Kmart, Kmart.com, Sears, Sears.com, STL Pro, Inc., and Totalhill.com as defendants. Doc. 50.

On March 7, 2025, before the Court addressed his requested fourth amended complaint, Catanzaro filed another motion for leave to amend, this time filing a proposed fifth amended complaint.  Doc. 53. The fifth amended complaint added new claims for alleged "systemic" infringement based on "willful blindness" of unidentified patents, per his theory that certain defendants failed "to take adequate measures to prevent infringement" by third parties using platforms such as Google Search.  Doc. 71 ¶¶ 41, 36–37.  The fifth amended complaint became the operative complaint on March 17, 2025.  Doc. 71.[1]

The fifth amended complaint appears to advance seven counts: Direct Infringement (I), Contributory Infringement (II), "Willful Blindness" (III), Induced Infringement (IV), Unjust Enrichment (V), plus two sections in the complaint labeled "General Allegations of Systemic Contributory Infringement" (VI), and "Technological Advancements and the Lagging of Patent Law" (VII).  *Id.*  In sum, Catanzaro avers that the retail products "Orbeez Crush Crushkins Pets,

---

[1] On March 17, 2025, the Court granted a joint motion to dismiss Alphabet, Inc. from this action.  Doc. 66.  On May 16, 2025, Catanzaro dismissed Poshmark Inc. and Target.com by stipulation.  Docs. 102–103.  On June 6, 2025, Catanzaro dismissed Microsoft Corporation by stipulation.  Doc. 108.  The court dismissed Mozilla on April 20, 2026, by stipulation.  Docs. 143, 159.

Orbeez Crush Crushkins Safari, Orbeez Crush Crushkins Farmland Animals and assorted product lines ('Orbeez products')" infringe on his 959 patent. *Id.* ¶ 28.

The fifth amended complaint does not cite any facts to support any allegation that the remaining defendants make, use, offer to sell, or sell any of the identified Orbeez products. Instead, Catanzaro seeks redress for third-party infringement of patents in general, based on wide-ranging allegations that the defendants allegedly "provide essential tools and platforms that enable and facilitate widespread patent infringement by third parties," *id.* ¶ 49, including:

- "systematically facilitated influencers in reviewing and promoting infringing products";

- "promotes and lists infringing products across a wide range of patented technologies";

- "deliberate exclusion of AI-driven tools capable of scanning the PTO patent gazettes" to "identify [] potential infringements";

- "lack of algorithms designed to flag and remove product listings that match the claims of valid patents";

7

- "failure to implement proactive monitoring systems that would detect and prevent the sale of infringing products";

- "enabl[e] users to search, advertise, and promote infringing products on a systemic basis";

- "intentionally fail[ing] to block infringing product listings"; and

- "fail[ure] to take adequate measures to prevent infringement."

Doc. 71 ¶¶ 31, 33–34, 36, 41, 49–50.

The live complaint concludes that the defendants benefit from "increased advertising revenue, user engagement, and platform traffic generated by the sale and promotion of infringing products across a wide range of patented inventions" other than the purported footed-toothbrush invention that was the subject Catanzaro's own expired 959 patent. *Id.* ¶ 44. Catanzaro did not include any of these allegations in his prior complaints, and does not allege any relationship between the remaining defendants and any original defendant.

The remaining defendants in this case, Apple, Google and YouTube, filed a joint motion to dismiss this case with prejudice. Docs. 114, 116–119. The Court granted Catanzaro's page extension request, and his request to file a sur-reply. Docs. 110, 131. In total, the Court

afforded Catanzaro a 40-page opposition and a 15-page sur-reply. Docs. 120, 123. Catanzaro's opposition, however, also included a 27-page exhibit titled "Plaintiff's rebuttal to defendants' exhibits 119-1 through 119-17" (Doc. 120-1); the referenced exhibits being comprised of the unpublished opinions cited in the defendants' brief. *See* Docs. 119-1-119-17. As Catanzaro's exhibit responding to those cases is exclusively comprised of legal and factual arguments, it impermissibly bypasses the court-authorized page limitation, and should not be considered.[2] Further, on December 16, 2025, Catanzaro filed a "notice" acknowledging that his patent "has expired, and the statutory period for seeking damages has elapsed." Doc. 141. Thus, "dismissal of this action would have the practical effect of foreclosing Plaintiff's ability to pursue the asserted claims." *Id.* The motion to dismiss is fully briefed and ripe for decision.

Following briefing on the motion to dismiss, on January 23, 2026, Catanzaro filed a Motion to Transfer Venue. Docs. 145–146. In the motion, Catanzaro asserts that the Court should transfer this case to

---

[2] Even if the Court considered Catanzaro's unauthorized filing, the undersigned's recommendation would not change.

the Western District of Pennsylvania, because the defendants "admit to maintaining regular and established places of business" in that district. Doc. 146 at 1. On February 2, 2026, the remaining defendants filed an opposition to the motion, averring that the Court need not address the motion to transfer venue until after addressing the motion to dismiss. Doc. 151 at 10–11. Defendants also asserted that this action could not have been brought in the Western District of Pennsylvania. *Id.* at 12. On February 18, 2026, Catanzaro filed a reply, contending that the motion to transfer venue should be decided first as a threshold matter. Doc. 153 at 6. However, a court should not transfer venue if the case would be dismissed even after transfer. *Muhammad v. Weis*, 2009 WL 2525454, at *6 (E.D. Pa. 2009).

## III.  Discussion

### A.  Legal Standard

Title 35, United States Code, Section 286 codifies the statute of limitations for patent infringement actions, providing that "[e]xcept as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." "Where the

10

statute of limitations has expired, a plaintiff may only add a new claim or name a new party if the plaintiff demonstrates that the new claim or party relates back to the filing date of the original complaint." *Mills v. Unknown Franchisee*, 2021 WL 5358944, at \*3 (W.D. Pa. 2021), *report and recommendation adopted*, 2021 WL 5397915 (W.D. Pa. 2021); *see also Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003).

Under Federal Rule of Civil Procedure 15(c), an amendment that, as here, "changes the party or the naming of the party" in an action, Fed. R. Civ. P. 15(c)(1)(C), relates back to the original pleading only if a plaintiff can show: (1) the claim set forth in the amended pleading arose out of the conduct, transaction, or occurrence in the original pleading; (2) within the time period provided in Rule 4(m) for serving the complaint, the party to be brought in by amendment received notice of the institution of the suit and would not be prejudiced in maintaining a defense; and (3) the party sought to be added knew or should have known that, but for a mistake concerning his or her identity, he or she would have been made a party to the action. *Garvin*, 354 F.3d at 222. Catanzaro must demonstrate all three of those criteria; the failure to

11

show even one renders the relation back doctrine inapplicable, and the operative complaint untimely. *Id.*

## B.    The Relation Back Doctrine Does Not Apply

The remaining defendants assert that the Court should dismiss this action because Catanzaro has not met any of the relation back elements. Catanzaro concedes that the 959 patent expired on December 30, 2016, Doc. 120 at 7, and he filed the original complaint against Walmart, Maya, and unnamed Doe defendants on November 3, 2022, with less than two months remaining in the six-year window to seek damages under Section 286. Thus, the original complaint was the only pleading instrument in this action filed within the applicable statute of limitations.

On August 9, 2024, well beyond Section 286's six-year limitation and almost two years after filing his original complaint, Catanzaro filed the third amended complaint, which added new infringement allegations against 18 previously unnamed parties, including the remaining defendants, purporting to replace "Does 1–50" with these unaffiliated companies. Doc. 33. The third amended complaint was the

12

first time Catanzaro alleged infringement by the remaining defendants or even mentioned them.

Catanzaro avers that the remaining defendants "should have known" of this action because the relevant patent and litigation are public. Doc. 120 at 15. Catanzaro also contends that the operative fifth amended complaint[3] relates back to the original complaint because his identification of Does 1–50 in the initial complaint "clearly signaled [his] intent to later name upstream digital facilitators in the same infringing chain once discovery and investigation revealed their roles," *id.*, but he also acknowledges that the "roles of the later-named Defendants were not concealed—they were publicly visible through search engines, browser platforms, and video tools used in 2016." *Id.* at 15–16.

"[T]he naming of a John Doe defendant in a complaint does not stop the statute of limitations from running or toll the limitations period as to that defendant . . . . [An] amended complaint will not relate back if the plaintiff had been aware of the identity of the newly named

---

[3] Regardless of whether the third or fifth amended complaint is examined, both were filed beyond Section 286's six-year statute of limitations and, as set forth below, fail to meet the criteria of the relation back doctrine.

13

parties when she filed her original complaint and simply chose not to sue them at that time." *Garvin*, 354 F.3d at 221–22. Accordingly, the pertinent issue is whether the live complaint relates back to the original complaint, under a Rule 15(c) analysis. Otherwise, it is time barred.

### 1. Same conduct, transaction, or occurrence

The first inquiry considers whether "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The remaining defendants contend that the live complaint alleges direct and indirect infringement by wholly unrelated parties, and that Catanzaro fails to allege any relationship between Walmart and Maya Group and any newly added defendant. Doc. 119 at 20–21. Further, they maintain that the live complaint advances the expansive allegation that the remaining defendants provided platforms to "facilitate" sales of the Orbeez products by others, but that it fails to posit any connection between that facilitation and the same conduct, transactions, and occurrences alleged against Walmart and Maya in the original complaint. *Id.* at 21–22.

14

In response, Catanzaro asserts that, in the original complaint, he "included Does 1–50 to preserve claims against unknown actors later found to facilitate infringement . . . . [and that] the Fifth Amended Complaint traces a continuous infringing stream centered on the same Orbeez Crush Crushkins product lines originally at issue. The initial claims identified Walmart and Maya as retailers; the amended complaint adds upstream digital facilitators responsible for enabling and promoting those same infringing goods." Doc. 120 at 10–12.

Claims of infringement of the "same patent by independent parties, without more, are not part of the same transaction or occurrence." *In re EMC Corp.*, 677 F.3d 1351, 1357 (Fed. Cir. 2012).[4] Thus, even when new claims are based on infringement of the same patent, they do not arise out of the same transaction or occurrence unless the alleged factual overlap is sufficient. *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1372 n.6 (Fed. Cir. 2002). Indeed, an amended complaint "does not relate back . . .

---

[4] Catanzaro attempts to distinguish *In re EMC* because the case addressed Rule 20 joinder, not a Rule 15(c) relation back analysis. Doc. 123 at 5. Defendants, however, correctly note that Rule 20(a) shares the same transaction or occurrence standard, and cases applying Rule 20 are particularly instructive in applying the relation back doctrine. *See Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1368-69 (Fed. Cir. 2019) (citing *EMC*, 677 F.3d at 1357–60).

when it asserts a new ground for relief supported by facts that differ in both time and type from those in the original pleading set forth." *Pintor v. Port Auth. of New York & New Jersey,* 2009 WL 2595664, at *2 (D.N.J. 2009) (quoting *Mayle v. Felix,* 545 U.S. 644, 650 (2005)).

Here, Catanzaro's original complaint alleged that Walmart and Maya Group directly infringed the 959 patent by "offering for sale and selling the Orbeez Crush Cruskins Pets product along with other similar assorted product lines after February 2, 2010." Doc. 1 ¶ 16. That initial complaint did not advance any allegations specific to the moving defendants, or any allegations regarding "digital facilitators responsible for enabling and promoting those same infringing goods," as is now alleged in the operative complaint. Doc. 120 at 10–12.

By contrast, the third amended complaint, which named the moving defendants for the first time, included general allegations against all defendants that they "induced others to infringe directly or under the doctrine of willful blindness and/or contributorily infringed . . . by manufacturing, having manufactured, importing, using, advertising, aiding in advertising, offering for sale, aiding in the sale and/or selling products that embody and/or practice the patented

16

invention . . . ." Doc. 33 at ¶ 31. None of those general allegations, however, detailed the specific conduct charged against the remaining defendants, or linked them to the specific transactions and occurrences advanced against Walmart and Maya Group in the original complaint.

Catanzaro's next motion to amend—which requested leave to file a fourth amended complaint—asserted that amendment was necessary to "expand the legal theories with respect to contributory infringement and willful blindness" against the newly added parties. Doc. 49 at 2. Three days later, Catanzaro sought to file the operative fifth amended complaint, Doc. 53, to add claims against the new parties for "inducement infringement" and unjust enrichment. *Id.* at 2. The operative fifth amended complaint alleges that the remaining defendants "provide essential tools and platforms that enable and facilitate widespread patent infringement by third parties," Doc. 71, ¶ 49, and benefit from "increased advertising revenue, user engagement, and platform traffic generated by the sale and promotion of infringing products across a wide range of patented inventions." *Id.*, ¶ 44.[5] Bereft from this pleading, however, were any facts supporting

---

[5] The Fifth Amended Complaint does not identify which infringement allegations apply to which of the newly added defendants. Regardless, indirect infringement requires an act of direct

17

any specific allegation that the remaining defendants make, use, offer to sell, or sell any of the identified Orbeez products—the core transactions and occurrences advanced in Catanzaro's initial complaint.

Despite these dissimilarities between his pleading instruments, Catanzaro maintains that the operative complaint relates back to the original, because "all [complaint] counts center on the same nucleus of operative fact: the unlawful commercialization of the Orbeez Crush Crushkins product lines, in violation of [the 959 patent], during the 2016 period." Doc. 123 at 5. Catanzaro's position is unsupported; he fails to identify a single case, much less one with a similar fact pattern, that refutes precedent requiring factual overlap and supports his argument that the original claims are part of the same transactions or occurrences now advanced against the remaining defendants. And as set forth above, a comparison of his pleading instruments concludes otherwise.

---

infringement. *Best Med. Int'l, Inc. v. Accuray, Inc.*, 2010 WL 5053919, at *9 (W.D. Pa. 2010) ("It is well-established that claims for inducing infringement and contributory infringement pursuant to §§ 271(b) and (c) are dependent upon an underlying direct infringement."). Direct infringement arises under 35 U.S.C. § 271(a), which provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

18

Moreover, by Catanzaro's own admission, the allegations against the remaining defendants—the "upstream digital facilitators," Doc. 120 at 12—were not advanced until his amended pleadings. Only the original complaint was filed before the six-year statute of limitations expired, and a review of his successive pleadings reveals an evolving, expanding, and novel theory of liability advanced against the remaining defendants that was not asserted in that original complaint. Accordingly, the undersigned agrees that the allegations in the live complaint against the remaining defendants do not arise out of the same conduct, transactions or occurrences asserted against the Doe defendants in the original complaint.

### 2. Notice of the action

Even if Catanzaro had satisfied Rule 15(c)(1)(B), defendants also assert he did not meet his Rule 15(c)(1)(C) burdens. That rule first requires that parties brought in by amendment must have received notice of the institution of the action within 90 days following the filing of the original complaint; the period provided for service of the complaint by Federal Rule of Civil Procedure 4(m). Fed. R. Civ. Pro. 15(c)(1)(C)(i); *Garvin*, 354 F.3d at 222.

19

The defendants contend that they did not receive notice of this action within that requisite period, because they were neither named in the original complaint, nor served with a complaint until two years thereafter; a scenario necessarily engendering prejudice to their ability to defend. Doc. 119 at 23. And the parties do not dispute that Apple was served on February 28, 2025 (Doc. 78 ¶ 1), and Google and YouTube on January 28, 2025 (Doc. 41 ¶ 1); all well after both the Rule 15(c)(1)(C) period and the Section 286 statute of limitations expired.

Catanzaro avers that the defendants had constructive notice of the suit because "[a]ll current Defendants had access to both the '959 patent and this litigation, as confirmed by publicly available search results and Plaintiff's exhibits." Doc. 120 at 17. According to Catanzaro, "search engines returned the patent, and litigation results appeared with a basic name query." *Id.* at 11, 14. Catanzaro thus avers that because the patents, alleged infringing products, and existence of this litigation were accessible via affirmative use of the Google search engine, the remaining defendants had "actual or constructive notice" of the original complaint. Doc. 123 at 6.

20

As the remaining defendants maintain, Catanzaro does not adequately show that they received constructive notice. Constructive or imputed notice under Rule 15(c)(3) requires either "a shared attorney or an identity of interests." *In re Color Tile Inc.*, 475 F.3d 508, 512 (3d Cir. 2007) (citing *Garvin*, 354 F.3d 215). As stated by the remaining defendants, the original complaint alleged infringement of a patent concerning an article with a "'stand in the shape of a pair of feet' ('959 patent, Abstract) against retailers on the basis of their sale of the accused Orbeez Crush products, which are manufactured by a third party. There was no reason for the Moving Defendants to think that patent infringement allegations for the '959 patent, which describes an 'assembly comprising a toothbrush,' would be brought against them." Doc. 115 at 24. Moreover, as defendants note, Doc. 121 at 9, the public availability of a patent, without more, cannot constitute constructive notice. *See, e.g., Staley v. Gilead Scis., Inc.*, 2021 WL 4972628, at *18 (N.D. Cal. Mar. 12, 2021) ("[T]he fact that information was public does not automatically mean that a plaintiff should be deemed to have constructive knowledge."). Catanzaro does not offer any authority to the contrary, and thus fails to meet his burden.

21

Regardless, before a court can find that a Doe party "should have known" of a complaint, the complaint must contain "specific allegations" against the Doe defendant that could impute notice such as through a "shared attorney" or a party with an "identity of interest" with the Doe defendant. *Averill v. Jones*, 2019 WL 3804686, at \*5 (D. Del. Aug. 13, 2019). A review of the initial complaint in this action, *see* generally Doc. 1, identifies no allegations that could impute such notice, and Catanzaro has not met his burden to identify any. Accordingly, Catanzaro fails to meet his burden of showing that the defendants received actual or constructive notice of this action within 90 days of its commencement.

### 3.    Mistaken Identity

Rule 15(c)(1)(C) also requires that a newly-named defendant, within 90 days following the filing of the action, "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). Catanzaro's own admission confirms the absence of mistaken identity here.

Catanzaro avers that "[a]lthough the Moving Defendants were not formally named until later amendments, their roles were anticipated from the outset, as Plaintiff conducted 2016 searches on Google, and Mozilla Firefox (with Yahoo) that returned infringing product listings—forming the factual basis of the original complaint and the inclusion of Does 1–50." Doc. 120 at 3. In other words, Catanzaro knew of the remaining defendants' identifies at the time he commenced this action, but affirmatively chose to identify them anonymously.

"Of course, an amended complaint will not relate back if the plaintiff had been aware of the identity of the newly named parties when []he filed h[is] original complaint and simply chose not to sue them at that time." *Garvin*, 354 F.3d at 221–22; *see also Davis v. Pennsylvania Dep't of Corr.*, 2019 WL 6338015, at *10 (M.D. Pa. 2019) (Where there is an "absence of any 'mistake concerning the identity of the proper party' to sue, there can be no relation back under Rule 15(c)."), *report and recommendation adopted*, 2019 WL 6327813 (M.D. Pa. 2019). And as noted by the defendants, "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in

23

seeking to amend the pleading." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). Thus, Catanzaro's knowledge of the remaining defendants' identities at the commencement of this action has no bearing on their knowledge of the action, while simultaneously confirming the absence of any mistaken identity.

In reply, Catanzaro asserts that he "has never denied seeing the infringing products online in 2016, but using a platform to locate infringing goods is not the same as understanding the legal mechanisms by which that platform may be liable." Doc. 123 at 7. Thus, he claims that at the commencement of this action, he remained unaware of the operative facts on which he now premises the defendants' alleged liability, and included Doe defendants "to preserve claims against unknown actors further up the distribution chain." *Id.*

But by logical extension, if Catanzaro, when commencing this action, was unaware of the facts that allegedly trigger the remaining defendants' liability, and did not include those associated allegations until later iterations of his complaint, the defendants in turn could not "have known that the action would have been brought against [them], but for a mistake concerning" their identities. Fed. R. Civ. P.

24

15(c)(1)(C)(ii). Moreover, Catanzaro's premise effectively eviscerates the very principles underlying statutes of limitations. Under his approach, litigants could always and indefinitely toll and circumvent the statute of limitations by simply listing Doe defendants in their complaints, and thus preserve the ability to sue future named defendants once additional associated facts are uncovered, regardless of whether those future defendants would have any reasonable expectation of being brought into the litigation, based on a reading of the original complaint. That, of course, is an untenable outcome, and is not the scenario envisioned by Rule 15(c); one in which a plaintiff advances factual allegations against a specific, but as yet unidentified, defendant.

As Catanzaro fails to carry his burden with respect to *any* of the relevant Rule 15(c) elements, he cannot establish that his claims against the remaining defendants relate back to his initial complaint. Thus, his claims are barred by Section 286's six-year statute of limitations.[6] Accordingly, the undersigned recommends granting the

---

[6] Because the operative complaint is untimely, the Court need not address defendants' merits contentions seeking dismissal.

25

defendants' joint motion to dismiss and dismissing all remaining claims against them with prejudice. Dismissal of this action would likewise render Catanzaro's motion to transfer venue moot.

## IV.  <u>Recommendation and Notice</u>

For the reasons set forth above, it is **RECOMMENDED** that:

1.    The defendants' motion to dismiss (Doc. 114) be **GRANTED**, all claims be **DISMISSED WITH PREJUDICE**, and this action be **DISMISSED**;

2.    Plaintiff's motion to transfer venue (Doc. 145) be **DENIED AS MOOT**; and

3.    The Clerk's Office be **DIRECTED** to **TERMINATE** all remaining defendants and **CLOSE** this case.

The parties are placed on notice that, pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.

The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

M.D. Pa. L. R. 72.3. The failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights. *See Nara v. Frank*, 488 F.3d 187, 194 (3d Cir. 2007).

Date: July 6, 2026

***s/ Phillip J. Caraballo***
Phillip J. Caraballo
United States Magistrate Judge