THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID J. CATANZARO,<br><br>             Plaintiff,<br><br>        v.<br><br>LYKART TECHNOLOGIES<br>LLC, ET AL.,<br><br>             Defendants. | Case No. 3:22-cv-1754-JFS-PJC<br><br>Judge Joseph F. Saporito, Jr.<br><br>Referred to: Phillip J. Caraballo<br><br>JURY TRIAL DEMANDED |

**FILED**
**SCRANTON**

JUL 17 2025

PER_____
DEPUTY CLERK

**PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANTS'**

**MOTION TO DISMISS THE FIFTH AMENDED COMPLAINT UNDER FEDERAL**

**RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(3), AND 12(b)(6)**

**TABLE OF CONTENTS**

I.   Plaintiff's Rebuttal to Timeliness, Relation-Back, and Constructive Notice ................. 1

II.  Plaintiff Can Show That the Moving Defendants Knew or Should Have
     Known This Action Would Be Brought Against Them But For a Mistake .................... 3

III. If Venue Is Deficient, Transfer—Not Dismissal—Is Warranted to Prevent
     Prejudice and Promote Judicial Efficiency ……………....................................... 5

IV.  Plaintiff's Rebuttal to Section A: The Complaint States a Plausible Claim
     for Direct Infringement ................................................................. 8

V.   Plaintiff's Rebuttal to Section B: The Complaint Plausibly Alleges Indirect
     and Willful Infringement ............................................................... 10

VI.  Exhibits Cited by Defendants Are Inapplicable or Already Addressed................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Anza Tech., Inc. v. Mushkin, Inc.,*
934 F.3d 1359, 1368–69 (Fed. Cir. 2019).............................................................. 1

*Arunachalam v. IBM,*
2021 WL 7209362 ......................................................................................... 9, 15

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................. 9, 14, 15

*AstraZeneca AB v. Apotex Corp.,*
782 F.3d 1324 (Fed. Cir. 2015)...................................................................... 1

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................. 9, 14, 15

*Burkhart v. Berryhill,*
2018 WL 6499689 (M.D. Pa. Dec. 11, 2018)................................................. 10, 14

*Carteret Sav. Bank v. Shushan,*
919 F.2d 225, 232 (3d Cir. 1990)...................................................................... 6

*Celgene Corp. v. Mylan Pharms. Inc.,*
17 F.4th 1111 (Fed. Cir.
2021)................................................................................................................ 6

*Cottman Transmission Sys. v. Martino,*
36 F.3d 291, 296 (3d Cir. 1994)...................................................................... 6, 7

*In re Cray Inc.,*
871 F.3d 1355 (Fed. Cir. 2017)...................................................................... 5, 7

*Disc Disease Solutions Inc. v. VGH Solutions Inc.,*
888 F.3d 1256, 1260 (Fed. Cir. 2018)............................................................. 8, 15

*In re EMC Corp.,*
677 F.3d 1351 (Fed. Cir. 2012)...................................................................... 1

*Global-Tech Appliances, Inc. v. SEB S.A.,*
563 U.S. 754 (2011)....................................................... 4, 11, 12, 13, 14, 15

*Goldlawr, Inc. v. Heiman,*
369 U.S. 463, 466 (1962)..................................................................... 6

*In re Google LLC,*
949 F.3d at 1343–47........................................................................ 7

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
579 U.S. 93 (2016)........................................................................ 13

*Krupski v. Costa Crociere S.p.A.,*
560 U.S. 538 (2010)........................................................................ 3

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
545 U.S. 913, 937 (2005)................................................................. 12

*Nalco Co. v. Chem-Mod, LLC,*
883 F.3d 1337, 1350 (Fed. Cir. 2018).................................................. 9

*In re Nintendo Co.,* 589 F.3d 1194,
1198 (Fed. Cir. 2009)................................................................... 6, 7

*Pegram v. Herdrich,*
530 U.S. 211, 230 n.10 (2000)......................................................... 14

*Promos Techs., Inc. v. Samsung Elecs. Co.,*
2018 WL 5630585 (D. Del. Oct. 31, 2018)...................................... 9, 15

*Singletary v. Pennsylvania Dep't of Corr.,*
266 F.3d 186 (3d Cir. 2001)............................................................ 2

*Staley v. Gilead Scis., Inc.,*
2021 WL 4972628......................................................................... 2

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC,*
581 U.S. 258, 261 (2017)................................................................. 5

*Zamber v. American Airlines, Inc.,*
282 F. Supp. 3d 1289 (S.D. Fla. 2017)............................................... 10

iii

## STATUES AND RULES

28 U.S.C. § 1400(b) ........................................................................................................... 5

28 U.S.C. § 1406(a) ..................................................................................................... 5, 6, 7

35 U.S.C. § 271(a) ......................................................................................................... 8, 13

35 U.S.C. § 271(b) ................................................................................... 3, 9, 11, 12, 13

35 U.S.C. § 271(c) ............................................................................................ 3, 9, 11, 13

35 U.S.C. § 286 ..................................................................................................................... 1

35 U.S.C. § 287 .................................................................................................................. 13

Fed. R. Civ. P. 4(m) ........................................................................................................... 4

Fed. R. Civ. P. 12 ................................................................................................... 10, 11, 14

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 9

Fed. R. Civ. P. 15 ............................................................................................................ 1, 3

Fed. R. Civ. P. 15(c) ..................................................................................................... 1, 3, 4

Fed. R. Civ. P. 15(c)(1)(B) .......................................................................................... 1, 2

Fed. R. Civ. P. 15(c)(1)(C) ............................................................................................... 2

Fed. R. Civ. P. 15(c)(1)(C)(ii) ......................................................................................... 3

Fed. R. Civ. P. 20 ................................................................................................................. 1

Fed. R. Civ. P. 21 ................................................................................................................. 5

Fed. R. Evid. 408 ................................................................................................................. 4

## I. Plaintiff's Rebuttal to Timeliness, Relation-Back, and Constructive Notice

Defendants' assertion that the Fifth Amended Complaint ("FAC") is time-barred under 35 U.S.C. § 286 misstates both the statutory limitation and the applicable pleading standards. Plaintiff does not contest that § 286 limits recovery of damages to a six-year window preceding the filing date of the complaint. However, that statute does not bar claims outright; it merely constrains the damages period. This distinction is critical. The Federal Circuit in *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324 (Fed. Cir. 2015), addressed laches—not § 286—and never held that failure to recover damages voids a cause of action. A valid patent claim may proceed even if damages are limited. Plaintiff filed suit on November 3, 2022, and all claims target infringement occurring in 2016, which is squarely within the six-year statutory window. Defendants wrongly contend that Plaintiff's claims do not relate back under Rule 15(c)(1)(B) because the FAC involves different conduct or parties. In reality, all counts center on the same nucleus of operative fact: the unlawful commercialization of the Orbeez Crush Crushkins product lines, in violation of U.S. Patent No. 7,653,959 (the "'959 Patent"), during the 2016 period. That conduct—whether directly by Walmart and Maya or systemically facilitated by platforms like Google, YouTube, Apple, and Mozilla—remains tethered to a single infringement episode and unified product line. The 2012 *EMC* decision cited by Defendants (677 F.3d 1351) addressed joinder under Rule 20, not relation-back under Rule 15. Even so, the Federal Circuit has expressly recognized that Rule 20 authority is "particularly instructive" in Rule 15(c) cases. See *Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1368–69 (Fed. Cir. 2019). Plaintiff's case is not based on independent acts of infringement by unrelated parties, but on interrelated conduct involving indexing, promotion, and monetization of the same infringing products across multiple digital platforms. The Fifth Amended Complaint explains that Google Search, YouTube,

1

Mozilla's Firefox browser (powered by Yahoo Search in 2016), and Apple's iOS ecosystem all played roles in directing users to the same infringing product listings visible in 2016. These facts more than satisfy Rule 15(c)(1)(B). Defendants next argue that Plaintiff cannot meet the Rule 4(m) notice requirement because service was not effectuated within 90 days. However, this mischaracterizes the actual legal question under Rule 15(c)(1)(C): whether the new Defendants had actual or constructive notice of the lawsuit such that they knew or should have known they were intended defendants. Plaintiff provided a detailed explanation, supported by evidentiary exhibits, showing that each Moving Defendant had direct access to both the '959 patent and to this very litigation through their own publicly available systems. A basic Google or Yahoo query of the patent number or product title in 2016 returned links to commercial infringing listings. A subsequent query for Plaintiff's name or patent returned information on this litigation after it was filed. Google Patents listed the '959 patent; search engines showed listings for infringing products. YouTube promoted influencer content about the infringing products. Firefox, through its embedded Yahoo search, also returned similar results. These facts demonstrate both actual and constructive notice. Defendants cite *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186 (3d Cir. 2001), but that case concerned whether an employee had notice based on their employer's involvement. That narrow holding has no bearing here, where Plaintiff identifies search engine and browser companies whose platforms, by design, returned both the infringing product listings and later, results linking to this litigation. The Northern District of California's unpublished decision in *Staley v. Gilead Scis., Inc.*, 2021 WL 4972628, does not control, and even if considered, it simply held that not all public availability equates to legal notice in every context. Here, by contrast, the public availability was systemic, interactive, and specific: platforms like Google and Yahoo simultaneously hosted information about the patent, the

infringing listings, and the lawsuit itself. This meets the fair notice standard contemplated by Rule 15 and supports relation back under 15(c)(1)(C)(ii). Constructive awareness was not speculative — it was systemically embedded.

## II. Plaintiff Can Show That the Moving Defendants Knew or Should Have Known This Action Would Be Brought Against Them But For a Mistake

Defendants mischaracterize Plaintiff's amendment as a deliberate omission rather than a correction permitted under Rule 15(c). Plaintiff has never denied seeing the infringing products online in 2016, but using a platform to locate infringing goods is not the same as understanding the legal mechanisms by which that platform may be liable under §§ 271(b) or (c). Plaintiff's searches in 2016 confirm the presence of infringing content—but not the functional role or liability of the Defendants in enabling that infringement. Those were not known facts at the time of the original filing. At the time of the original Complaint, Plaintiff did not yet understand the monetization structures, search partnerships, or algorithmic indexing tools that connected these platforms to the commercial promotion of infringing goods. That understanding evolved through further investigation, corporate disclosures, and the review of archival records—including Plaintiff's own use of the platforms at issue. This is precisely the type of "mistake" Rule 15(c) permits to be corrected through amendment. Naming Does 1–50 in the original Complaint signaled an intent to preserve claims against unknown actors further up the distribution chain— actors whose identities were not hidden in name, but whose roles were concealed in function. Plaintiff repeats, identities were not hidden in name, but whose roles were concealed in function. Defendants argue that Plaintiff "confirmed" he made no mistake because he used their platforms in 2016. But this confuses factual access with legal awareness. The question under Krupski and Rule 15(c) is whether Plaintiff reasonably understood, at the time of filing, that these Defendants

3

were legally responsible for inducing or contributing to infringement. Plaintiff did not—and could not—have reasonably known that based on search engine results alone. That knowledge only became clear once it was apparent that these platforms were not neutral conduits but monetized and promoted infringing content through search default settings, YouTube influencer indexing, and paid ad tools. Defendants further argue there was no timely notice under Rule 4(m), and that search engines returning results for the '959 patent or this litigation are not enough. But Defendants' own systems did more than merely "make results public." They indexed the '959 patent, returned purchase listings for infringing products, and surfaced this litigation in search tools. That is not passive happenstance—it is algorithmic and structural awareness. Under Global-Tech, that level of operational knowledge supports a finding of willful blindness. Finally, Defendants dismiss Plaintiff's earlier settlements and litigation history as irrelevant under Rule 408. But Plaintiff does not cite those settlements to prove liability—he references them to show that the asserted '959 patent has repeatedly been enforced against the very same product line. That context reinforces the reasonableness of Plaintiff's evolving understanding and the propriety of amending under Rule 15(c), especially for a pro se litigant confronting digital defendants with complex, opaque infrastructure. The Fifth Amended Complaint does not rest on hindsight. It reflects newly discoverable facts and legal clarity that were unavailable at the outset. Rule 15(c) exists to allow exactly this kind of correction—not to penalize it. Defendants also attempt to diminish the '959 patent by calling it merely a "stand in the shape of a pair of feet," quoting selectively from the abstract to trivialize the invention. This mischaracterization ignores the patent's full claim scope, which includes modular structural features and functions that Defendants' own promoted product lines exploited. Reducing the patent to a visual shape misstates both its technical content and legal enforceability.

4

**III. If Venue Is Deficient, Transfer—Not Dismissal—Is Warranted to Prevent Prejudice and Promote Judicial Efficiency**

Plaintiff acknowledges that 28 U.S.C. § 1400(b) governs claims for direct patent infringement, as held in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 261 (2017), and that under *In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017), a "regular and established place of business" requires a physical location in the district. However, this statute does not preclude transfer under § 1406(a) where venue is improper but dismissal would be unjust or inefficient—particularly in complex, multi-defendant cases. Even if venue is deemed deficient for Mozilla, it is properly laid in the Commonwealth, specifically in the Western District of Pennsylvania, for Google, YouTube, and Apple. Google has acknowledged a physical office in Pittsburgh (Doc. 118), Apple operates at least nine retail locations statewide—including three in Pittsburgh (Doc. 117)—and YouTube is wholly owned and operated by Google. YouTube is not a separate corporate entity for venue purposes; it functions as an integrated commercial arm of Google's digital ecosystem. Courts routinely recognize parent-subsidiary integration for venue where operations are commingled and interdependent, especially when infringement claims overlap both YouTube and its parent, Google. Therefore, if the Court determines that venue is improper in the Middle District, Plaintiff respectfully requests transfer of all claims against Google, YouTube, and Apple to the Western District of Pennsylvania under § 1406(a). With respect to Mozilla, Plaintiff requests severance and transfer to Mozilla's district of incorporation or principal place of business in California, consistent with Rule 21 and the permissive transfer provisions of § 1406(a). This approach ensures the claims—already timely filed—are preserved in their entirety and adjudicated in the proper forum, consistent with the purpose of § 1406(a) and the interests of judicial economy.

5

This request is well-supported by controlling and persuasive authority:

- **Goldlawr, Inc. v. Heiman**, 369 U.S. 463, 466 (1962) – Transfer avoids prejudice from "erroneous guess[es]" about venue, particularly in complex cases.

- **Carteret Sav. Bank v. Shushan**, 919 F.2d 225, 232 (3d Cir. 1990) – § 1406(a) permits transfer when venue is improper, even if personal jurisdiction is lacking.

- **Cottman Transmission Sys. v. Martino**, 36 F.3d 291, 296 (3d Cir. 1994) – Individual claims may be severed and transferred to proper districts.

Further, although cited under § 1404(a), in *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009), the court held that "[a] defendant not amenable to suit in the transferor forum" may be severed and transferred independently, even if other defendants remain. Thus, if the Court finds that venue is improper for Mozilla but proper for Google, YouTube, and Apple in the Western District of Pennsylvania, Mozilla may be transferred to its incorporated district without defeating judicial economy. As to the *Celgene* citation, Plaintiff relied on that decision solely to support the proposition that persistent digital infrastructure may inform venue analysis—not to claim that *Celgene* governs venue discovery. Likewise, Plaintiff acknowledges that the Westlaw citation to a "CIBC Bank" case may have been inaccurate and respectfully withdraws that citation. However, the broader point remains valid: multiple courts favor transfer over dismissal— especially for pro se litigants presenting plausible claims—as discussed in the cases cited above. Plaintiff's position is therefore consistent with binding precedent, equitable discretion, and the core purpose of § 1406(a): "to remove whatever obstacles may impede an expeditious and orderly adjudication" of valid claims filed in the wrong venue. *Goldlawr*, 369 U.S. at 466–67. Further, regarding venue discovery: if there is any question as to whether venue is proper for YouTube in the Commonwealth's Western District, limited discovery would not be a waste of

6

judicial resources. YouTube is not a separate corporate entity, but rather a product and business unit of Google LLC—already a named Defendant with a physical presence in Commonwealth. Plaintiff has alleged overlapping monetized conduct by Google and its YouTube division during the 2016 damages period, including algorithmic promotion, search indexing, and ad-based distribution of infringing content. These allegations are supported by publicly integrated infrastructure and monetization systems. See *In re Cray*, 871 F.3d at 1362–63, and the agency considerations under *In re Google LLC*, 949 F.3d at 1343–47. To the extent necessary, Plaintiff reserves the right to seek discovery from Alphabet Inc., the parent company of Google LLC, regarding its operational control or ratification of relevant conduct. To be clear, Plaintiff is fully prepared to litigate claims against Modzilla and YouTube in California if the Court determines venue is improper in this District or State, while continuing to pursue claims against Google and Apple in the Western District of Pennsylvania. Courts have consistently recognized that venue defects may be cured through severance and transfer, not dismissal. See *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994) (noting that individual claims may be severed and transferred to proper districts to address venue defects); see also *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (affirming that a defendant not amenable to suit in the transferor forum may be severed and transferred independently, even where co-defendants remain). Dismissal would unjustly penalize Plaintiff—especially as a pro se litigant who diligently investigated platform conduct across multiple jurisdictions. Transfer, not dismissal, is the appropriate remedy under § 1406(a), with proper venue and judicial economy best served by proceeding in the Western District of Pennsylvania for Google and Apple, and in the Northern District of California for Mozilla and YouTube if severance becomes necessary for both.

7

**IV. Plaintiff's Rebuttal to Section A: The Complaint States a Plausible Claim for Direct Infringement**

Defendants mischaracterize the Fifth Amended Complaint ("FAC"), ignoring the factual detail, specific references, and industry context that collectively support a plausible claim for direct infringement under 35 U.S.C. § 271(a). Plaintiff does not rely on group pleading or vague assertions, but instead identifies a widely available product—the Orbeez Crush Crushkins product lines—sold, promoted, and monetized through digital storefronts and platform-integrated infrastructure during the 2016 statutory damages period. First, Defendants assert that the FAC "fails to rebut" their motion and "lumps all defendants together." This is demonstrably false. Paragraphs 28 through 61 of the FAC distinguish between manufacturers (e.g., Maya Group), retailers (e.g., Target, Walmart), and platform actors (e.g., Google, Apple, Mozilla), each of whom participated in either the sale or systemic promotion of the infringing products. The FAC specifically names Orbeez Crush, Crushkins as the infringing products (¶¶ 28-29), describes their functionality, and alleges that the products practice the elements of at least one Claim of the '959 patent (¶¶ 28, 30). These allegations go well beyond the pleading standard upheld in *Disc Disease Solutions Inc. v. VGH Solutions Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018), where merely identifying an infringing product and asserting ownership of the patent was sufficient to survive a motion to dismiss. Second, Plaintiff does not allege that every named defendant sold the product directly. Rather, Plaintiff alleges direct infringement by parties involved in the commercial offer for sale and retail listing of the accused product—consistent with § 271(a)—and separately pleads inducement and contributory liability for platform defendants under §§ 271(b) and (c). The FAC expressly incorporates archived retailer listings, screenshots, and UPC-level product tracking as exhibits, confirming that the exact product line

8

was available for purchase on major retail platforms during the relevant time period. This evidentiary structure surpasses the bar in *Disc Disease* and directly supports Plaintiff's claim that at least one defendant committed acts of direct infringement. Third, Defendants cite *Promos Techs., Inc. v. Samsung Elecs. Co.*, 2018 WL 5630585 (D. Del. Oct. 31, 2018), and *Arunachalam v. IBM*, 2021 WL 7209362, to argue that Plaintiff's claims are vague. But those cases involved either method patents requiring attribution of multiple steps (*Promos*) or entirely conclusory pleadings (*Arunachalam*). Defendants cherry-pick language about method claims requiring specificity, even though *Promos* actually upheld the sufficiency of the complaint under *Disc Disease*. In *Arunachalam*, Defendants use it as a scarecrow for "vague claims," ignoring that the case involved a failure to identify any specific infringing product or how it met any patent element. In contrast, the '959 patent is a utility patent with physical, structural elements—not a multi-step method—and Plaintiff's allegations identify how the accused products meet the claimed structure. Defendants' effort to import method-patent pleading burdens into this case is legally misplaced. Moreover, Plaintiff has provided a claim chart (**see Exhibit A** ), incorporated by reference into the pleadings, which outlines how the Orbeez Crush Crushkins product lines satisfy the limitations of at least Claim 1 of the '959 patent. While detailed element-by-element analysis is not required at the pleading stage, this supplemental material confirms that Plaintiff's infringement allegations are supported by factual content—not mere conclusions. Finally, Plaintiff does not claim that Rule 12(b)(6) exempts him from pleading plausible facts. Rather, Plaintiff correctly states that *Iqbal/Twombly* does not require claim construction or element-by-element claim charts at the pleading stage. See *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) ("[A] plaintiff is not required to plead infringement on an element-by-element basis."). Plaintiff has pled facts that allow the Court to reasonably infer infringement by

9

identifying the product, alleging how it maps to the patent, and referencing concrete supporting evidence—including product listings, dates, retailers, and platforms—demonstrating that infringement occurred within the statutory period. Defendants' argument that "no party is identified as selling" the accused product ignores Plaintiff's evidentiary record, incorporated by reference, and contradicts public evidence confirming that the product was offered for sale through Target, Amazon, Walmart.com, and other retailers in 2016. At the Rule 12 stage, these factual allegations—viewed in the light most favorable to Plaintiff—are more than sufficient to support a direct infringement claim. Defendants also attempt to discredit Plaintiff's citation to *Zamber* and suggest that a second source—*Abbott Labs.*, 836 F. Supp. 2d at 252—cannot be located. Plaintiff confirms that *Zamber v. American Airlines, Inc.*, 282 F. Supp. 3d 1289 (S.D. Fla. 2017), was correctly cited and stands for the principle that equitable claims like unjust enrichment may survive where legal remedies are incomplete or subject to preemption concerns. As for the citation to *Abbott Labs.*, Plaintiff acknowledges that the pinpoint reference may have been inadvertently misstated, but the underlying principle remains valid and supported by multiple cases: unjust enrichment claims may proceed alongside patent infringement claims where legal remedies are uncertain or incomplete. Defendants' reliance on *Burkhart v. Berryhill*, 2018 WL 6499689 (M.D. Pa. Dec. 11, 2018), to dismiss Plaintiff's arguments as "unspecific" is misplaced. Plaintiff has fully explained the legal and factual basis for each count in the FAC and supporting brief, and the case law cited—whether partially mis-cited or not—does not change the sufficiency of the pleaded claims or Plaintiff's right to be heard on the merits.

## V. Plaintiff's Rebuttal to Section B: The Complaint Plausibly Alleges Indirect and Willful Infringement

Defendants misrepresent both the pleading standard and the factual content of the Fifth Amended Complaint ("FAC") in arguing that Plaintiff fails to allege indirect or willful infringement. The FAC contains well-pled allegations showing that each Defendant had actual or constructive knowledge of the '959 patent during the statutory period, enabled or facilitated third-party infringement through commercial platform conduct, and willfully ignored warning signs— satisfying the requirements of 35 U.S.C. §§ 271(b) and (c). First, Defendants argue that Plaintiff "confirms" a lack of pre-suit knowledge. This is false. The FAC alleges that when Plaintiff conducted searches during the 2016 damages period using Google Search, Mozilla Firefox, (with Yahoo as the default search engine), those platforms returned infringing listings for the Orbeez Crush product line. Separately, when Plaintiff searched the '959 patent number and the phrase "Article Assembly" using Google Patents, the platform correctly returned the full patent record. These facts—stated clearly in the FAC and supporting brief and exsibits—demonstrate that Defendants had access to both the infringing listings and the relevant patent through their own systems. That combination supports a finding of actual or constructive knowledge. Moreover, Plaintiff has submitted a detailed claim chart (**Exhibit A**) incorporated by reference into the pleadings. The chart walks through how the Orbeez Crush Crushkins product lines meet each limitation of Claims 1, 4, 5, and 8 of the '959 patent. While this level of detail is not required at the Rule 12 stage, it strongly supports Plaintiff's inducement and contributory claims by showing the alleged infringement was not speculative—it was visible, indexable, and monetizable through Defendants' platforms. Defendants invoke *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011), to argue that "deliberate indifference" is not enough. But *Global-Tech* also held that **willful blindness** satisfies the knowledge requirement under § 271(b). That standard is exactly what Plaintiff has alleged. The FAC sets forth how each platform

11

defendant—Google, Apple, Mozilla—had the technical ability to detect and flag infringing listings but failed to act. These entities implemented advanced filtering systems for malware, counterfeit goods, and copyright claims via DMCA, yet ignored patent infringement tied to the very products at issue. The refusal to apply available technology to known risks, while profiting from the resulting traffic, meets the willful blindness standard as defined in *Global-Tech*. Defendants also argue that Plaintiff cannot "invent a new standard" based on Defendants' status as technology companies. This argument misses the point. Plaintiff is not inventing a new standard; rather, Plaintiff applies the Supreme Court's *Global-Tech* standard in a modern factual context where Defendants' technical capabilities and monetization models create a high probability of knowledge and willful inaction. As noted in the FAC and brief, Defendants built systems to index product listings, display search ads, and direct users to e-commerce partners— all of which tied directly to infringing Orbeez Crush Crushkins products during the 2016 period. As to contributory infringement, Defendants incorrectly claim the FAC fails to allege "specially made or adapted" components. In fact, the FAC alleges that Defendants' platforms were **not neutral** conduits—they were purpose-built to rank, recommend, and route traffic to commercial listings (FAC ¶¶ 36–41, 59–60). These are not generic components—they are monetized algorithms and interfaces designed specifically to maximize e-commerce engagement, including with infringing products. Under *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005), inducement may be found where a defendant takes steps to stimulate infringement while turning a blind eye to it—particularly through structural tools. The same logic applies to platforms that enable or facilitate patent infringement through custom-built infrastructure. Defendants also wrongly assert that Plaintiff "abandons" systemic infringement. To the contrary, Plaintiff reiterates that systemic infringement is not a standalone cause of action,

12

but a descriptive term used to explain the pervasive nature of the infringing activity. Counts I through V of the FAC are grounded in §§ 271(a), (b), and (c), and the systemic nature of Defendants' conduct strengthens Plaintiff's claim of willful blindness and supports a demand for enhanced damages under *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016). Plaintiff has never sought to recover in this action for any patent other than the '959 patent and has clarified in briefing that all allegations pertain solely to that patent. Counts VI and VII do not assert new standalone causes of action, but instead underscore the need for forward-looking remedies that address platform-level facilitation of infringement—conduct that threatens not only Plaintiff, but the rights of other patent holders similarly situated. The design and operation of these platforms—particularly the automated indexing, recommendation, and monetization systems— reflect deliberate structures of willful blindness, maximizing commercial reach while evading IP enforcement responsibilities.

When Plaintiff referred to constructive or actual notice in prior filings, it was not to assert compliance with 35 U.S.C. § 287 or to claim pre-suit damages. The '959 patent was not commercially practiced by Plaintiff during the relevant period, making § 287's marking requirement inapplicable. Instead, those references pertain to Defendants' knowledge or willful blindness under 35 U.S.C. §§ 271(b) and (c)—which do not require formal notice. As established in *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011), the knowledge requirement for induced and contributory infringement can be met through willful blindness, where a defendant suspects infringement and deliberately avoids confirming it. Here, the '959 patent was publicly indexed, returned in Google Patents search results, and coexisted with infringing listings on the very platforms operated by Defendants. These facts support a reasonable inference that

13

Defendants either knew or deliberately avoided knowing of the patent, satisfying the *Global-Tech* standard.

In sum, Plaintiff has pled:

• Knowledge or willful blindness to the '959 patent;

• Defendants' platforms are not passive—they are algorithmically structured to ignore patent risk while maximizing traffic and revenue, exhibiting a system design built on willful blindness;

• Intentional facilitation of infringement through monetized, non-neutral tools;

• Specific examples of infringing content displayed on Defendants' platforms; and

• A plausible basis for enhanced damages and forward-looking equitable relief.

At the Rule 12 stage, these allegations must be accepted as true. Defendants' effort to raise the pleading threshold—and to minimize the FAC through selective or mischaracterized citations—should be rejected. Again, their reliance on *Burkhart v. Berryhill*, 2018 WL 6499689 (M.D. Pa. Dec. 11, 2018), to dismiss Plaintiff's arguments as "unspecific" is similarly misplaced. Plaintiff has detailed the factual and legal basis for each count, and none of the authorities cited by Defendants alter the sufficiency of those well-pled claims. Plaintiff has fully explained the legal and factual basis for each count in the FAC and supporting brief, and the case law cited—whether partially mis-cited or not—does not change the sufficiency of the pleaded claims or Plaintiff's right to be heard on the merits. Exhibit 1 was submitted to rebut Defendants' factual mischaracterizations and support Plaintiff's arguments under Rule 12. Courts routinely permit explanatory exhibits to clarify pleadings—particularly where, as here, Plaintiff is pro se and acting in good faith to meet the plausibility standards set forth in *Iqbal* and *Twombly*. See *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000).

14

## VI. Exhibits Cited by Defendants Are Inapplicable or Already Addressed

To the extent Defendants rely on Exhibits 1–6, Plaintiff has already addressed each cited authority in this sur-reply. These exhibits offer no new legal standard or controlling precedent that would warrant dismissal. Rather, they reflect case-specific rulings involving inapplicable facts or distinguishable procedural postures. Plaintiff's claims, as pled in the Fifth Amended Complaint and supported by detailed factual allegations, satisfy the standards of *Iqbal*, *Twombly*, and *Global-Tech*, and should proceed to discovery. Defendants selectively cite from decisions like *Disc Disease*, *Promos Techs.*, and *Arunachalam* without acknowledging their procedural posture or ultimate holdings—which, in many cases, allowed claims to proceed. Courts routinely reject efforts to dismiss plausible pleadings by appending case excerpts out of context. **Selective citations or procedural maneuvering should not dismiss fact-driven allegations that now beckon for a fair opportunity to be heard.**

Date July 17, 2025

Respectfully submitted,

David J. Catanzaro
Plaintiff pro se
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 936-9262
E-Mail: davidjosephus@aol.com

15

## Certificate of Use of Generative AI

I voluntarily certify the following: (1) I utilized OpenAI's ChatGPT to assist in the preparation of the accompanying filing; (2) portions of the entire filing—such as formatting, organizational structure, and language refinement—were prepared or edited using ChatGPT; and (3) I personally reviewed all AI-assisted content and confirm that all facts, citations, legal authorities, and representations are accurate and supported to the best of my ability.

Date July 17, 2025

David J. Catanzaro
Plaintiff *pro se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 936-9262
E-mail: davidjosephus@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2025, I caused a true and correct copy of the foregoing **PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIFTH AMENDED COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(3), AND 12(b)(6)** to be served via email, in accordance with the parties' agreement for reciprocal email service, to all counsel of record on the docket.

**For Unrepresented Defendants:** The following two defendants have not appeared in this case and are not represented by counsel. Copies of the foregoing document were served via First Class **U.S. Mail** to the last known business address shared by both entities: **Lykart Technologies, LLC. and GrowKart** These defendants are currently in procedural **default**, and Plaintiff reserves the right to move for entry of default as appropriate.

Date July 17, 2025

David J. Catanzaro
Plaintiff *pro se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 936-9262
E-mail: davidjosephus@aol.com